1  JORDAN ETH (BAR NO. 121617)
   jeth@mofo.com
2  PHILIP T. BESIROF (BAR NO. 185053)
   pbesirof@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone: (415) 268-7000
5  Facsimile: (415) 268-7522

6  DORIAN DALEY (BAR NO. 129049)
   dorian.daley@oracle.com
7  DEBORAH K. MILLER (BAR NO. 95527)
   deborah.miller@oracle.com
8  JAMES C. MAROULIS (BAR NO. 208316)
   jim.maroulis@oracle.com
9  ORACLE CORPORATION
   500 Oracle Parkway
10 Redwood Shores, California  94065
   Telephone: (650) 506-5200
11 Facsimile: (650) 506-7114

12 Attorneys for Nominal Defendant
   ORACLE CORPORATION

13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

               SAN FRANCISCO DIVISION
16

17 In re ORACLE CORPORATION DERIVATIVE          No. C-10-3392-RS
   LITIGATION
18                                              NOMINAL DEFENDANT ORACLE
                                                CORPORATION'S NOTICE OF
19                                              MOTION AND MOTION TO DISMISS
                                                PLAINTIFFS' CONSOLIDATED
20                                              SHAREHOLDER DERIVATIVE
                                                ACTION COMPLAINT UNDER FED.
21                                              R. CIV. P. 23.1; MEMORANDUM OF
                                                POINTS AND AUTHORITIES IN
22                                              SUPPORT THEREOF

23                                              Hearing Date:    June 2, 2011
                                                Hearing Time:    1:30 p.m.
24                                              Judge:           Hon. Richard Seeborg
                                                Courtroom:       3, 17th Floor
25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on Thursday, June 2, 2011, at 1:30 p.m., or at such time thereafter as the matter may be heard, in the courtroom of the Honorable Richard Seeborg, Courtroom 3, 17th floor, 450 Golden Gate Avenue, San Francisco, California 94102, Nominal Defendant Oracle Corporation ("Oracle" or the "Company") shall, and hereby does, move to dismiss Plaintiffs' Consolidated Shareholder Derivative Action Complaint for lack of standing pursuant to Federal Rules of Civil Procedure 23.1 and 41(b).

This Motion is based upon this Notice and the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Philip T. Besirof in Support of Defendants' Motions to Dismiss, the papers on file in the action, the argument of counsel at the hearing, and other matters as may be considered by the Court.

**ISSUES TO BE DECIDED**

1.      Do Plaintiffs lack standing to proceed with this derivative action where they did not make a pre-suit demand on Oracle's Board of Directors and do not allege with particularity that a majority of Oracle's Board of Directors is disqualified from considering a pre-suit demand?

2.      Do Plaintiffs lack standing to proceed with this derivative action for the additional reason that they do not allege with particularity that they continuously owned Oracle stock from the time of the alleged misconduct to the present?

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................................... iii

INTRODUCTION ........................................................................................................................1

BACKGROUND ...........................................................................................................................2

ARGUMENT ................................................................................................................................4

I.     TO EXCUSE DEMAND, PLAINTIFFS MUST ALLEGE PARTICULARIZED
FACTS ESTABLISHING THAT A MAJORITY OF THE BOARD IS NOT
DISINTERESTED AND INDEPENDENT....................................................................4

II.    PLAINTIFFS FAIL TO ALLEGE PARTICULARIZED FACTS
ESTABLISHING THAT A MAJORITY OF THE BOARD IS SELF-
INTERESTED..................................................................................................................6

        A.    Plaintiffs Do Not Support With Particularized Facts Their Conclusory
Allegations Of The Directors' Bad Faith And Disloyalty.....................................8

               1.    Plaintiffs do not plead facts as to each Director. .......................................8

               2.    Plaintiffs fail to plead particularized facts showing that any Director
participated in any alleged misconduct. ....................................................9

               3.    Plaintiffs fail to plead particularized facts showing that any Director
knew of the alleged misconduct. ............................................................11

               4.    Plaintiffs fail to plead particularized facts showing that any Director
was on notice of the alleged misconduct.................................................12

        B.    Plaintiffs Do Not Support With Particularized Facts Their Conclusory
Allegations That The Directors Failed To Provide Proper Oversight.................17

        C.    Plaintiffs Do Not Support With Particularized Facts Their Conclusory
Allegations That Any Director Breached The Duty Of Care. .............................18

        D.    Plaintiffs Fail To Plead Particularized Facts To Show That Oracle Was
Damaged By Any Alleged Board Misconduct. ...................................................19

III.    PLAINTIFFS ALSO FAIL TO PLEAD PARTICULARIZED FACTS
SUFFICIENT TO OVERCOME THE PRESUMPTION THAT A MAJORITY OF
ORACLE'S BOARD IS INDEPENDENT. ....................................................................20

        A.    Allegations Based On Company Affiliations Or Personal Relationships Do
Not Demonstrate That Any Director Lacks Independence. ................................21

        B.    Allegations That The Directors Received Compensation Do Not Plead That
The Oracle Board Lacks Independence...............................................................23

IV.    THE VIRGINIA ACTION FURTHER DEMONSTRATES WHY DEMAND
WAS REQUIRED, NOT WHY IT SHOULD BE EXCUSED......................................24

V.      PLAINTIFFS ALSO FAIL ADEQUATELY TO ALLEGE CONTINUOUS
        OWNERSHIP OF ORACLE STOCK. ...........................................................................24

CONCLUSION ...................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arnold v. Soc'y for Sav. Bancorp.*,
　650 A.2d 1270 (Del. 1994) ................................................................................................ 19

*Aronson v. Lewis*,
　473 A.2d 805 (Del. 1984) ........................................................................................... 5, 6, 8

*Beam v. Stewart*,
　845 A.2d 1040 (Del. 2004) .................................................................................. 5, 6, 20, 22

*Bell Atlantic v. Twombly*,
　550 U.S. 544 (2007) ............................................................................................................ 7

*Benihana of Tokyo, Inc. v. Benihana Inc.*,
　891 A.2d 150 (Del. Ch. 2005) ...................................................................................... 8, 18

*Braddock v. Zimmerman*,
　906 A.2d 776 (Del. 2006) ................................................................................................... 6

*Brehm v. Eisner*,
　906 A.2d 27 (Del. 2006) ..................................................................................................... 8

*Brown v. Moll*,
　No. 09-5881-SI, 2010 U.S. Dist. LEXIS 73875 (N.D. Cal. July 21, 2010) .......................... 13

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
　__ F.3d __, No. 09-16181, 2011 U.S. App. LEXIS 5979 (9th Cir. Mar. 24, 2011) ................. 7

*Daisy Sys. Corp. v. Finegold*,
　No. C 86-20719(SW), 1988 U.S. Dist. LEXIS 16765 (N.D. Cal. Sept. 19, 1988) ............... 20

*Dollens v. Zionts*,
　No. 01 C 2826, 2002 U.S. Dist. LEXIS 13511 (N.D. Ill. July 22, 2002) ............................. 20

*Grobow v. Perot*,
　539 A.2d 180 (Del. 1988) .................................................................................................. 20

*Guttman v. Huang*,
　823 A.2d 492 (Del. Ch. 2003) .............................................................................. 5, 10, 18

*Highland Legacy Ltd. v. Singer*,
　No. 1566-N, 2006 Del. Ch. LEXIS 55 (Del. Ch. Mar. 17, 2006) ...................................... 23

*In re Accuray, Inc. S'holder Derivative Litig.*,
　No. 09-05580 CW, 2010 U.S. Dist. LEXIS 90068 (N.D. Cal. Aug. 31, 2010) .................... 11

*In re Affiliated Computer Servs., Inc. S'holder Litig.*,
　No. 2821-VCL, 2009 Del. Ch. LEXIS 35 (Del. Ch. Feb. 6, 2009) ....................................... 6

*In re Asyst Techs, Inc. Derivative Litig.*,
  No. C-06-04669 EDL, 2008 U.S. Dist. LEXIS 96834 (N.D. Cal. Nov. 12, 2008) ................ 25

*In re Autodesk, Inc. S'holder Derivative Litig.*,
  No. 06-7185-PJH, 2008 U.S. Dist. LEXIS 101015 (N.D. Cal. Dec. 15, 2008) ...................... 13

*In re Baxter Int'l, Inc. S'holders Litig.*,
  654 A.2d 1268 (Del. Ch. 1995) ....................................................................................... 19

*In re Caremark Int'l Inc. Derivative Litig.*,
  698 A.2d 959 (Del. Ch. 1996) ......................................................................................... 17

*In re Citigroup, Inc. S'holder Derivative Litig.*,
  964 A.2d 106 (Del. Ch. 2009) ............................................................................... 10, 17, 19

*In re Connectics Corp. Sec. Litig.*,
  542 F. Supp. 2d 996 (N.D. Cal. 2008) ............................................................................ 10

*In re Cray, Inc. Derivative Litig.*,
  431 F. Supp. 2d 1114 (W.D. Wash. 2006) ...................................................................... 20

*In re E.F. Hutton Banking Practices Litig.*,
  634 F. Supp. 265 (S.D.N.Y. 1986) .................................................................................. 24

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
  906 A.2d 808 (Del. Ch. 2005) ......................................................................................... 21

*In re Oracle Corp. Derivative Litig.*,
  867 A.2d 904 (Del. Ch. 2004) ......................................................................................... 17

*In re Oracle Corp. Derivative Litig.*,
  824 A.2d 917 (Del. Ch. 2003) ......................................................................................... 22

*In re Oracle Corp. Sec. Litig.*,
  No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 19, 2009) ...................... 16

*In re PMC-Sierra, Inc. Derivative Litig.*,
  No. C-06-05330 RS, 2008 U.S. Dist. LEXIS 110144 (N.D. Cal. May 8, 2008) ................. 5, 9

*In re Sagent Tech., Inc. Derivative Litig.*,
  278 F. Supp. 2d 1079 (N.D. Cal. 2003)......................................................................... 9, 24

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) .......................................................................................... 5, 8

*In re VeriFone Holdings, Inc. S'holder Derivative Litig.*,
  No. C-07-06347 MHP, 2009 U.S. Dist. LEXIS 44138 (N.D. Cal. May 26, 2009).......... 11, 22

*In re VeriSign, Inc., Derivative Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007)..............................................................*passim*

*In re Zoran Corp. Derivative Litig.*,
  511 F. Supp. 2d 986 (N.D. Cal. 2007)............................................................................ 7

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ................................................................................................4, 5

*Kenney v. Koenig*,
    426 F. Supp. 2d 1175 (D. Colo. 2006) .................................................................. 10

*Knopf v. Semel*,
    No. 08-3658-JF, 2010 U.S. Dist. LEXIS 35925 (N.D. Cal. Mar. 17, 2010) ............................ 25

*Leung v. Schuler*,
    C.A. No. 17089, 2000 Del. Ch. LEXIS 134 (Del. Ch. Sept. 29, 2000) .................................... 5

*Lewis v. Chiles*,
    719 F.2d 1044 (9th Cir. 1983) ................................................................................ 24

*MCG Capital Corp. v. Maginn*,
    No. 4521-CC, 2010 Del. Ch. LEXIS 87 (Del. Ch. May 5, 2010) ........................................ 19

*Nach v. Baldwin*,
    No. C-07-0740, 2008 U.S. Dist. LEXIS 80288 (N.D. Cal. Feb. 12, 2008) ............................ 20

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002) ................................................................................ 22

*Potter v. Hughes*,
    546 F.3d 1051 (9th Cir. 2008) ........................................................................ 6, 8, 10

*Quinn v. Anvil*,
    620 F.3d 1005 (9th Cir. 2010) .............................................................................. 5

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ........................................................................... *passim*

*Rattner v. Bidzos*,
    C.A. No. 19700, 2003 Del. Ch. LEXIS 103 (Del. Ch. Sep. 30, 2003) .................................... 12

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ........................................................................... *passim*

*Wood v. Baum*,
    953 A.2d 136 (Del. 2008) ......................................................................... 6, 11, 13

**STATUTES**

Delaware General Corporation Law § 102(b)(7) .......................................................... 19

False Claims Act, 31 U.S.C. §§ 3729-3733 .............................................................. 2

**OTHER AUTHORITIES**

Fed. R. Civ. P.
   Rule 9(b) ............................................................................................................... 7
   Rule 23.1 ....................................................................................................... *passim*
   Rule 41(b) ............................................................................................................. 2

**INTRODUCTION**

It is a fundamental tenet of corporate law that a corporation's directors—*not* its individual shareholders—control the company's affairs, including the decision whether to pursue litigation. Derivative actions may proceed only in the exceptional circumstance where a shareholder has established that the board has wrongfully refused a pre-suit demand to sue, or where a plaintiff demonstrates that making a demand would be futile by pleading particularized factual allegations showing that a majority of the directors is "interested" in the underlying claims, or lacks independence from someone who is.

Plaintiffs—two purported shareholders of Oracle Corporation—made no pre-suit demand on Oracle's Board of Directors, yet they contend that they should be allowed to pursue derivative claims on Oracle's behalf based on allegations that some of its officers and directors "caused" or "allowed" Oracle to engage in alleged fraudulent billing of the federal government. Plaintiffs come nowhere close to pleading that demand on Oracle's Board would have been futile, and the Complaint should, therefore, be dismissed.

Plaintiffs filed their initial complaint days after a court in the Eastern District of Virginia unsealed a pending qui tam action against Oracle (the "Virginia action"). The Complaint parrots the allegations from the Virginia action relating to fraudulent billing practices and tacks on to them unsupported allegations that ten of the twelve members of Oracle's Board "caused" or "allowed" alleged fraudulent billing practices to occur. Plaintiffs attempt to bolster their claims with discussions about lawsuits against other companies and prior lawsuits against Oracle. Plaintiffs also argue that, in defending this action, the Directors may have to take positions that would undermine Oracle's defense in the Virginia action, thus preventing Oracle's Board from impartially considering a pre-suit demand on Oracle's behalf.

Plaintiffs' Complaint falls far short of the requirements of Federal Rule of Civil Procedure 23.1, which Plaintiffs must meet to plead demand futility. Plaintiffs make only conclusory allegations that the Directors face a "substantial likelihood of liability"—the applicable standard—because they "caused" Oracle to engage in fraudulent billing practices. The allegations relating to other companies and prior lawsuits do not demonstrate a substantial

1   likelihood of liability for the alleged wrongdoing here.  The allegations about the Oracle

2   Directors' alleged dependence are descriptions of ordinary business relationships.  And Plaintiffs'

3   argument about the effect this case may have on the Virginia action only underscores the need to

4   give Oracle's Board the opportunity to consider whether this litigation is in the Company's best

5   interests.

6       As a separate, independent basis for dismissal, Plaintiffs fail to allege with sufficient

7   particularity that they continuously owned Oracle stock from the time of the alleged misconduct

8   to the present.

9       For these reasons, and as set forth below, the Complaint fails to meet the exacting

10   pleading standards of Rule 23.1 and should, therefore, be dismissed pursuant to Rule 41(b).

11                                **BACKGROUND**

12       On May 29, 2007, Paul Frascella filed a qui tam action under seal against Oracle in the

13   Eastern District of Virginia, alleging violations of the False Claims Act, 31 U.S.C. §§ 3729-3733

14   ("FCA").  *See United States ex rel. Paul Frascella v. Oracle Corp.*, Case No. 07-cv-529.  On

15   July 29, 2010, the Virginia action was unsealed, and the United States filed a complaint in

16   intervention.  Four days later, Plaintiff Lisa Galaviz filed the first of two nearly identical

17   derivative lawsuits against certain members of Oracle's Board of Directors, based on the same

18   facts alleged in the Virginia action.  (Docket No. 1.)  Plaintiff Philip Prince filed the second suit

19   on August 19, 2010.  (*Prince v. Berg, et al.*, Case No. 3:10-cv-04233, Docket No. 1.)  Neither

20   Plaintiff made a demand on Oracle's Board before filing suit.  Plaintiffs filed their amended

21   Consolidated Shareholder Derivative Action Complaint (the "Complaint" or "Compl.") on

22   February 10, 2011, copying over fifty paragraphs from the complaints in the Virginia action.

23       Plaintiffs allege that Oracle negotiated a software products and services contract with the

24   federal government through the General Services Administration (the "GSA"), but failed to

25   provide accurate information and to abide by contractual terms regarding pricing, in violation of

26   federal law.  (*See* Compl. ¶¶ 58-87.)  Plaintiffs allege that Oracle employees overcharged the

27   government by failing to offer proper discounts relative to those given to other customers.  (*Id.*)

28   Plaintiffs allege that certain members of Oracle's Board breached their fiduciary duties by

1    "knowingly authoriz[ing] or recklessly disregard[ing]" the illegal practices (Compl. ¶ 131), and

2    that these Directors failed to exercise adequate oversight over the Company (*e.g.*, Compl. ¶¶ 110-

3    20).

4         The Complaint names as Defendants ten of the twelve members of Oracle's Board when

5    Plaintiffs first filed their individual lawsuits:  Jeffrey S. Berg, H. Raymond Bingham, Michael J.

6    Boskin, Safra A. Catz, Lawrence J. Ellison, Hector Garcia-Molina, Jeffrey O. Henley, Donald L.

7    Lucas, Charles E. Phillips, Jr.,[1] and Naomi O. Seligman (collectively, the "Directors").  Eight of

8    Oracle's Board members—a majority of the Board—are outside directors who have never been

9    employed by Oracle:  Bruce R. Chizen and George H. Conrades, whom Plaintiffs did not sue,

10   together with Messrs. Berg, Bingham, Boskin, Garcia-Molina, Lucas, and Ms. Seligman

11   (collectively, the "Outside Directors").  (Compl. ¶ 108.)  Plaintiffs allege no facts about the

12   Outside Directors' alleged wrongdoing.  Messrs. Ellison and Phillips and Ms. Catz were officers

13   employed by the Company when Plaintiffs filed their Complaint, and Mr. Henley had been an

14   officer until 2004 (the "Inside Directors").  (*See* Compl. ¶¶ 17, 18, 20, 22.)[2]

15        Plaintiffs allege that the Directors are "personally responsible for the decisions that are at

16   the heart of this case."  (Compl. ¶ 162.)  According to Plaintiffs, demand would be futile because

17   the Directors face a substantial likelihood of liability based on the alleged misconduct, and thus

18   are not able to conduct an "independent" and "objective" investigation.  (*E.g.*, Compl. ¶¶ 109,

19   115, 116, 119, 131.)

20        Plaintiffs allege that the Directors—as a group—participated in, knew of, or must have

21   known of the alleged misconduct.  Plaintiffs' Complaint, however, alleges that a "small group of

22   Oracle managers" authorized the "illicit contracting practices," and refers to a small number of

23   internal Oracle emails from or to these employees discussing contracting discounts (Compl.

24   ¶¶ 75, 76, 79-80, 117), without linking these communications or any others to the Directors.  The

25   only Board participation that Plaintiffs allege concerns two of the Inside Directors:  "the office of

---

[1]  Mr. Phillips no longer serves as either a director or an officer of Oracle.

[2]  Throughout this motion, the "Board" refers to all twelve members of Oracle's Board at the time Plaintiffs first filed their individual lawsuits.

1   Oracle's CEO [is] responsible for approving all non-standard discounts and business terms";

2   Mr. Ellison approved "all pricing discounts"; and employees "under [Ms. Catz's] supervision . . .

3   personally authorized and signed off on various non-standard discounts."  (Compl. ¶¶ 129, 146.)

4        Plaintiffs plead that, given the Directors' positions, they had "access to critical

5   information" that demonstrated the wrongdoing.  (*E.g.*, Compl. ¶¶ 139-41, 149.)  Plaintiffs do not

6   identify any particular report, conversation, meeting, document, or other event showing that the

7   Directors knew of any discounting practices, let alone those at issue here.

8        Plaintiffs also allege that demand would be futile because the Directors are not sufficiently

9   independent to consider a demand.  According to Plaintiffs, the Directors are not independent

10  because:  (1) certain Directors are affiliated with other companies that are customers of Oracle

11  (Compl. ¶¶ 139, 158); (2) Messrs. Boskin and Garcia-Molina teach at Stanford University, which

12  receives donations from Oracle and its directors (Compl. ¶¶ 142, 150); and (3) there are personal

13  connections between Board members (*e.g.*, Compl. ¶ 154).

14       Plaintiffs claim that as a result of the alleged wrongdoing, the Company has suffered loss

15  to its reputation and goodwill, as well as the costs associated with investigating misconduct and

16  defending lawsuits.  (*See* Compl. ¶ 4.)

17       As discussed below, Plaintiffs lack standing for numerous reasons.

**ARGUMENT**

**I.    TO EXCUSE DEMAND, PLAINTIFFS MUST ALLEGE PARTICULARIZED FACTS ESTABLISHING THAT A MAJORITY OF THE BOARD IS NOT DISINTERESTED AND INDEPENDENT.**

22       It is a "basic principle of corporate governance that the decisions of a corporation—

23  including the decision to initiate litigation—should be made by the board of directors."  *Kamen v.*

24  *Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991) (internal quotations omitted).  An individual

25  shareholder "does not have standing to sue in an individual capacity for injury to the

26  corporation."  *In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1188 (N.D. Cal.

27  2007).  Instead, the action must be brought as a shareholder derivative action—"an equitable

28  remedy in which a shareholder asserts on behalf of a corporation a claim not belonging to the

1    shareholder, but to the corporation." *Id.* (internal quotations omitted).

2          Under Rule 23.1, a shareholder seeking to represent the interests of a corporation through

3    a derivative lawsuit must first demand action from the corporation's board of directors or, in the

4    alternative, "plead with particularity the reasons why such demand would have been futile." *In re*

5    *Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999).  Plaintiffs who choose not to

6    make a demand before filing suit must meet these "stringent" pleading requirements because a

7    derivative suit is an "extraordinary process" and "a remedy of last resort." *Quinn v. Anvil*,

8    620 F.3d 1005, 1012 (9th Cir. 2010) (internal quotations omitted).

9          Delaware law presumes that, in considering a demand, directors will be "faithful to their

10   fiduciary duties." *Beam v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004).[3]  A plaintiff who does

11   not make a demand bears the burden of pleading particularized facts "to overcome that

12   presumption." *Id*.  The presumption of good faith is heightened for outside directors.  *See*, *e.g.*,

13   *Leung v. Schuler*, C.A. No. 17089, 2000 Del. Ch. LEXIS 134, at *19 (Del. Ch. Sept. 29, 2000)

14   (dismissing complaint where allegations failed to overcome "heightened" presumption of good

15   faith that applied to outside directors).  To overcome these presumptions, a derivative plaintiff

16   must plead "particularized factual allegations . . . creat[ing] a reasonable doubt that . . . the board

17   of directors could have properly exercised its independent and disinterested business judgment in

18   responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).[4]  A director may be

19   deemed interested "where a corporate decision will have a materially detrimental impact on [the]

20

---

21   [3] Oracle is a Delaware corporation.  (*See* Compl. ¶ 13.)  Delaware law, therefore, supplies
     the substantive standard for assessing whether demand should be excused.  *See Kamen*, 500 U.S.
22   at 108-09; *Silicon Graphics*, 183 F.3d 970, 990 (9th Cir. 1999); *In re PMC-Sierra, Inc. Derivative
     Litig.*, No. C-06-05330 RS, 2008 U.S. Dist. LEXIS 110144, at *8 (N.D. Cal. May 8, 2008).

23   [4] Plaintiffs' allegations that the Directors breached fiduciary duties or failed to exercise
     appropriate oversight do not "challenge any particular business decision made by the . . . board as
24   a whole"; "therefore, the *Rales* test, and not the two-pronged demand futility test of *Aronson v.*
     *Lewis*, is applied [to] determine whether demand is excused." *Guttman v. Huang*, 823 A.2d 492,
25   499-500 (Del. Ch. 2003) (citing *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984)).  Regardless,
     applying *Aronson's* two-pronged test would result in the same outcome.  Where Plaintiffs have
26   not "pleaded with particularity facts showing that the Board approved, acquiesced in, or otherwise
     supported the alleged false statements or the allegedly improper" conduct, the Court "must
27   presume that the Board had a legitimate business purpose" in making any relevant decision.
     *Silicon Graphics*, 183 F.3d at 990.

28

1    director, but not on the corporation and the stockholders." *Rales*, 634 A.2d at 936.  To make this

2    showing, a plaintiff must plead particularized facts establishing that a director's actions were "so

3    *egregious* [that] a *substantial likelihood* of director liability" exists for a particular claim.

4    *Aronson*, 473 A.2d at 815 (emphases added); *see also Wood v. Baum*, 953 A.2d 136, 141 (Del.

5    2008).  A "mere threat of personal liability . . . is insufficient."  *Rales*, 634 A.2d at 936 (internal

6    quotations omitted).

7         A director is not "independent" if he is so "beholden" to a defendant who has a personal

8    financial interest in the litigation that the director's "discretion would be sterilized."  *Id.*

9    Delaware law presumes that directors are independent, *see Beam*, 845 A.2d at 1048-49, and to

10   overcome that presumption, a plaintiff must plead particularized facts showing that the director

11   has abandoned his fiduciary duties to the corporation as a result of those ties, s*ee id.* at 1050.

12        Finally, a derivative complaint must plead facts sufficient to demonstrate that demand is

13   excused for a *majority* of the board.  *See Potter v. Hughes*, 546 F.3d 1051, 1059 (9th Cir. 2008).

14   Here, that requirement can be satisfied only by showing that at least six members of Oracle's

15   Board were interested or lacked independence when Plaintiffs first filed their complaints.

16   *See Beam*, 845 A.2d at 1046 n.8.[5]

17   **II.    PLAINTIFFS FAIL TO ALLEGE PARTICULARIZED FACTS ESTABLISHING**
     **THAT A MAJORITY OF THE BOARD IS SELF-INTERESTED.**
18

19        The Complaint alleges that each of the Directors is self-interested, and thus disabled from

20   impartially considering a demand, because he or she faces a substantial likelihood of liability for

21

22

23        [5]  Under *Braddock v. Zimmerman*, 906 A.2d 776, 784-86 (Del. 2006), demand futility
     should be assessed based on the Board's composition at the time Plaintiffs filed the Consolidated
24   Complaint, rather than at the time Plaintiffs filed the original complaints.  *Id.*; *see also In re*
     *Affiliated Computer Servs., Inc. S'holders Litig.*, No. 2821-VCL, 2009 Del. Ch. LEXIS 35, at
25   *25-29 (Del. Ch. Feb. 6, 2009).  Regardless, Plaintiffs do not meet the requirements for pleading
     demand futility based on the Board's composition at either time.  The eight Outside Directors
26   have remained the same, and Plaintiffs provide no particularized facts demonstrating that any of
     them is interested or dependent.  The only change that occurred between filing the original
27   complaints and the Consolidated Complaint was Charles Phillips's departure and Mark Hurd's
     arrival.  Plaintiffs provide no particularized facts about either of these Board members.
28

breach of fiduciary duty claims.  (Compl. ¶¶ 115-16.)[6]  To state a claim for breach of fiduciary duty, Plaintiffs must allege either a breach of the duty of loyalty or a breach of the duty of care. *See Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (explaining that only violations of "the duties of care and loyalty . . . may directly result in liability").  Plaintiffs provide no particularized facts relating to any of the eight Outside Directors and thus cannot demonstrate that a majority of the Board is self-interested.  Moreover, as discussed below, Plaintiffs have not pled particularized facts showing that *any* Director faces a substantial likelihood of liability.

Plaintiffs' breach of fiduciary duty claims against the Directors all rest on the allegations that they "knowingly authorized or recklessly disregarded" fraudulent billing practices that were "open and notorious."  (Compl. ¶ 131.)  Plaintiffs allege the following theories of the Directors' liability:

- the Directors, as a group, participated in the alleged misconduct (*e.g.*, Compl. ¶¶ 128-31, 146); or

- the Directors, as a group, knew of the alleged misconduct, but nevertheless "permitted" it to occur (*e.g.*, Compl. ¶¶ 25, 111, 131, 139-41, 149); or

- the Directors, as a group, were on notice of the alleged misconduct (*e.g.*, Compl. ¶¶ 91-106, 115, 121-27); or

- the Directors, as a group, failed to exercise adequate oversight by permitting or recklessly disregarding illicit contracting practices (*e.g.*, Compl. ¶¶ 110-20).

Plaintiffs' allegations fail to meet the general pleading standard set forth in *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), which holds that a complaint providing "labels and conclusions" does not state a claim.  Nor do Plaintiffs' allegations meet the "heightened pleading standard of Rule 9(b), [which] governs FCA claims." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, __ F.3d __, No. 09-16181, 2011 U.S. App. LEXIS 5979, at *10 (9th Cir. Mar. 24, 2011).  The

---

[6]  Plaintiffs' abuse of control claims are not recognized as a separate cause of action under Delaware law, and are treated as claims for breach of fiduciary duty.  *See In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1019 (N.D. Cal. 2007).

1  Complaint therefore falls far short of the even more stringent standards for pleading demand

2  futility under Rule 23.1.  *See Silicon Graphics*, 183 F.3d at 989-90; *Rales*, 634 A.2d at 934.

3
> **A.      Plaintiffs Do Not Support With Particularized Facts Their Conclusory Allegations Of The Directors' Bad Faith And Disloyalty.**

4

5      Plaintiffs allege that the Directors face a substantial likelihood of liability for breaching

6  the duty of loyalty.  (*E.g.*, Compl. ¶¶ 24, 115, 164, 165.)  To plead a breach of the duty of loyalty,

7  Plaintiffs must allege facts showing that a Director engaged in self-dealing, acted with a conflict

8  of interest, or engaged in a transaction that produced an improper personal benefit.  *See Aronson*,

9  473 A.2d at 812; *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 191 (Del. Ch. 2005),

10  *aff'd*, 906 A.2d 114 (Del. 2006).  Plaintiffs do not allege that any Director engaged in self-

11  dealing.  Moreover, as discussed below, Plaintiffs do not support their allegations of a purported

12  conflict of interest or improper personal benefit with any facts.  (*See infra*, II.A.4.c, III.A, III.B.,

13  IV.)

14      The duty of loyalty also includes the duty to avoid acting in "bad faith."  *Stone*, 911 A.2d

15  at 370.  Bad faith is knowing, intentional conduct demonstrating a "conscious disregard" for a

16  director's duties.  *Id.* at 369; s*ee also Brehm v. Eisner*, 906 A.2d 27, 64 n.102 (Del. 2006) (bad

17  faith "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity")

18  (internal citations omitted).  As discussed below, Plaintiffs do not plead particularized facts—or

19  any facts at all—to show bad faith on the part of any Director.

20
> **1.      Plaintiffs do not plead facts as to each Director.**

21      Plaintiffs make almost no effort to attribute conduct to any particular Director.  Instead,

22  throughout the Complaint, Plaintiffs repeatedly refer to "the Defendants" or "each member of the

23  Board."  (*E.g.*, Compl. ¶¶ 3, 24, 25, 106, 111, 117-18.)  "Group" allegations do not meet the

24  requirement of pleading particularized facts.  *See Potter*, 546 F.3d at 1058.

25      The Complaint alleges misconduct stretching over an eight-year Relevant Period, from

26  1998 to 2006.  (*See* Compl. ¶ 3.)  Many of the Directors were not even on the Oracle Board in

27  1998:  Ms. Catz and Mr. Garcia-Molina joined the Board in October 2001; Mr. Bingham in

28  November 2002; Mr. Phillips in January 2004; and Ms. Seligman in November 2005.  (Compl.

¶¶ 15, 17, 19, 22, 23.)  Plaintiffs do not explain how these Directors are responsible for alleged misconduct by Oracle years before they joined the Board, yet Plaintiffs ask the Court to excuse Plaintiffs' failure to make a demand based on that very assumption.  On this ground alone, the Complaint should be dismissed.  *See PMC-Sierra*, 2008 U.S. Dist. LEXIS 110144, at *6 (dismissing derivative complaint where plaintiffs failed to plead facts showing how directors could be responsible for alleged misconduct that occurred before their board tenure); *In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1093-95 (N.D. Cal. 2003) (same).

### 2.   Plaintiffs fail to plead particularized facts showing that any Director participated in any alleged misconduct.

Aside from vague group allegations, the Complaint provides only conclusory labels—not particularized facts—of Director involvement in the alleged wrongdoing.  Plaintiffs allege that the Directors "caused," "consciously permitted or failed to prevent," "authorized or recklessly permitted," or were "personally and directly involved" with the acts alleged in the Complaint. (*E.g.*, Compl. ¶¶ 24, 25, 108, 120.)  These allegations are unsupported by any facts; they are "not the particularized factual allegations" required by Rule 23.1.  *Rales*, 634 A.2d at 934.

Eight members of the Board are Outside Directors about whom Plaintiffs provide no allegations of participation; indeed, Plaintiffs did not even sue two of them.  The Court need go no further to determine that a majority of the Board is not alleged to have participated in any misconduct.  In addition, two Inside Directors—Messrs. Henley and Phillips—are past officers of the Company, but Plaintiffs make no allegations concerning Mr. Phillips and only conclusory allegations that Mr. Henley had access to a sales monitoring system.  (Compl. ¶ 124.)

In fact, no Board members are named as defendants in the Virginia action, and neither the original nor the amended U.S. intervenor complaint even mentions any Board member—Outside or Inside.  The original qui tam complaint (as opposed to the intervenor complaints) mentions only one Director—Ms. Catz—once and only in the context of a discounted sale to a *non-governmental* entity.  (*See* Besirof Decl. Ex. 12 at ¶ 35.)  The fact that none of the Directors was named as a defendant in the Virginia action, which the Complaint in this case substantially copies, further undermines Plaintiffs' conclusion that the Directors participated in the alleged

1   wrongdoing.  *See, e.g., Guttman*, 823 A.2d at 504 (fact that derivative defendants were not named

2   in underlying case, which was "the primary source of information used by the plaintiffs,"

3   undercuts substantial likelihood of liability); *Kenney v. Koenig*, 426 F. Supp. 2d 1175, 1184

4   (D. Colo. 2006) (same, also following Delaware law).

5        The only factual allegations contained in the Complaint do not relate to the Directors at

6   all.  Rather, they refer generally to certain "Oracle employee[s]" and allege that internal Oracle

7   emails from or to these employees demonstrate corporate wrongdoing.  (*E.g.*, Compl. ¶¶ 79-80.)

8   Plaintiffs plead no facts to suggest that any of the employees they identify ever had contact or

9   communications with any Director.  (*E.g.*, Compl. ¶¶ 44, 81, 82.)  Nor do Plaintiffs allege that

10  any Director read, sent, received, or even knew about the alleged emails that Plaintiffs describe.

11       Plaintiffs also allege that "supervisors" and "senior management" engaged in the alleged

12  wrongdoing.  (*E.g.*, Compl. ¶¶ 29, 31, 75, 82, 117, 130, 131.)  But these allegations do not plead

13  with particularized facts that any of the Directors participated in the purported misconduct.

14  Plaintiffs are required to demonstrate how the *Board*—not Oracle or its employees—was actually

15  involved in the alleged wrongdoing.  *See In re Citigroup, Inc. S'holder Derivative Litig.*,

16  964 A.2d 106, 133 n.88 (Del. Ch. 2009); *Potter*, 546 F.3d at 1058.

17       Plaintiffs attempt to plead that Mr. Ellison, who is both the CEO of Oracle and a Board

18  member, faces a substantial likelihood of liability because "the office of Oracle's CEO [was]

19  responsible for approving all non-standard discounts and business terms," and that he "exercised

20  extraordinary control over deals, approving all pricing discounts."  (Compl. ¶ 129.)  Plaintiffs

21  provide no particularized facts to support this allegation.  In fact, even though Plaintiffs copy over

22  fifty paragraphs from the complaints in the Virginia action, nowhere do those complaints include

23  the allegation that Mr. Ellison himself exercised control over deals or discounts.[7]  Nor do

24

25        [7] Courts have disregarded allegations copied wholesale from separate complaints, as is the
    case here.  *See In re Connectics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1004-05 (N.D. Cal. 2008).
26  Plaintiffs' Complaint copies numerous allegations directly from the complaints in the Virginia
    action.  (*Compare* Compl. ¶¶ 32-87 *with* United States' First Amended Complaint in Intervention,
27  Declaration of Philip T. Besirof in Support of Defendants' Motions to Dismiss ("Besirof Decl."),
    Ex. 13 at ¶¶ 18-28; 31-45; 47-48; 59; 61-68; 76-90 *and* United States' Complaint in Intervention,
28                                                                    *[Footnote continues on next page.]*

1   Plaintiffs allege any particularized facts regarding which, if any, contracts approved by the "office

2   of the CEO" violated GSA pricing requirements, much less that Mr. Ellison was aware that *any*

3   Oracle contracts violated any GSA pricing requirements.  "[A]pproval of a transaction, even one

4   that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge

5   or bad faith on the part of individual directors."  *Wood*, 953 A.2d at 142.

6       Plaintiffs also allege that employees "under [Ms. Catz's] supervision . . . personally

7   authorized and signed off on various non-standard discounts."  (Compl. ¶ 146.)  Again, however,

8   Plaintiffs allege no particularized facts suggesting that Ms. Catz herself approved or was aware of

9   these "non-standard discounts."  (Compl. ¶ 146.)  Moreover, Plaintiffs do not allege that these

10  discounts violated GSA pricing practices at all; they allege only that the discounts were

11  "impacted by" the purported misconduct.  (Compl. ¶ 146.)

12          **3.      Plaintiffs fail to plead particularized facts showing that any Director
                      knew of the alleged misconduct.**

13

14      As discussed above, Plaintiffs do not show that any Director participated in any of the

15  alleged wrongdoing.  The Complaint is similarly devoid of any facts suggesting that any Director

16  knew of the allegedly illegal conduct.  The Complaint concludes that there were "systematic"

17  violations of the FCA, but does not plead particularized facts showing that any Director was

18  aware of those purported violations.  Plaintiffs' failure to plead particularized facts showing any

19  Director's knowledge of the alleged misconduct is fatal to their claims.  *See Wood*, 953 A.2d at

20  141; *see also In re Accuray, Inc. S'holder Derivative Litig.*, No. 09-05580 CW, 2010 U.S. Dist.

21  LEXIS 90068, at *19 (N.D. Cal. Aug. 31, 2010) (rejecting conclusory allegations of director

22  knowledge); *In re VeriFone Holdings, Inc. S'holder Derivative Litig.*, No. C-07-06347 MHP,

23  2009 U.S. Dist. LEXIS 44138, at *21-25 (N.D. Cal. May 26, 2009) (same).

24      Plaintiffs imply that the Directors knew of the alleged misconduct because of internal

25  reports and certain Directors' positions within the Company and on the Board.  Nowhere,

26  ───────────────

*[Footnote continued from previous page.]*

27  Besirof Decl. Ex. 12 at ¶¶ 36; 38-39; 42; 46-47; 50; 52-53; 56; 58-63; 67-68; 79-84; 86; 91-92;
    *compare* Compl. ¶¶ 128-31 *with* May 29, 2007 Complaint, Besirof Decl. at ¶¶ 20-21; 25; 28; 32.)

28

however, does the Complaint identify any particular report, conversation, meeting, or document

to demonstrate that the Directors knew that the Company was (allegedly) engaged in fraudulent

billing practices.  Allegations that Directors "had access" to unidentified "critical information"

(*e.g.*, Compl. ¶¶ 139-41, 149) do not meet Plaintiffs' pleading burden.  *Rattner v. Bidzos*, C.A.

No. 19700, 2003 Del. Ch. LEXIS 103, at *34 n.53 (Del. Ch. Sep. 30, 2003) (rejecting as

conclusory allegations that directors "had access" to information).

>      **4.     Plaintiffs fail to plead particularized facts showing that any Director
>              was on notice of the alleged misconduct.**

The Complaint also fails to plead that any Director was on notice or "must have known"

of any alleged wrongdoing.  Plaintiffs string together various unrelated facts concerning director

duties, other lawsuits, and common business interactions to imply that the Directors must have

acted in bad faith.  These conclusory allegations come nowhere close to meeting Plaintiffs'

burden for pleading demand futility.

>      **a.     Plaintiffs' conclusory allegations that the government was one
>              of Oracle's largest clients do not show that any Director was on
>              notice of the alleged misconduct.**

Plaintiffs' characterization of the government as "one of Oracle's largest and most

important clients" (Compl. ¶ 2) provides no support for Plaintiffs' theory that the Directors were

on notice of the alleged misconduct.  Over the course of the eight-year Relevant Period, Plaintiffs

allege that total sales to the United States government were approximately $1.1 billion.  (Compl.

¶ 3.)  Only a fraction of those sales (based on the percentage of discounting) is at issue in the

Virginia action; Plaintiffs alternately refer to "millions" (Compl. ¶ 3) or "tens of millions"

(Compl. ¶ 29) of dollars in alleged overcharges.  Comparatively, over that same period, Oracle's

total revenue exceeded $92.4 billion.  (*See* Besirof Decl. Exs. 2-10.)  Nothing about the size or

the overall relationship between Oracle and the United States government shows that any Director

knew the details of the contractual relationships and pricing discounts, in multiple transactions,

with various government agencies and how they compared to discount practices with private

companies.

1

   **b.      Allegations that certain Directors served on the Finance &
            Audit Committee do not plead that any Director was on notice
            of any alleged wrongdoing at Oracle.**

2

3       Plaintiffs suggest that Messrs. Bingham, Boskin, and Lucas must have known about

4   Oracle's alleged fraudulent pricing practices because they served as members of the Finance &

5   Audit Committee at "various points" during the Relevant Period.  (Compl. ¶ 115.)  Courts

6   routinely reject these types of allegations.  *See*, *e.g.*, *Brown v. Moll*, No. 09-5881-SI, 2010 U.S.

7   Dist. LEXIS 73875, at *17-18 (N.D. Cal. July 21, 2010); *In re Autodesk, Inc. S'holder Derivative*

8   *Litig.*, No. 06-7185-PJH, 2008 U.S. Dist. LEXIS 101015, at *25-26 (N.D. Cal. Dec. 15, 2008).

9   Plaintiffs simply provide their own interpretation of the Committee's *responsibilities*, and

10  conclude—based upon nothing more—that its members breached their fiduciary duties.  (Compl.

11  ¶¶ 116-17.)  This approach is "contrary to well-settled Delaware law."  *Wood*, 953 A.2d at 142.

12  "Mere membership on a committee or board, without specific allegations as to defendants' roles

13  and conduct, is insufficient."  *In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d at 1194

14  (internal quotations omitted).

15

   **c.      Plaintiffs' allegations that other companies faced lawsuits do
            not establish that any Director was on notice of any alleged
            wrongdoing.**

16

17      Plaintiffs imply that each of the ten Directors—including the six Outside Directors who

18  are defendants—was put on notice of the alleged wrongdoing at Oracle by lawsuits against other

19  companies, supposed industry-wide FCA problems, or tangential associations between Oracle and

20  various third parties accused of wrongdoing.  (*See* Compl. ¶¶ 91-105, 121-27.)

21      Plaintiffs describe five FCA cases brought against corporations other than Oracle:  an

22  accounting/consulting firm (Accenture), a data storage firm (EMC Corporation), Hewlett-Packard

23  Co. ("HP"), and two of the allegedly thirty-three companies that Oracle acquired during the

24  Relevant Period (PeopleSoft and Sun Microsystems, Inc. ("Sun")).[8]  According to Plaintiffs, the

25

26

27      [8] Plaintiffs also allege that the complaint against Accenture contains allegations
    concerning a third company (Siebel) that Oracle acquired during the Relevant Period, but Siebel
    is not even a party in that action.  (Compl. ¶ 99.)

28

1   *accusations* in those five lawsuits demonstrate that the Directors must have known that *Oracle*

2   was violating the FCA.  (*See* Compl. ¶¶ 91-106.)

3       It is well-established that allegations about wrongdoing at other companies do not

4   demonstrate that a director must have known about alleged wrongdoing at a different company.

5   In *VeriSign*, for example, the plaintiffs attempted to excuse pre-suit demand by alleging that

6   certain directors had been implicated in options backdating complaints (the underlying claim in

7   that case) while serving as officers or directors of other companies.  531 F. Supp. 2d at 1201.  The

8   court explained that the plaintiffs failed to plead particularized facts showing that there was any

9   "correlation" between the implication of wrongdoing by a director while serving on one

10  company's board and that director's ability to consider a demand as a director at a different

11  company.  *Id.*  For these same reasons, Plaintiffs' attempt to excuse demand in this case based on

12  alleged wrongdoing at other companies fails.  In fact, unlike the plaintiffs in *VeriSign*, Plaintiffs

13  here do not even allege that the Directors were "implicated" in any wrongdoing associated with

14  those other companies.

15      Plaintiffs also allege that Oracle ultimately paid to settle FCA claims that were pending

16  against two companies that Oracle acquired, Sun and PeopleSoft.  (*See* Compl. ¶¶ 93-94, 104.)

17  Plaintiffs do not allege that Oracle engaged in the wrongdoing alleged in those complaints.

18  Instead, they assert that it is "a reasonable inference that Oracle knew" that PeopleSoft was

19  "under investigation for conduct nearly identical to that alleged" in the Virginia action.  (Compl.

20  ¶ 96.)  Purported knowledge that another company—including one that Oracle ultimately

21  acquired—was under investigation for a certain practice does not demonstrate that the Directors

22  must have known of alleged wrongdoing at Oracle.  *See VeriSign*, 531 F. Supp. 2d at 1201.[9]

23  Moreover, allegations regarding what "Oracle" may have known are insufficient to plead

24  knowledge on the part of the Directors.  Plaintiffs' own allegations establish that the alleged

25

26      [9]  Plaintiffs allege that "Oracle purchased a total of 33" companies during the Relevant
    Period.  (Compl. ¶ 89.)  In fact, Oracle acquired more than 70 companies during that period.
27  More importantly, of those "33" companies, Plaintiffs identify only three that were sued for
    purported FCA violations.  (Compl. ¶¶ 92, 99, 103.)
28

wrongdoing in the cases against Sun and PeopleSoft took place *before* Oracle acquired the companies.[10]

The other three lawsuits mentioned likewise provide no support for allegations of any Director's bad faith. Plaintiffs allege that the pending case against Accenture, to which Oracle is not a party, is pertinent because the complaint in that case alleges that some corporations with "close tie[s]" to Oracle utilized fraudulent billing practices. (Compl. ¶ 99.) Allusions to the Accenture case and "close ties" are not particularized facts. *See VeriSign*, 531 F. Supp. 2d at 1201. Plaintiffs provide no facts to describe which companies are implicated in the Accenture complaint, the relationship between those companies and Oracle (if any), the nature of the alleged misconduct, or any reason why the allegations in that action or in any of the others they cite have any bearing on the allegations in this case.

Finally, Plaintiffs allege that the affiliations of three individuals (two of whom are not even defendants in this case) with other companies put all the Directors on notice of the alleged wrongdoing. Plaintiffs allege that Mark Hurd (not a defendant in this case and not a member of Oracle's Board during the alleged Relevant Period) served as President of HP from April 2005 to August 2010. (Compl. ¶ 101.) They allege no facts, however, establishing that Mr. Hurd's employment at HP means that any Director must have been on notice of wrongdoing at Oracle. Similarly, although Plaintiffs allege that Defendant Naomi Seligman served on Sun's board before Oracle acquired Sun (Compl. ¶ 103), they fail to allege particularized facts showing how her service at Sun would have alerted her to alleged wrongdoing at Oracle. Plaintiffs also allege that Harry You—a former Accenture employee—served as the CFO at Oracle in 2005-2006 (Compl. ¶ 102), but plead no facts about the substance of any purported communications between Mr. You and any Directors.

---

[10] *Compare* Compl. ¶ 92 (noting complaint filed against PeopleSoft on October 22, 2003) *with* Compl. ¶ 89 (noting Oracle's acquisition of PeopleSoft closed in January 2005); *compare* Compl. ¶ 103 (qui tam suit filed against Sun Microsystems on September 14, 2007) *with* Compl. ¶ 104 (Oracle acquired Sun MicroSystems in January 2010).

1

2

### d.   Plaintiffs' allegations that Oracle faced prior lawsuits do not show that any Director was on notice of any alleged wrongdoing.

3    Finally, Plaintiffs allege that an earlier derivative suit in San Mateo County against Oracle

4    and Messrs. Boskin, Ellison, Henley, and Lucas based on allegations of insider trading, together

5    with a prior FCA derivative action against Oracle University (a subsidiary of Oracle), provides

6    further evidence that the Directors were on notice of the wrongdoing alleged in the Complaint.

7    (Compl. ¶¶ 105, 121-27.)  In the San Mateo County suit, however, the allegations against every

8    defendant, except Mr. Ellison, were *dismissed*, and the case ultimately settled.  *See Oracle Cases

9    Judgment of Dismissal*, Case No. 417511, at 1 (Cal. Super. Ct. San Mateo, Nov. 22, 2005).[11]

10   Moreover, in a companion case in Delaware state court, the Delaware Chancery Court granted

11   summary judgment to Mr. Ellison, and the Delaware Supreme Court affirmed that decision.  *See

12   In re Oracle Corp. Derivative Litig.*, 867 A.2d 904, 914 (Del. Ch. 2004), *aff'd*, 872 A.2d 960

13   (Del. 2005).  Likewise, in a securities case arising from the same set of facts, this Court granted

14   summary judgment to the defendants, and the Ninth Circuit affirmed that decision.  *See In re

15   Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 19,

16   2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010).

17   In any event, the Complaint's allegations about the San Mateo County suit come nowhere

18   close to meeting Plaintiffs' burden.  The Complaint provides no factual support showing that any

19   Outside Director ever consulted any "monitoring system."  Instead, relying solely on the

20   allegations in the San Mateo County complaint, Plaintiffs here *insinuate* that, based on internal

21   reports and sales monitoring systems, the Directors would have known of alleged improper

22   discounts Oracle provided to private companies and not the government.  (Compl. ¶ 126.)  In fact,

23   in the companion case in Delaware, the court described the Company's internal revenue

24

25   [11] Plaintiffs allege that the plaintiffs in the San Mateo County suit "settled with Oracle for over $100 million."  (Compl. ¶ 127.)  In fact, Oracle paid nothing to settle the lawsuit; Mr. Ellison made a charitable contribution to do so.  *See Oracle Cases*, at 6.  And Mr. Ellison entered into the settlement agreement with the explicit understanding that he continued to deny "all allegations of wrongdoing or liability whatsoever."  *Id.* at 2.

26

27

28

1  forecast—a document showing forward-looking *Company-wide* revenue projections, not details

2  such as discounts given to specific customers.  *See Oracle Corp.*, 867 A.2d at 912-14.  Moreover,

3  the court explained that "it should not be assumed that the [internal reports] that went to the

4  [defendants] were studied to death by Ellison and Henley" because "top management's key

5  focus" "was on the company's overall performance."  *Id.* at 914.

6  **B.      Plaintiffs Do Not Support With Particularized Facts Their Conclusory
          Allegations That The Directors Failed To Provide Proper Oversight.**

7

8         Plaintiffs also allege that the Directors breached their fiduciary duties by failing to

9  exercise oversight over the Company.  (Compl. ¶ 25.)  The allegation that a director has failed

10  adequately to oversee corporate activities is known as a *Caremark* claim.  *See Stone*, 911 A.2d at

11  369-70 (citing *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996)).  The

12  *Caremark* standard is "embedded in the fiduciary duty of loyalty and [does] not constitute a

13  freestanding fiduciary duty that could independently give rise to liability."  *Citigroup*, 964 A.2d at

14  122-23.  To plead a substantial threat of liability for a *Caremark* claim, Plaintiffs must allege a

15  "sustained or systematic failure of . . . the board to exercise oversight" that demonstrates a

16  "conscious disregard" of fiduciary duties.  *Stone*, 911 A.2d at 369, 370.  Plaintiffs must

17  demonstrate failure of oversight so egregious as to constitute "bad faith," *i.e.*, that "the directors

18  *knew* that they were not discharging their fiduciary obligations."  *Id.* at 370 (emphasis added).  To

19  meet this standard, Plaintiffs must plead with particularized facts that "the directors utterly failed

20  to implement any reporting or information system or controls," or that the directors consciously

21  ignored "red flags" waving in front of them.  *Id.*  This is "possibly the most difficult theory in

22  corporation law upon which a plaintiff might hope to win a judgment."  *Id.* at 372 (internal

23  quotations omitted).

24         Far from alleging a "sustained or systematic failure" or "conscious disregard," *Stone*,

25  911 A.2d at 369, Plaintiffs offer only conclusory allegations that the Directors "caused,"

26  "consciously permitted or failed to prevent," "authorized or recklessly permitted," or were

27  "personally and directly involved" with the alleged wrongful acts.  (Compl. ¶¶ 24, 25, 108, 120.)

28

1   Nowhere do Plaintiffs plead particularized facts that "the directors utterly failed to implement"

2   any controls, or "consciously failed to monitor or oversee" controls.  *Stone*, 911 A.2d at 370.

3        Similarly, Plaintiffs do not plead a single fact "suggesting specific red—or even yellow—

4   flags were waved" at the Directors indicating that Oracle utilized improper pricing practices.

5   *Guttman*, 823 A.2d at 507.  Plaintiffs reference a handful of emails between Oracle employees,

6   but Plaintiffs do not allege that any of the Directors read, sent, received, or even knew about those

7   emails.  Allegations showing selective, non-Board communications do not establish a substantial

8   likelihood of liability because Board members are not required "to possess detailed information

9   about all aspects of the operation." *Caremark*, 698 A.2d at 971; *see also Stone*, 911 A.2d at 373

10  (declining to hold directors responsible for employee reporting failures).  Moreover, as discussed

11  above, none of Plaintiffs' other allegations provides a basis to infer the Directors' knowledge of

12  the practices at issue in this case.

13        **C.    Plaintiffs Do Not Support With Particularized Facts Their Conclusory**
           **Allegations That Any Director Breached The Duty Of Care.**
14

15        Plaintiffs also allege that the Directors face a substantial likelihood of liability for

16  breaching the duty of care.  (*E.g.*, Compl. ¶¶ 24, 115, 164, 165.)  To plead a claim for breach of

17  the duty of care, Plaintiffs must plead specific facts showing that each Director acted with gross

18  negligence.  *See Benihana*, 891 A.2d at 192.  Gross negligence in the context of the duty of care

19  is a "reckless indifference to or a deliberate disregard of the whole body of stockholders or

20  actions which are without the bounds of reason." *Id.* (internal quotations omitted).  As discussed

21  above, Plaintiffs fail to allege facts showing that any Director participated in, knew about, or even

22  was on notice of the alleged misconduct.  For these same reasons, Plaintiffs have not alleged facts

23  to show that any Director acted with gross negligence.

24        Moreover, Oracle's Certificate of Incorporation exculpates the Outside Directors (a

25  majority of the Board) from liability for breaches of the duty of care.  (*See* Besirof Decl., Ex. 1,

26  Art. 7.)  In relevant part, Article 7 provides that no Board member shall be liable to the

27  corporation for damages *except* "(i) for any breach of the director's duty of loyalty to the

28  Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve

intentional misconduct or a knowing violation of law, . . . or (iv) for any transaction from which

the director derived an improper personal benefit."[12]  This provision is authorized by

Section 102(b)(7) of Delaware's General Corporation Law.  *See Stone*, 911 A.2d at 367.[13]

To show that the Directors face a substantial likelihood of liability in the face of the

exculpatory provision, Plaintiffs must plead particularized facts demonstrating that the Directors

engaged in "bad faith, intentional misconduct, [or] knowing violation of law."  *In re Baxter Int'l,*

*Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995).[14]  As discussed above, *see supra* II.A,

Plaintiffs do not plead that any Director acted in bad faith and therefore do not demonstrate that

any Director faces a substantial likelihood of liability for a breach of the duty of care.  *See*

*Citigroup*, 964 A.2d at 125 (explaining that standards for determining a breach of the duty of

loyalty and for assessing a disinterested director's decision under the duty of care when the

company has adopted an exculpatory provision pursuant to § 102(b)(7) both require plaintiffs to

show that directors' acts or omissions constitute bad faith).

### D.   Plaintiffs Fail To Plead Particularized Facts To Show That Oracle Was Damaged By Any Alleged Board Misconduct.

Plaintiffs also have not pled any recoverable damages to the Company.  For this

independent reason, Plaintiffs have no standing because without pleading recoverable damages,

Plaintiffs cannot show that any Director faces a substantial likelihood of liability.  Plaintiffs claim

---

[12] This provision was included in Oracle's original Delaware Certificate of Incorporation, as filed in 1986.  (Besirof Decl. Ex. 1.)

[13] The exculpatory provision applies to the Inside Directors as well.  "[W]here a defendant is a director and officer, only those actions taken solely in the defendant's capacity as an officer are outside the purview of Section 102(b)(7)."  *Arnold v. Soc'y for Sav. Bancorp.*, 650 A.2d 1270, 1288 (Del. 1994).  Though the four Inside Directors were both officers and directors during the Relevant Period, Plaintiffs have not alleged that any of them engaged in wrongdoing solely in their capacity as officers.  At most, Plaintiffs conclusorily allege that, by virtue of their roles as officers, the Inside Directors knew or should have known of the alleged misconduct (*e.g.*, Compl. ¶¶ 145, 148, 155), but these allegations fail, as described above.

[14] Although the exculpatory provision does not bar claims seeking equitable relief, Plaintiffs' boilerplate prayer for "appropriate equitable relief," concerning actions that took place at least five years ago, does not create a substantial likelihood of liability.  *MCG Capital Corp. v. Maginn*, No. 4521-CC, 2010 Del. Ch. LEXIS 87, at *80 (Del. Ch. May 5, 2010) (rejecting plaintiff's argument that complaint pled substantial likelihood of liability in spite of exculpatory provision due to request for injunctive relief).

1    that, as a result of the alleged wrongdoing, the Company has incurred costs associated with

2    investigating misconduct and defending lawsuits.  (Compl. ¶ 4.)  These alleged damages do not

3    state a claim for relief.  Courts have held that "derivative claims are foreclosed when they merely

4    allege damages based on the potential costs of investigating, defending, or satisfying a judgment

5    or settlement for what might be unlawful conduct."  *In re Cray, Inc. Derivative Litig.*,

6    431 F. Supp. 2d 1114, 1133-34 (W.D. Wash. 2006); *see also Daisy Sys. Corp. v. Finegold*, No.

7    C 86-20719(SW), 1988 U.S. Dist. LEXIS 16765, at *11 (N.D. Cal. Sept. 19, 1988) ("the mere

8    filing of lawsuits cannot provide a factual predicate for alleging damages").  This is particularly

9    true here since there has been no determination that the Virginia action has any merit or that the

10    Directors were responsible for any fraudulent acts.[15]

### III.    PLAINTIFFS ALSO FAIL TO PLEAD PARTICULARIZED FACTS SUFFICIENT TO OVERCOME THE PRESUMPTION THAT A MAJORITY OF ORACLE'S BOARD IS INDEPENDENT.

13    Plaintiffs also attempt to excuse demand by alleging that a majority of the Board lacks

14    independence from a Director who is self-interested.  As Plaintiffs have failed to demonstrate that

15    any Director is self-interested, however, "it follows that [they] also cannot raise the requisite

16    doubt as to any director's 'independence.'"  *Nach v. Baldwin*, No. C-07-0740 SI, 2008 U.S. Dist.

17    LEXIS 80288, at *32 (N.D. Cal. Feb. 12, 2008).

18    In any event, Plaintiffs fail to plead particularized facts sufficient to overcome the

19    presumption of director independence.  *See Beam v. Stewart*, 845 A.2d 1040, 1049-50 (Del.

20    2004).  To establish that demand is excused based on lack of independence, Plaintiffs must plead

21    particularized facts showing that a majority of the Board is "'beholden' to the [other Board

22    members] or so under their influence that [the majority's] discretion would be sterilized."  *Rales*,

23    634 A.2d at 936; *see also Beam*, 845 A.2d at 1050; *Grobow v. Perot*, 539 A.2d 180, 189 (Del.

---

[15] Plaintiffs also allege that the Directors are responsible for damage to Oracle's "corporate image and goodwill."  (Compl. ¶ 4.)  Courts routinely reject derivative claims based on lost goodwill or injury to reputation, on the ground that such vague and speculative allegations are insufficient to state a claim for relief.  *See, e.g., Cray*, 431 F. Supp. 2d at 1134 (dismissing claims of lost goodwill); *Dollens v. Zionts*, No. 01 C 2826, 2002 U.S. Dist. LEXIS 13511, at *28 (N.D. Ill. July 22, 2002) (same).

1   1988) (to demonstrate lack of independence, a plaintiff must establish that a majority of directors

2   is "dominated or otherwise controlled" by a person who has a financial interest in the litigation),

3   *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  Plaintiffs

4   provide no particularized allegations relating to the eight Outside Directors, and thus cannot

5   demonstrate that a majority of the Board is dependent.  Nor do Plaintiffs show the dependence of

6   any other Director.

### A.   Allegations Based On Company Affiliations Or Personal Relationships Do Not Demonstrate That Any Director Lacks Independence.

9   Plaintiffs assert that the Directors cannot reach a "truly independent decision" on whether

10   to commence litigation because four of them lack independence due to affiliations with

11   companies or organizations that do business with Oracle or personal relationships among

12   themselves.

13   Plaintiffs allege that:  (1) Mr. Berg is the CEO of a company that is "a large customer of

14   Oracle" (Compl. ¶ 139); (2) Messrs. Boskin and Garcia-Molina teach at Stanford University,

15   which receives donations from Oracle and its Directors (Compl. ¶¶ 142, 150); and (3)

16   Ms. Seligman is a director of Akamai Technologies, which "purchased millions of dollars of

17   software and services from Oracle" (Compl. ¶ 158).

18   Plaintiffs misconstrue their burden to plead that the Directors lack independence.  That

19   certain Directors are affiliated with Oracle customers has no bearing on whether any Director is

20   "beholden" to an *interested Director.  See, e.g., In re J.P. Morgan Chase & Co. S'holder Litig.*,

21   906 A.2d 808, 821-22 (Del. Ch. 2005) (allegations of bank directors' affiliations and relationships

22   with other companies that conducted business with bank failed to show how directors were

23   unable to act independently of interested director), *aff'd*, 906 A.2d 766 (Del. 2006).  At best,

24   Plaintiffs' allegations show that, by virtue of their business relationships, the Directors are not

25   independent from *Oracle*—nor should they be.

26   Plaintiffs further allege that the Directors lack independence because of certain personal

27   connections or business relationships among them.  Plaintiffs allege that Mr. Lucas "serves as a

28   co-trustee of trusts for the benefit of Mr. Ellison's children," and conclude that this "interlocking

1    business relationship" is "evidence" that Mr. Lucas lacks independence.  (Compl. ¶ 154.)

2    Plaintiffs, however, get it backward:  Mr. Lucas serving as a co-trustee of trusts for Mr. Ellison's

3    children would not make Mr. Lucas beholden to Mr. Ellison; if anything, the opposite would be

4    true.  Plaintiffs plead no facts at all supporting the opposite conclusion that Mr. Lucas is beholden

5    to Mr. Ellison.

6         Similarly, Plaintiffs fail to support their generalized allegations that the Directors lack

7    independence due to shared ties with Stanford University.  (*E.g.*, Compl. ¶¶ 142, 150.)  Plaintiffs

8    allude to the Delaware Court of Chancery's decision on a motion to terminate brought by a

9    Special Litigation Committee ("SLC") appointed by the Board in *In re Oracle Corp. Derivative*

10   *Litigation*, 824 A.2d 917 (Del. Ch. 2003), to suggest that the Directors are not independent

11   because of these shared ties.  In *Oracle*, Vice Chancellor Strine concluded that the SLC could not

12   meet its burden of proving its independence, as required to sustain its motion, because of issues of

13   disputed fact regarding relationships between the members of the SLC and Stanford University.

14   *Id*. at 921.  The *Oracle* opinion provides no support for Plaintiffs' allegations:  it arose under an

15   entirely different procedural posture (a motion to terminate); the SLC bore the burden of

16   establishing its independence, while here the Directors are *presumed* to be independent, *Beam*,

17   845 A.2d at 1055; and to meet that burden, the SLC had to satisfy a standard akin to the summary

18   judgment standard.  *Oracle*, 824 A.2d at 928.  In any event, Plaintiffs only identify two members

19   of the twelve-member Board with connections to Stanford.

20        Plaintiffs' conclusory allegations that the Directors move in the same business or social

21   circles are also insufficient to implicate the Directors' independence.  *See In re VeriFone*

22   *Holdings, Inc. S'holder Derivative Litig.*, No. C-07-06347 MHP, 2009 U.S. Dist. LEXIS 44138,

23   at *33-34 (N.D. Cal. May 26, 2009) ("Longstanding relationships with other board members,

24   with no other factors, do not indicate that the directors could not make decisions with the best

25   interests of the corporation in mind."); *see also Beam*, 845 A.2d at 1051-52 ("Mere allegations

26   that [directors] move in the same business and social circles [are] not enough to negate

27   independence for demand excusal purposes."); *Orman v. Cullman*, 794 A.2d 5, 27 (Del. Ch.

28

2002) (the "naked assertion of a previous business relationship is not enough to overcome the presumption of director's independence").

### B. Allegations That The Directors Received Compensation Do Not Plead That The Oracle Board Lacks Independence.

Plaintiffs allege that the Directors cannot "reach a truly independent decision" on a pre-suit demand because the Directors "obtained sizeable personal profits" due to the alleged misconduct. (Compl. ¶ 137.) Plaintiffs fail to allege particularized facts explaining how the Directors' compensation was related in any way to the alleged pricing misconduct. Plaintiffs themselves allege that the Directors received "annual cash retainers" and "cash fees for meetings attended." (Compl. ¶ 134.) Compensation based on an annual retainer and fees for each meeting attended has nothing to do with the pricing of government contracts.

Moreover, Plaintiffs allege no facts to show that the purported misconduct had a material impact on Oracle's profits or, by extension, any Director's "equity awards." (Compl. ¶ 134.) As discussed above, sales to the government during the Relevant Period represented a small fraction of Oracle's total business. (*See* II.A.4.a, *supra*.) Similarly, Plaintiffs allege no link between the alleged fraudulent pricing practices, which Plaintiffs claim resulted in "millions" (Compl. ¶ 3) or "tens of millions" (Compl. ¶ 29) of dollars in overcharges, and the tens of *billions* of dollars Oracle spent to acquire other companies during the Relevant Period.

Accordingly, Plaintiffs' compensation allegations are insufficient to excuse demand. *See VeriSign*, 531 F. Supp. 2d at 1196 (noting that "demand futility cannot be pled merely on the basis of allegations that directors were paid for their service"). Indeed, if allegations that the Directors received compensation were sufficient to show a lack of independence, no corporate board would ever be independent.

For these same reasons, Plaintiffs also fail to allege that any Director faces a substantial likelihood of liability for unjust enrichment. Plaintiffs plead no facts to suggest that any of the compensation or benefits received by the Directors were out of the ordinary or were related to any unlawful conduct. *See, e.g.*, *Highland Legacy Ltd. v. Singer*, No. 1566-N, 2006 Del. Ch. LEXIS 55, at *31 n.73 (Del. Ch. Mar. 17, 2006).

**IV.   THE VIRGINIA ACTION FURTHER DEMONSTRATES WHY DEMAND WAS REQUIRED, NOT WHY IT SHOULD BE EXCUSED.**

Plaintiffs also claim that their failure to make a demand on Oracle's Board is "legally excused" because in order to pursue this litigation, the Directors "would be required to take positions that would undermine Oracle's defense" in the Virginia action, causing an "irreconcilable conflict of interest." (Compl. ¶ 161.) Plaintiffs have it exactly backward.

The pending Virginia action provides yet another reason why Plaintiffs *should* have made a demand. The decision of whether to pursue this litigation could affect other litigation in which the Company is currently involved, and it is thus proper for the Board—rather than two shareholders—to decide whether to initiate litigation. *See In re E.F. Hutton Banking Practices Litig.*, 634 F. Supp. 265, 269-70 (S.D.N.Y. 1986) (noting that the board was in the best position to determine "an appropriate time to institute litigation" given the demands of other, related lawsuits). The purpose of a litigation demand is to give a company's board an opportunity to determine whether (and when) litigation is in the company's best interests; here, Plaintiffs acknowledge that this litigation may not be aligned with Oracle's interests in the Virginia action, undermining Plaintiffs' position that they brought this litigation on Oracle's behalf.

**V.   PLAINTIFFS ALSO FAIL ADEQUATELY TO ALLEGE CONTINUOUS OWNERSHIP OF ORACLE STOCK.**

The Complaint should be dismissed for the additional, independent reason that Plaintiffs lack standing to pursue this action because the Complaint fails to allege with sufficient particularity that Plaintiffs continuously owned Oracle stock from the time of the alleged misconduct to the present. A derivative complaint must "allege that the plaintiff was a shareholder or member at the time of the transaction complained of." Fed. R. Civ. P. 23.1. Rule 23.1 requires that the derivative plaintiff hold stock at the time of the alleged wrongful acts and retain ownership for the duration of the lawsuit. *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983). Thus, a "complaint must indicate when plaintiffs bought stock . . . and must state that they have owned stock continuously since the date of the filing of the lawsuit (if they have)." *In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1096 (N.D. Cal. 2003).

1  Here, the Complaint alleges that Plaintiff Galaviz "is the owner" of Oracle stock and "has

2  owned Oracle shares at all times relevant hereto, and continues to be an Oracle shareholder."

3  (Compl. ¶ 11.)  Courts have rejected nearly identical "continuous ownership" allegations.  *See,*

4  *e.g.*, *In re Asyst Techs, Inc. Derivative Litig.*, No. C-06-04669 EDL, 2008 U.S. Dist. LEXIS

5  96834, at *4 (N.D. Cal. Nov. 12, 2008) (rejecting allegation that plaintiff "holds and has

6  continually held . . . Asyst stock").  The Complaint alleges that Plaintiff Prince "is the owner" of

7  Oracle stock and "has owned Oracle shares since not later than 1996 and at all relevant times

8  herein, and continues to be an Oracle shareholder."  (Compl. ¶ 12.)  Prince does not, as he must,

9  "unambiguously indicate" the dates when he owned stock.  *VeriSign*, 531 F. Supp. 2d at 1202.[16]

10  **CONCLUSION**

11

12  For the reasons set forth above, the Court should dismiss Plaintiffs' Consolidated

13  Shareholder Derivative Action Complaint.

14  Dated: March 31, 2011          JORDAN ETH
                                    PHILIP T. BESIROF
15                                  MORRISON & FOERSTER LLP

16

17                                  By:  /s/Jordan Eth
                                         Jordan Eth
18

19                                  Attorneys for Nominal Defendant
                                    ORACLE CORPORATION
20

21  sf-2963779

22

23

24     [16]  Among the other "stringent" requirements of Rule 23.1 is that a derivative complaint
    be verified.  "The purpose of Rule 23.1's verification requirement is to ensure that a derivative
25  claim has some basis in fact."  *Knopf v. Semel*, No. 08-3658-JF, 2010 U.S. Dist. LEXIS 35925, at
    *16 n.2 (N.D. Cal. Mar. 17, 2010).  Here, Prince has not verified the Complaint.  Moreover,
26  Galaviz verifies only that "based upon the investigation of [her] counsel," the contents of the
    Complaint are true.  (Compl. Verif.)  Prince's failure to verify the Complaint, and Galaviz's
27  failure to verify the Complaint based on *her* own knowledge, render meaningless Rule 23.1's
    verification requirement.
28