1   JOSEPH W. COTCHETT (36324)
    jcotchett@cpmlegal.com
2   NANCY L. FINEMAN (124870)
    nfineman@cpmlegal.com
3   MARK C. MOLUMPHY (168009)
    mmolumphy@cpmlegal.com
4   JORDANNA G. THIGPEN (232642)
    jthigpen@cpmlegal.com
5   **COTCHETT, PITRE & McCARTHY, LLP**
    San Francisco Airport Office Center
6   840 Malcolm Road, Suite 200
    Burlingame, CA 94010
7   Phone: (650) 697-6000
    Fax: (650) 697-0577
8
    JOHN M. KELSON (75462)
9   kelsonlaw@sbcglobal.net
    **LAW OFFICES OF JOHN M. KELSON**
10  2000 Powell Street, Suite 1425
    Emeryville, CA 94608
11  Phone: (510) 465-1326
    Fax: (510) 465-0871
12
    JERRY K. CIMMET (33731)
13  cimmet@att.net
    Attorney at Law
14  177 Bovet Road, Suite 600
    San Mateo, CA 94402
15  Phone: (650) 866-4700
    Fax: (650) 866-4770
16
    *Attorneys for Plaintiffs Lisa Galaviz and*
17  *Philip T. Prince*

18              **UNITED STATES DISTRICT COURT**

19              **NORTHERN DISTRICT OF CALIFORNIA**

20
    **In re ORACLE CORPORATION**              )   **Master File No. C-10-03392-RS**
21  **DERIVATIVE LITIGATION**                 )
                                              )   **PLAINTIFFS' OPPOSITION TO**
22                                            )   **NOMINAL DEFENDANT ORACLE**
                                              )   **CORPORATION'S AND INDIVIDUAL**
23                                            )   **DEFENDANTS' MOTIONS TO**
                                              )   **DISMISS PLAINTIFFS'**
24                                            )   **CONSOLIDATED SHAREHOLDER**
                                              )   **DERIVATIVE ACTION COMPLAINT**
25                                            )
                                              )   Date:   June 2, 2011
26                                            )   Time:   1:30 p.m.
                                              )   Judge: Hon. Richard Seeborg
27                                            )   Ctrm:  3, 17th Floor

28

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

# TABLE OF CONTENTS

**Page**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    I.      DEMAND FUTILITY IS ADEQUATELY ALLEGED. . . . . . . . . . . . . . . . 13

          A.    Legal Standard for Pleading Demand Futility. . . . . . . . . . . . . . . 13

          B.    *Caremark* is Inapplicable Because Plaintiffs Have Pleaded the Director Defendants' Intentional Disregard of Oracle's Conduct. . . 15

          C.    Plaintiffs Have Alleged Particularized Facts Creating a Reasonable Doubt That a Majority of the Directors Were Independent and Disinterested At The Time This Suit Was Filed. . . . . . . . . . . . . . . . . 18

              1.    The Officer Directors Were Not Disinterested. . . . . . . . . . . . 18

              2.    Neither the Officer Directors Nor the Outside Director Defendants Were Independent . . . . . . . . . . . . . . . . . . . . . . . . . 19

              3.    Demand Is Also Excused Because Plaintiffs' Allegations Establish That a Majority of Oracle's Directors Face a Substantial Likelihood of Liability. . . . . . . . . . . . . . . . . . . . . 21

    II.     PLAINTIFFS' ALLEGATIONS THAT THE INDIVIDUAL DIRECTORS HAVE VIOLATED THEIR FIDUCIARY DUTIES ARE WELL-PLED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

          A.    Plaintiffs' Allegations of Director Defendants' Misconduct Are Sufficient. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

          B.    Article 7 of Oracle's Certificate of Incorporation Does Not Protect Director Defendants From Liability In This Case. . . . . . . . . . . . . 26

    III.    PLAINTIFFS SUFFICIENTLY PLEAD THAT THE INDIVIDUAL DIRECTOR DEFENDANTS ARE LIABLE FOR ABUSE OF CONTROL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    IV.    PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT BASED ON VIOLATIONS OF THE FALSE CLAIMS ACT. . . . . . . . . . . 29

    V.     PLAINTIFFS ADEQUATELY ALLEGE STOCK OWNERSHIP TO PROCEED WITH THIS ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    VI.    PLAINTIFFS' ALLEGATIONS OF DAMAGES ARE SUFFICIENT. . . . . 31

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**VII.** **TO THE EXTENT ANY ALLEGATIONS ARE INSUFFICIENT, LEAVE TO AMEND SHOULD BE GRANTED**. . . . . . . . . . . . . . . . . . . . . 32

**CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**       ii

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allegheny Gen. Hosp. v. Phillip Morris*,
  228 F.3d 429 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Am. Int'l Group, Inc. v. Greenberg*,
  965 A.2d 763 (Del. Ch. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*American International Group, Inc. v. Greenberg*,
  965 A.2d 763 (Del. Ch. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14, 21

*Bank Melli Iran v. Pahlavi*,
  58 F.3d 1406 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007.) . . . . . . . . . . . . . . . . . . . . . 11

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

*Brudno v. Wise*,
  2003 Del. Ch. LEXIS 35 (Del. Ch. Apr. 1, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Daisy Sys. Corp. v. Finegold*,
  1988 U.S. Dist. LEXIS 16765 (N.D.Cal. Sep. 19, 1988). . . . . . . . . . . . . . . . . . . . . . 2, 11

*Degulis v. LXR Biotechnology, Inc.*,
  928 F.Supp. 1301 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Desert Equities, Inc. v. Morgan Stanley Leverage Equity Fund*,
  624 A.2d 1199 (Del.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Desimone v. Barrows*,
  924 A.2d 908 (Del. Ch. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Emerald Partners v. Berlin*,
  726 A.2d 1215 (Del. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**LAW OFFICES**
**COTCHETT,**
**PITRE &**
**McCARTHY, LLP**

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO**
**DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**                                                                                  iii

*Faulkner v. Verizon Communications, Inc.*,
    156 F.Supp.2d 384 (S.D.N.Y. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Grimes v. Donald*,
    673 A.2d 1207 (Del. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Grobow v. Perot*,
    539 A.2d 180 (Del. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Grove v. Mead School Dist.*
    *No. 354*, 753 F.2d 1528 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Guttman v. Huang*,
    823 A.2d 492 (Del.Ch. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Harris v. Carter*,
    582 A.2d 222 (Del. Ch. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Haskell v. Washington Township*,
    864 F.2d 1266 (6th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13, 33

*Henderson v. Duncan*,
    779 F.2d 1421 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Highlands Ins. Group, Inc. v. Halliburton Co.*,
    852 A.2d 1 (Del. Ch. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*In re Abbott Laboratories Deriv. S'holders. Litig.*,
    325 F.3d 795 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Accuray, Inc. S'Holder Deriv. Litig.*,
    No. 09-05580 CW, 2010 U.S. Dist. LEXIS 90068 (N.D. Cal. Aug. 31, 2010). . . . . . . . . 10

*In re ALH Holdings LLC*,
    675 F.Supp.2d 462 (D. Del. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*In re Bank of New York Deriv. Litig.*,
    173 F.Supp.2d 193 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*In re Caremark Int'l Inc. Deriv. Litig.*,
    698 A.2d 959 (Del. Ch. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*In re Citigroup Inc. Shareholder Derivative Litigation*,
    964 A.2d 106 (Del.Ch. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*In re Cray, Inc. Deriv. Litig.*,
    431 F.Supp.2d 1114 (W.D. Wash. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14, 31

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
    906 A.2d 808 (Del. Ch. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re MRV Communications, Inc. Derivative Litigation*,
    No. CV-08-03800 GAF (RCx),
    2010 U.S. Dist. LEXIS 136744 (C.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 28

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**

iv

*In re Oracle Corp. Deriv. Litig.*,
    824 A.2d 917 (Del. Ch. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*In re Oxford Health Plans, Inc.*,
    192 F.R.D. 111 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*In re TASER Int'l S'holder Deriv. Litig.*
    2006 U.S. Dist. LEXIS 11554 (D. Ariz. Mar. 17, 2006) . . . . . . . . . . . . . . . . . . . 2, 17, 30

*In re Walt Disney Co. Deriv. Litig.*,
    825 A.2d 275 (Del. Ch. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Zoran Corp. Derivative Litigation*,
    511 F.Supp.2d 986 (N.D.Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Int'l Motor Sports Group, Inc. v. Gordon*,
    1999 U.S. Dist. LEXIS 12610, No. 98 Civ. 5611,
    1999 WL 619633, (S.D.N.Y. Aug. 16, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jackson v. Carey*,
    353 F.3d 750 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 L.Ed. 2d 152 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Levine v. Smith*,
    591 A.2d 194 (Del. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*McCall v. Scott,* 239 F.3d 808
    (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mills v. State of Delaware*,
    732 A.2d 845 (Del. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Omstead v. Dell*, Inc.,
    594 F.3d 1081 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Penn Mart Realty Co. v. Becker*,
    298 A.2d 349 (Del.Ch. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Rales v. Blasband*,
    634 A.2d 927, 934 (Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ryan v. Gifford*,
    918 A.2d 341 (Del. Ch. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Schock v. Nash*,
    732 A.2d 217 (Del. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

*Sollberger v. Wachovia Sec., LLC*,
　　No. SACV 09-0766 AG (ANx),
　　2010 U.S. Dist. LEXIS 66233 (C.D. Cal. June 30, 2010). . . . . . . . . . . . . . . . . . . . . . . . 10

*Spear, Leeds & Kellogg v. Public Service Co.*,
　　700 F.Supp. 791, 793 (S.D.N.Y. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Stanziale v. Nachtomi (In re Tower Air, Inc.)*,
　　416 F.3d 229, 236 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 27

*Stevelman v. Alias Research, Inc.*,
　　174 F.3d 79 (2d Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Stone v. Ritter*,
　　911 A.2d 362 (Del. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Swierkiewicz v. Sorema N.A.*,
　　534 U.S. 506 (2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Telxon Corp. v. Meyerson*,
　　802 A.2d 257 (Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Usher v. City of Los Angeles*,
　　828 F.2d 556 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

*Venture Assoc. Corp. v. Zenith Data Systems Corp.*,
　　987 F.2d 429 (7th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Vess v. Ciba-Geigy Corp. USA*,
　　317 F.3d 1097 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Yourish v. California Amplifier*,
　　191 F.3d 983 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATUTES AND AUTHORITIES

**Federal Rules of Civil Procedure**

8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 28

9(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 32

23.1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

41(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 32

**United States Code**

§ 3729.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 29

§ 3733.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 29

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**

vi

1

## INTRODUCTION

2   While a basic premise of corporate governance under Delaware law is that the directors,

3   rather than the shareholders, manage the business and affairs of the corporation, they must

4   exercise their duties consistent with the highest fiduciary duties of good faith and due care.

5   *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984). When they fail to do so, "the machinery of

6   corporate democracy and the derivative suit are potent tools to redress the conduct of a torpid or

7   unfaithful management." *Id.* By this action, Plaintiffs Lisa Galaviz and Philip Prince seek

8   remedy for Defendants' wholesale abdication of their fiduciary duties to Oracle Corporation

9   ("Oracle" or the "Company") which continued for nearly a decade.

10   Nonetheless, nominal defendant Oracle and the individual director defendants ("Director

11   Defendants" and together with Oracle, the "Defendants") ask the Court to dismiss the entire

12   Consolidated Derivative Complaint ("Complaint") based primarily on hotly disputed, factual

13   arguments relating to their role in the alleged wrongdoing. Putting aside that such arguments are

14   plainly improper at this pleading stage, they totally ignore the much-contrary facts alleged

15   throughout the Complaint, which must be treated as true.

16   First, Oracle moves to dismiss pursuant to Fed. R. Civ. P. 41(b), claiming that Plaintiffs

17   fail to adequately allege standing to pursue the action based on the futility of demand. However,

18   the question of standing is not appropriate grounds for a Fed. R. Civ. P. 41(b) motion. *Haskell v.*

19   *Washington Township*, 864 F.2d 1266, 1274-76 (6th Cir. 1988). More to the point, the

20   allegations – if true – plainly establish that a majority of Oracle's board were incapable of

21   considering a demand. Should the Court find that Plaintiffs' allegations of demand futility are

22   insufficient to support Plaintiffs' standing, pursuant to authorities addressing Rule 41(b) motions,

23   leave to amend should be granted. *Id.*

24   The Director Defendants separately move to dismiss each of the three causes of action

25   alleged in the Complaint: (1) breach of fiduciary duty; (2) abuse of control; and (3) unjust

26   enrichment based on violations of the False Claims Act, 31 U.S.C. §§ 3729-3733. However, as

27   with Oracle's motion, the Director Defendants rely on inherently factual arguments which

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

1  contradict the Complaint.  Moreover, the Director Defendants improperly seek to impose the

2  heightened pleading requirements of Fed. R. Civ. P. 9(b), despite the fact that numerous

3  authorities hold that Rule 9(b) does not apply to claims of breach of fiduciary duty.  *See, e.g., In*

4  *re TASER Int'l S'holder Deriv. Litig.* 2006 U.S. Dist. LEXIS 11554 (D. Ariz. Mar. 17, 2006)

5  (applying Rule 8 to all breach of fiduciary claims except those based on conspiracy to

6  disseminate false information so as to unload stock); *Daisy Sys. Corp. v. Finegold*, 1988 U.S.

7  Dist. LEXIS 16765, *12-13 (N.D.Cal. Sep. 19, 1988).

8       At this time, the sole basis of the Director Defendants' potential liability is breach of

9  fiduciary duty and abuse of control.  Accordingly, the Complaint must be judged under the notice

10  pleading standards of Rule 8, and all factual allegations together with all inferences favorable to

11  Plaintiffs must be accepted as true.  Under this proper test, the claims are sufficiently alleged.

12       Moreover, Defendants diminish, or fail entirely to acknowledge, Plaintiffs' careful

13  chronology of events, describing how Oracle's scheme to over bill the U.S. Government took

14  place over a number of years.  These allegations are further supported by the *qui tam* action filed

15  by a former Oracle employee in *Frascella v. Oracle Corp., et al.*, Case No. 1:07cv529-LMB-

16  TRJ, currently pending in the Eastern District of Virginia (the "Relator Action"), where the

17  district court has denied Oracle's motions to dismiss and recently held that the plaintiff has made

18  a "prima facie showing" of a criminal or fraudulent scheme by Oracle.  *See* Relator Action, Doc.

19  Nos. 49; 60; 199; 212 at 2; Plaintiffs' Request for Judicial Notice ("Plaintiffs' RJN") and

20  Declaration of Jordanna G. Thigpen ("Thigpen Decl."), Exhs. 1-4.

21       In sum, Defendants' effort to dispute the facts alleged is not only improper on a motion to

22  dismiss (*Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)), their contrary

23  explanation is not plausible.  For example, Defendants characterize the $1 billion figure for the

24  MAS contracts (with resulting overcharges to the government) as inconsequential when

25  compared against Oracle's total revenue of $92.4 billion.  Defendants miss the point.  Oracle's

26  systemic and notorious practice to over bill the government, known to and approved by the

27

28


LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

Director Defendants, has had and will continue to have a disastrous impact on Oracle, including millions in investigation and legal fees already spent to defend senior management's decisions. Further, the fact that Oracle will continue to incur additional expense in defending the pending actions and take corrective action does not somehow render this action premature, particularly when any further delay would prejudice and potentially prevent Oracle's ability to recover at all.

Accordingly, Plaintiffs have sufficiently alleged facts to demonstrate that the Director Defendants breached their duties of loyalty and good faith, and acted in a grossly reckless fashion with a total absence of due care, by their intentional approval of and failure to stop Oracle's illegal acts, in conscious disregard of their duties to Oracle and its shareholders.

## ISSUES TO BE DECIDED

1.      Have Plaintiffs adequately alleged demand futility?

2.      Construing the allegations of Plaintiffs' Complaint most favorably to the pleader, have Plaintiffs sufficiently stated a claim for relief against the Director Defendants for breach of fiduciary duty?

3.      Construing the allegations of Plaintiffs' Complaint most favorably to the pleader, have Plaintiffs sufficiently stated a claim for relief against the Director Defendants for abuse of control?

4.      Construing the allegations of Plaintiffs' Consolidated Complaint most favorably to the pleader, have Plaintiffs sufficiently stated a claim for relief against the Director Defendants for unjust enrichment?

## STATEMENT OF FACTS

Plaintiffs' derivative action is brought pursuant to Fed. R. Civ. P. 23.1. ¶ 1.[1]  Plaintiffs' action is based on the Relator Action described above, which was filed on May 29, 2007 by former senior Oracle executive Paul Frascella on behalf of the United States under the *qui tam* provisions of the False Claims Act (the "Oracle Relator Complaint").  ¶ 29.  Frascella detailed a

---

[1] As used herein, "¶" refers to paragraphs of the Consolidated Shareholder Derivative Complaint.

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

1   plan by which Oracle, with the knowledge of senior management, implemented a sophisticated

2   scheme to defraud the United States, through the non-disclosure of pricing discounts that Oracle

3   offered to commercial customers but not to the United States Government, over a period from

4   1998 to 2006 (the "Relevant Period").  ¶¶ 29-30.  In the summer of 2010, the United States filed

5   a Complaint in Intervention, seeking to recover treble damages and civil penalties under the False

6   Claims Act and common law theories of fraud, breach of contract, and unjust enrichment (the

7   "Government Complaint.")  *Id.*  On January 14, 2011, the Court denied Oracle's motion to

8   dismiss, and extensive discovery is proceeding.  *Id.*  Although most of the discovery has been

9   sealed, the Court in the Relator Action has recently unsealed documents which further support

10  Plaintiffs' allegations of malfeasance in this action.  *See* Plaintiffs' RJN and Thigpen Decl.,

11  Exhs. 5-12.

12  **Oracle Contracts With the General Services Administration**

13          The Oracle Relator Complaint and Government Complaint detail Oracle's plan to defraud

14  the United States, including the practices that were designed, authorized and approved by

15  Oracle's most senior management (including Director Defendants Ellison, Catz, and Phillips, the

16  "Officer Defendants") and intentionally disregarded by members of Oracle's Board (Defendants

17  Berg, Garcia-Molina, Henley, Lucas, Phillips, Seligman, Bingham, and Boskin, the "Outside

18  Director Defendants," and collectively with the Officer Defendants, the "Director Defendants.")

19  ¶ 31.

20          The General Services Administration ("GSA") of the federal government awards

21  contracts to vendors for various goods and services, and these vendors in turn supply products to

22  various federal agencies.  ¶ 33.  The GSA is responsible for administering the award and

23  maintenance of these contracts, including those known as "Multiple Award Schedule, or "MAS"

24  contracts.  *Id.*  GSA negotiates with the vendors to provide pricing under these MAS contracts to

25  obtain discounts for volume purchases, and not surprisingly, the contracts are subject to strict

26  rules and regulations.  ¶¶ 34-36.  For example, the vendors are required to provide their best

27  prices and give accurate information regarding pricing provided to other customers.  ¶¶ 36-38.

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

1   MAS contractors are required to agree on categories of customers and baseline levels of pricing

2   for each, and if better prices are provided to customers other than GSA, then GSA prices are to

3   be adjusted accordingly – and retroactively – pursuant to a "Price Reductions clause" ("PRC").

4   ¶¶ 41-42.  As contemplated by the language of the contract, the purpose of the rules and

5   regulations, including the PRC, was for GSA to receive the best possible price – better than that

6   received by vendors' other (non-GSA) customers.  Oracle entered into just such a MSA contract

7   with GSA on December 1, 1998, following a year of negotiations.  ¶¶ 43-57.  However, during

8   the negotiations, Oracle failed to provide accurate information, falsely representing the frequency

9   and nature of discounts that it was providing to non-GSA customers, and providing inaccurate

10  information regarding the categories of customers.  ¶¶ 58-69.  Oracle made similar

11  misrepresentations when it modified the contract in May 2001.  ¶¶ 84-87.

12          Even if Oracle had been truthful about its discounts and pricing from the inception of the

13  relationship with GSA, the Company was still required to comply with the terms of the contract

14  by reporting and providing discounts to GSA for numerous products, if those products were sold

15  to other customers at a discounted rate.  However, Oracle proceeded to engage in further

16  fraudulent acts to evade the PRC, including but not limited to (1) the failure to report discounts

17  (¶ 71); (2) making false certifications that there had been no changes to the discount policies

18  (¶ 72); and (3) manipulation of certain software license sales, all of which were done in further

19  efforts to avoid the reporting and provision of discounts (¶¶ 73-81).

20  **A Majority of Oracle's Board Knew Discounts Were Not Being Provided To GSA**

21          By its nature, such a scheme was obvious to Oracle based on the existence of internal

22  sales data, which was reported to Director Defendants Boskin, Ellison, Henley, Lucas, Catz, and

23  Phillips in the course and scope of their duties as members of the Board and as Officers.  ¶¶ 124-

24  126.  This sales data – produced by a company which prides itself on the integrity and

25  sophistication of its data collection and reporting abilities – demonstrated that discounts were not

26  being provided to GSA.  In fact, beginning in 1999 – just one year into the GSA contract –

27  Ellison's office directly assumed the function of approving all pricing discounts.  ¶ 129.

28

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

1    Defendants Bingham, Boskin, and Lucas served on Oracle's Finance and Audit

2    Committee. The Finance and Audit Committee was charged with overseeing the Company's

3    internal control system, audit department, evaluating financial performance, overseeing

4    management's (Officer Defendants') establishment and enforcement of business practices,

5    overseeing compliance with laws and regulations and the Company's Code of Ethics and

6    Business Conduct, communicating with General Counsel, and approving merger and acquisition

7    transactions proposed by management. ¶ 112. Each of these duties brought Defendants

8    Bingham, Boskin, and Lucas into direct possession of information that revealed the fraudulent

9    contracting processes described above.

10   **A Majority of Oracle's Board Was Aware of the Prior Lawsuits Against Oracle Involving**

11   **GSA Contract Violations**

12   In 2003, former Oracle University executive Robert Makheja filed a *qui tam* complaint

13   similar to the Relator Complaint in this action, alleging that Oracle University had engaged in

14   illegal billing practices and acted to defraud the government (pursuant to a separate GSA

15   contract) from 1997 to 2003. ¶ 105. In May 2005, Oracle settled the case for an as-yet

16   undisclosed multi-million figure (the "Oracle University Relator Action Settlement"). *Id.* Board

17   members in May 2005 included Defendants Henley, Ellison, Lucas, Boskin, Berg, Catz, Garcia-

18   Molina, Bingham, Phillips, and non-parties Jack Kemp and Joseph Grundfest.

19   Oracle was also the subject of another *qui tam* lawsuit, filed in September 2004,

20   regarding its provision of "kickbacks" to Accenture. ¶ 97. These kickbacks were allegedly paid

21   so that Accenture, purportedly acting as an objective consultant to the government, would

22   recommend the products of Oracle (and other technology companies that Oracle subsequently

23   acquired) for lucrative contracts. ¶¶ 97-99.

24   It is without question that the Board would have had knowledge of the Oracle University

25   Relator Action Settlement and the filing of the Accenture lawsuit, as boards regularly receive

26   reports of litigation and settlements. ¶ 132. Furthermore, the Finance and Audit Committee was

27

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

1 directly charged with "provid[ing] an open avenue of communication between the Board of

2 Directors and . . . General Counsel." ¶ 115.

3 **A Majority of Oracle's Board Was Aware That Oracle Acquired Companies That Had**

4 **Committed GSA Contract Violations**

5 Unfortunately, Oracle's contracting practices are not unique in the technology industry.

6 In fact, Oracle has apparently made a strategic decision to acquire other companies engaging in

7 the same behavior.  Led by Oracle officers Ellison, Catz, Phillips, who were supposedly experts

8 in acquisition strategies, Oracle systematically purchased companies that were also involved with

9 GSA contract violations.  ¶ 88-89.  These purchases were funded by Oracle even as it defrauded

10 the government by failing to provide discounts.  ¶ 90.

11 For example, Oracle acquired Peoplesoft in 2005.  ¶ 93.  At that time, Peoplesoft was

12 already the subject of a *qui tam* action in Maryland, which had been pending for two years (the

13 "Peoplesoft Relator Action.").  ¶ 92.   Oracle's counsel admitted that as of at least December 21,

14 2004, he knew of the Peoplesoft Relator Action, and he attended a meeting with government and

15 Oracle representatives on January 28, 2005.  ¶¶ 95-96.  Defendants Catz and Phillips were named

16 as co-presidents of Peoplesoft on December 31, 2004.  ¶ 95.  Subsequently, Oracle settled the

17 Peoplesoft Relator Action in October 2006, in what was then the largest False Claims Act

18 settlement ever involving GSA contracts.  Oracle disclosed this settlement in its Form 10-Q for

19 the third quarter of 2006, and the settlement was also referenced in the Company's 2008 and

20 2009 Form 10-Ks.

21 Oracle's acquisition targets were also the subject of *qui tam* lawsuits.  For example, a *qui*

22 *tam* complaint was filed against Sun Microsystems ("Sun") in September 2007 for Sun's role in

23 the Accenture kickback scheme (the "Sun Relator Complaint.")  ¶ 103.  Director Defendant

24 Naomi Seligman served as a Sun Board member from 1997 to 2007, during all relevant times

25 alleged in the Sun Relator Complaint.  *Id.*  Her board service on the Oracle board, beginning in

26 2005, was simultaneous to her Sun Board service for two years.  *Id.*  Sun disclosed the existence

27 of the Sun Relator Complaint in its 2007, 2008, and 2009 Form 10-Ks, filed with the SEC.

28

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

1  Meanwhile, following a period of due diligence, Oracle acquired Sun in January 2010, and in

2  January 2011 it settled the Sun Relator Complaint.  ¶ 104.

3        The existence of these settlements and lawsuits against Oracle's acquisitions put Director

4  Defendants on direct notice of the possibility of the multi-million dollar exposure that results

5  from GSA contracting violations.  ¶ 106.

6  **A Majority of Oracle's Board Was Aware Of GSA Contract Violations Occurring At**

7  **Competitors**

8        Oracle, through its Director Defendants, has further connections to companies who have

9  been involved in GSA contracting violations.  For example, Oracle's current President,  Mark

10  Hurd, formerly served as president of Hewlett-Packard Co., or "HP."  Like Oracle and its

11  acquired targets, HP was the subject of a *qui tam* action filed in September 2004 (the "HP

12  Relator Complaint"), which was settled in August 2010 for $55 million.  ¶ 100.  Mr. Hurd also

13  served as president and CEO of NCR, which was <u>also</u> the subject of a *qui tam* action.  ¶ 101.

14        Similarly, Harry You, Oracle's Vice President and CFO from 2004-2005, has worked at

15  three separate technology companies (Accenture, Oracle, and EMC) each of which has been the

16  subject of one or more *qui tam* lawsuits for fraudulent government contracting practices.  ¶ 102.

17  It is certain that Mr. You had knowledge of the schemes undertaken by these companies – or at a

18  bare minimum, the lawsuits.  *Id.*  Moreover, as a top executive at Oracle, Mr. You regularly

19  communicated with Officer Defendants Ellison, Catz, and Phillips, and made regular reports to

20  the Board and the Finance and Audit Committee in his capacity as CFO.  *Id.*

21  **Oracle's Board Had a Fiduciary Duty to Control Oracle's Business Affairs**

22        It is without question that Oracle's board had a duty to discharge their duties as Board

23  members with good faith, loyalty, and candor.  Defendants were separately bound not only by

24  general principles of Delaware law, but also by the Code of Ethics and Business Conduct, which

25  applies to all Officer and Director Defendants.  ¶¶ 112-114, 116.  In addition, Director

26  Defendants Bingham, Boskin, and Lucas were bound by the Finance and Audit Committee

27  charter provisions.  ¶¶ 115.

28

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

Despite these obligations, Director Defendants' board service is characterized by neglect and disregard for the Company.  Defendants allowed a multi-million dollar contracting scheme to take root and flourish – on their watch.  Among other red flags that should have alerted them to the problems at Oracle, and which they recklessly and intentionally disregarded, Defendants ignored:

- Sales and reporting data – accessible internally to Oracle (which makes its fortune as a vendor of elite data management technology) – which revealed the pricing discrepancies in GSA sales vs. those to other customers
- The largest False Claims Act settlement ever paid for GSA contracting violations (the Peoplesoft settlement of October 2006)
- A prior False Claims Act lawsuit filed against Oracle for the exact same conduct – GSA contracting violations – resulting in a multi-million dollar settlement (the Oracle University settlement of May 2005)
- False Claims Act lawsuits filed against Oracle acquisitions in 2004 and 2007

Taken together, and for the reasons indicated below, these facts indicate that Oracle's Director Defendants were on direct notice of Oracle's GSA contract violations, and yet failed to act over a period of <u>years</u> to stop Oracle's conduct.  As a result, Director Defendants breached their fiduciary duties to properly manage and control the company.  The facts further indicate why demand was futile as of August 2, 2010, the date of the filing of the first complaint in this consolidated action.

## **LEGAL STANDARD**

As noted above, the Director Defendants seek to dismiss the Consolidated Complaint pursuant to Fed. R. Civ. P. 8, 9(b), and 12(b)(6), on the grounds that Plaintiffs have pleaded insufficient facts to support their claims of (1) breach of fiduciary duty; (2) abuse of control; and (3) unjust enrichment.  A motion to dismiss a complaint in federal court is a procedural matter which must be construed strictly under the purview of the Federal Rules of Civil Procedure.  "The Federal Rules of Civil Procedure apply irrespective of the source of subject matter

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**

9

jurisdiction, and irrespective of whether the substantive law at issue is state or federal." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 236-37 (3d Cir. 2005) (applying Rule 8 to breach of fiduciary duty claims against the officers and directors of a Delaware corporation).

"On a motion to dismiss for failure to state a claim, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher, supra*, 828 F.2d at 561; *In re Tower Air, Inc.*, *supra*, 416 F.3d at 238. As a general matter in a shareholder derivation action, "[a] party is entitled to dismissal of the complaint only where it is clear from its allegations that the plaintiff would not be entitled to relief under any set of acts that could be proven to support the claim." *In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275, 285 (Del. Ch. 2003).

Director Defendants assert that "the core of Plaintiffs' claims rests on violations of the False Claims Act." Director Defendants' Brief ("Dir. Defs.' Br.") at 2:12-13. Therefore, Director Defendants argue, Plaintiffs' claims for relief must be pleaded "with particularity as required by Rule 9(b) if their complaint 'sounds in fraud.'" *Id.* at 2:10. However, Defendants' authorities do not support their theory that a derivative complaint based on breach of fiduciary duty will be held to the heightened Rule 9(b) standard.[2] In fact, this District has previously refused to apply the fraud standards of Rule 9(b) to a plaintiffs' derivative shareholder claims against outside directors in circumstances similar to this case, stating:

> While the outside director defendants may not be presumed to know the contents of Daisy's annual reports for purposes of Section 10(b) liability, <u>the defendants' failure to undertake an adequate review and inquiry</u> of these documents <u>and of Daisy's operations may nonetheless be a breach of the state law duties of care and inquiry.</u> Those directors who have been dismissed from the class action had a duty to investigate and to exercise due care in overseeing the management of Daisy, regardless of whether they were involved in the scheme to defraud.

---

[2] *See In re Accuray, Inc. S'Holder Deriv. Litig.*, No. 09-05580 CW, 2010 U.S. Dist. LEXIS 90068, at *35-36 (N.D. Cal. Aug. 31, 2010)(Rule 9(b) applied in PSLRA case concerning false financials and approval of stock repurchases); *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766 AG (ANx), 2010 U.S. Dist. LEXIS 66233, at *18 (C.D. Cal. June 30, 2010)(dismissing claim because no fiduciary relationship existed between Plaintiff and Defendants); *In re Cray, Inc. Deriv. Litig.*, 431 F.Supp.2d 1114 (W.D. Wash. 2006)(Rule 9(b) applied to allegations that directors filed false financials and engaged in insider trading).

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**   10

*Daisy Sys. Corp. v. Finegold, supra*, 1988 U.S. Dist. LEXIS 16765, at * 12-13 (emphasis added); *see also In re Enivid. Inc.*, 345 B.R. 426, 442 (Bankr. D. Mass. 2006)("[t]he allegations concerning misrepresentation and nondisclosure represent only examples of the Defendants' disregard of their business judgment, and the Defendants cannot recharacterize the Complaint as one based on fraud and seek to overcome it by reliance on Rule 9(b)").

Accordingly, to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, Plaintiffs need only satisfy Rule 8. *In re Tower Air, Inc.*, *supra*, 416 F.3d at 237-38. The purpose of Rule 8 is to "'give the defendant fair notice of what plaintiff['s'] claim is and the ground upon which it is rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), and a complaint need only allege facts that create a "plausible" suggestion of a right to relief, but "[a]sking for plausible grounds does not impose a probability requirement at the pleading stage" for Plaintiffs. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 934 (2007). Moreover, "[t]he Rule 8 standard contains 'a powerful presumption' against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quoting *Auster Oil Corp. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985). Here, the Complaint clearly gives Defendants more than "fair notice" of Plaintiffs' claims and the grounds on which they rest.

Even if the heightened pleading standard of Rule 9(b) is deemed to apply in this instance, Plaintiffs meet this standard. Although Rule 9(b) requires that allegations of fraud be plead with specificity, it also provides that 'malice, intent, knowledge, and other condition of mind of a person may be averred generally.' In accordance therewith, the Second Circuit has held that 'allegations may be based on information and belief when the facts are peculiarly within the opposing party's knowledge.'" *Faulkner v. Verizon Communications, Inc.*, 156 F.Supp.2d 384, 393 (S.D.N.Y. 2001)(citation omitted)*; see also Degulis v. LXR Biotechnology, Inc.*, 928 F.Supp. 1301, 1311 (S.D.N.Y. 1996) (noting that "in cases of corporate fraud, the requirements of Rule 9(b) are relaxed as to matters particularly within the opposing party's knowledge," especially where "discovery has not yet commenced"). "The requirement of a strong inference is satisfied if

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**                                11

1   the plaintiff alleges facts either that 'show that defendants had both motive and opportunity to

2   commit fraud' or that 'constitute strong circumstantial evidence of conscious misbehavior or

3   recklessness.'"  *Faulkner*, 156 F.Supp. 2d at 393 (quoting *Rothman v. Gregor*, 220 F.3d 81, 90

4   (2d Cir. 2000); *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999)).  In addition, to

5   meet the requirement of Rule 9(b) "a plaintiff need not plead dates, times and places with

6   absolute precision, so long as the complaint 'gives fair and reasonable notice to the defendants of

7   the claim and the grounds upon which it is based.'"  *Int'l Motor Sports Group, Inc. v. Gordon*,

8   1999 U.S. Dist. LEXIS 12610, No. 98 Civ. 5611, 1999 WL 619633, at *3 (S.D.N.Y. Aug. 16,

9   1999) (quoting *Spear, Leeds & Kellogg v. Public Service Co.*, 700 F.Supp. 791, 793 (S.D.N.Y.

10   1998)).

11        As described below, Plaintiffs have pleaded specific facts as to each Director Defendant.

12   Moreover, Plaintiffs have pleaded Defendants' motive.  ¶¶ 119, 122, 134-135.  The District

13   Court in the Relator Action has already concluded that the government has adequately pleaded its

14   claims that Oracle engaged in a systematic pricing scheme that operated to defraud the United

15   States government.  *See* Relator Action, Dkt. Nos. 49, 60; Thigpen Decl. Exhs. 1-2.  In reviewing

16   the government's allegations of violations of the False Claims Act, the District Court held that:

17        A party must 'nudge[] their claims across the line from conceivable to plausible'
          in order to survive a Rule 12(b)(6) motion to dismiss. [*Bell Atl. Corp. v. Twombly*,

18        550 U.S. 544 (2007)] at 570 . . .[W]hen read as a whole, the United States's
          Complaint in Intervention alleges an ongoing, interrelated fraud involving

19        multiple false statements and omissions during the performance of the Oracle
          contract, leading to the submission and payment of a number of false claims.

20        When properly construed, the Complaint in Intervention thus plausibly alleges all
          required elements of each of its claims to relief.

21

22   Thigpen Decl. Exh. 1 at 11, 27-28.  Here, Plaintiffs incorporate the same facts regarding Oracle's

23   misconduct and Director Defendants' conscious failure – over a period of *years* – to put a stop to

24   it with proper management of the company. Contrary to Director Defendants' arguments,

25   therefore, Plaintiffs have alleged adequate facts to defeat the motion to dismiss.

26        Separately, Oracle seeks to dismiss Plaintiffs' Consolidated Complaint pursuant to Fed.

27   R. Civ. P. 41(b), which provides in relevant part as follows: "If the plaintiff fails to prosecute or

28

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**   12

1   to comply with these rules or a court order, a defendant may move to dismiss the action or any

2   claim against it." However, Oracle has failed to identify any failure to prosecute the action or

3   any failure to comply with the court order on behalf of Plaintiffs, or to explain why Plaintiffs'

4   alleged lack of standing – the sole issue on which Oracle has noticed its motion – would fall into

5   either of those categories. "Dismissal under Rule 41(b) is a sanction, to be imposed only in

6   extreme circumstances." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1063 (9th Cir.

7   2004)(quotations omitted). The district court must consider five factors: "(1) the public's interest

8   in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of

9   prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits;

10  and (5) the availability of less drastic alternatives." *Yourish v. California Amplifier*, 191 F.3d

11  983, 990 (9th Cir. 1999) (quotations omitted). Moreover, standing is not properly the subject of

12  a Rule 41(b) motion to dismiss, and the court should grant leave to amend if it confronts

13  insufficient allegations of standing on such a motion. *Haskell v. Washington Township*, 864 F.

14  2d 1266, 1274-76 (6th Cir. 1988). Therefore, even if the Court finds Plaintiffs' allegations of

15  demand futility insufficient for some reason, leave to amend should be granted. *Id.*

16                                          **ARGUMENT**

17  **I.       DEMAND FUTILITY IS ADEQUATELY ALLEGED**

18           **A.      Legal Standard for Pleading Demand Futility**

19           In filing a derivative complaint, a derivative plaintiff must either make a demand to the

20  board to file a lawsuit for wrong done to the corporation, or plead the futility of such demand. *In*

21  *re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999). Because Oracle was

22  incorporated in the state of Delaware, Delaware law applies in determining whether a demand

23  may be excused when shareholders file a derivative complaint on behalf of the company. *Kamen*

24  *v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98-99, 114 L.Ed. 2d 152 (1991).

25           Demand is excused when a Plaintiffs pleads particularized facts creating a reasonable

26  doubt that a majority of the directors will independently and disinterestedly evaluate the claims

27  of the plaintiff. A "reasonable doubt" does not mean that plaintiffs have to prove their claims.

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

1    Rather, "the concept of reasonable doubt is akin to the concept that the stockholder has a

2    reasonable belief that the board lacks independence." *In re Cray Inc. Deriv. Litig.*, *supra*, 431

3    F.Supp.2d at 1121, citing *Grimes v. Donald*, 673 A.2d 1207, 1217 n.17 (Del. 1996), *overruled on*

4    *other grounds* by *Brehm v. Eisner*, 746 A.2d 244, 253 n.13 (Del. 2000).  A reasonable doubt has

5    also been defined as "'a doubt based upon reason and common sense which . . . intelligent,

6    reasonable and impartial people may honestly entertain . . .'" *Mills v. State of Delaware*, 732

7    A.2d 845, 851 (Del. 1999).

8          Thus, under the "reasonable doubt" standard, a plaintiff must allege, with particularity,

9    facts that would give a reasonable shareholder reason to doubt the ability of a board of directors

10   to consider disinterestedly a demand.  *Id.*  When a plaintiff challenges a decision of the Board,

11   "a plaintiff must allege particularized facts creating a reasonable doubt that (1) the directors are

12   disinterested and independent, or (2) the challenged transaction was otherwise the product of a

13   valid exercise of business judgment." *In re Silicon Graphics*, *supra*, 183 F.3d at 990, *see also*

14   *Aronson v. Lewis*, 473 A.2d at 811.  These two inquiries are disjunctive, meaning that if either

15   prong is met, demand is excused.  *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808,

16   820 (Del. Ch. 2005).

17         Alternatively, the so-called *Rales* test requires the court to determine "whether or not the

18   particularized factual allegations . . . create a reasonable doubt that, as of the time the complaint

19   is filed, [a majority of] the board of directors could have properly exercised its independent and

20   disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927,

21   934 (Del. 1993).  To establish a reasonable doubt, Plaintiffs are not required to plead facts that

22   would be sufficient to support a judicial finding of demand futility.  *Grobow v. Perot*, 539 A.2d

23   180, 186 (Del. 1988).  Whether Plaintiffs have alleged facts sufficient to create a reasonable

24   doubt concerning the disinterestedness and independence of a majority of the Board must be

25   determined from the accumulation of all the facts taken together.  *See Harris v. Carter*, 582 A.2d

26   222, 229 (Del. Ch. 1990).

27

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

1    Thus, the appropriate inquiry is whether Plaintiffs have established that "a majority of the

2  board of directors either has a financial interest in the challenged transaction or lacks

3  independence or otherwise failed to exercise due care.  On either showing, it may be inferred that

4  the Board is incapable of exercising its power and authority to pursue the derivative claims

5  directly."  *Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991) (citations omitted).

6    Because Oracle's Board consisted of 12 individuals at the time of the filing of this

7  complaint, the Court must determine whether a majority of the directors – at least 6 – were either

8  interested or lacked independence in order to excuse demand.

9    **B.    *Caremark* is Inapplicable Because Plaintiffs Have Pleaded the Director**

10    **Defendants' Intentional Disregard of Oracle's Conduct**

11    Defendants attempt to recast Plaintiffs' factual allegations in the spirit of those found

12  insufficient in *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996).  Contrary to

13  Defendants' arguments, however, Plaintiffs do not allege so-called "*Caremark* claims."

14    *Caremark* provides that director liability can arise for the breach of the duty to exercise

15  appropriate attention to corporate activities from "an *unconsidered failure of the board to act* in

16  circumstances in which due attention would, arguably, have prevented the loss."  *Caremark*, 698

17  A.2d at 967 (Del. Ch. 1996) (emphasis in original).  In *Caremark*, there was a claim of fraud, but

18  no evidence to indicate that the director defendants knew of the violations of law and the

19  directors' liability was "*predicated upon ignorance*" of activities which resulted in unconsidered

20  failure to act.  *Id.* at 971 (emphasis added).

21    By contrast, here Plaintiffs have described the Director Defendants' *intentional disregard*

22  of a systematic course of conduct at Oracle.  This course of conduct, spanning over a decade, was

23  designed to and did result in the pricing fraud that forms the basis of the Relator and Government

24  Complaints.  It further involves the acquisition of other companies who are also accused of the

25  same conduct.  ¶¶ 88-95, 99, 103-104.   Defendants and Oracle executives in fact joined Oracle

26  from other companies that had engaged or were *simultaneously engaging* in the same conduct.

27  ¶¶ 101-104, 141-143, 156-159.  Shortly after the Peoplesoft acquisition in 2005, Oracle even

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**                    15

settled the claims against Peoplesoft for a record $98.5 million, the highest amount in fines ever paid at that time for such conduct.  ¶ 94.  Oracle's General Counsel admitted that he knew about a government investigation of Peoplesoft for this conduct as early as December 2004.  ¶¶ 92-96. And, Oracle paid a settlement based on the <u>exact same conduct</u> for its subsidiary Oracle University in 2003.  ¶¶ 105-106.

Similar allegations were held to be sufficient in *In re Abbott Laboratories Deriv. S'holders. Litig.*, 325 F.3d 795 (7th Cir. 2001) in which the Seventh Circuit found that the directors' disregard of six years of regulatory problems, its receipt of documents indicating a government investigation, and the resulting imposition of the largest civil fine ever imposed by the FDA were enough to create the reasonable inference that the Board (particularly its Audit Committee members, who "communicat[ed] regularly with management") was on notice of the problems at the company and yet failed to act in response.  *Abbott*, 325 F. 3d at 802, 809.

In *McCall v. Scott,* 239 F.3d 808 (6th Cir. 2001), the Court found that intentional or reckless disregard for the company's welfare could be inferred from the board's failure to act despite audit information, ongoing acquisition practices, allegations brought against the company in a qui tam action, a federal investigation, and a media investigation.  The court noted specifically that "the "magnitude and duration of the alleged wrongdoing is relevant in determining whether the failure of the directors to act constitutes a lack of good faith."  *McCall*, 239 F.3d at 823; see *also In re Oxford Health Plans, Inc*., 192 F.R.D. 111 (S.D.N.Y. 2000) (Del. law in sustaining claims against defendants for failure to properly manage company).

Plaintiffs have alleged all that and more.  Taken together, Plaintiff's allegations create a reasonable inference that there was an intentional and "'sustained and systematic failure of the board to exercise oversight' in that the directors knew of the violations of law, took no steps in an effort to prevent or remedy the situation, and that failure to take any action for such an inordinate amount of time resulted in substantial corporate losses . . ."  *Abbott,* 325 F. 3d at 809 (citing *Caremark*, 698 A.2d at 971).

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**                    16

1    This inference is exactly the opposite of *Caremark*: members of Oracle's Board were on

2 notice of the problems, and, despite that notice, repeatedly and consistently failed to act to

3 prevent Oracle from continuing its practices. *See also Walt Disney, supra*, 825 A.2d at 289

4 ("[p]laintiffs' claims are based on an alleged knowing and deliberate indifference to a potential

5 risk of harm to the corporation. Where a director consciously ignores his or her duties to the

6 corporation, thereby causing economic injury to its stockholders, the director's actions are either

7 'not in good faith' or 'involve intentional misconduct.'")(citations omitted); *In re TASER Int'l

8 S'holder Deriv. Litig.*, *supra*, 2006 U.S. Dist. LEXIS 11554 at *51-54 (upholding breach of

9 fiduciary claim against directors based on failure to manage company based on knowing

10 disregard of material information).

11    Defendants also cited *Stone v. Ritter*, 911 A.2d 362 (Del. 2006), which refined the

12 *Caremark* standard by providing that to adequately plead a claim that defendants failed to

13 monitor the company's activities, a plaintiff must allege that the director defendants "utterly

14 failed to implement any reporting or information system or controls" or "having implemented

15 such system or controls, consciously failed to monitor or oversee its operations." However,

16 *Stone* is inapplicable, because it only applies to situations in which the plaintiffs allege "that the

17 directors neither 'knew [n]or should have known that violations of law were occurring,' i.e., that

18 there were no 'red flags' before the directors." *Id.* at 364 .

19    Here, Plaintiffs allege numerous red flags apparent to the Defendants, including but not

20 limited to the *qui tam* settlements that Oracle paid on its own behalf (¶¶ 94, 105, 118), the

21 existence of other *qui tam* lawsuits for GSA contract violations (¶¶ 97-99, 102-104), as well as

22 its Director Defendants' direct participation in the Oracle contracting practices (¶¶ 128-132) and

23 possession of material inside information regarding sales data (¶¶ 115, 123-125, 140-141). All of

24 these red flags demonstrate that Director Defendants either "'knew or should have known that

25 violations of law were occurring.'" *Stone*, 911 A.2d at 364. Thus, Plaintiffs' claim is not a

26 "classic *Caremark* claim" that must be evaluated under the new standard described in *Stone. Id.*

27 at 364-65. Moreover, at least one Delaware court has upheld derivative claims, post-*Stone*,

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

where the plaintiffs alleged that due to defendants' positions at the company and inside

knowledge of its practices, it was reasonable to infer that defendants had knowledge of the

alleged wrongdoing. *Am. Int'l Group, Inc. v. Greenberg*, 965 A.2d 763, 796 (Del. Ch. 2009)

(upholding claims against senior management of AIG in which defendants served as both officers

and directors, despite plaintiffs' use of group pleadings).

**C.      Plaintiffs Have Alleged Particularized Facts Creating a Reasonable Doubt
That a Majority of the Directors Were Independent and Disinterested At The
Time This Suit Was Filed**

**1.      The Officer Directors Were Not Disinterested**

Demand is excused because Plaintiffs' particularized factual allegations raise a

reasonable doubt regarding the disinterestedness of the Board.  Put simply, the Officer

Defendants personally benefitted from overcharging the government, because they received

salary incentives based on the company's total revenues.  ¶¶ 134-36.  "[A] director is considered

interested where he or she will receive a personal financial benefit from a transaction that is not

equally shared by the stockholders." *Rales*, 634 A.2d at 936 (citations omitted).  Here, at least

the three Officer Defendants (Ellison, Catz, and Phillips) enjoyed compensation tied directly to

the performance of the company.  ¶¶ 134-36.  These Defendants personally profited from and

were incentivized to overlook years of fraudulent billing practices, and in fact, to continue them,

in order to reap personal rewards.  By receiving performance-based salary incentives, the Officer

Defendants reaped just such "personal financial benefit[s]." *Rales*, 634 A.2d at 936.

Likewise, Plaintiffs raise a reasonable doubt as to the disinterestedness of certain of the

Director Defendants.  "To have their impartiality compromised, they must face a substantial

likelihood of liability for breach of fiduciary duty for one of two alternative reasons: (1) that they

personally profited from stock sales while in knowing possession of material, non-public

information or (2) that they committed a non-exculpated breach of fiduciary duty by failing to

oversee the company's compliance with legally mandated accounting and disclosure standards."

*Guttman v. Huang*, 823 A.2d 492, 502 (Del.Ch. 2003).  In this case, the Officer Defendants

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**                                                      18

1  Bingham, Boskin, and Lucas, each of whom sat on the Finance and Audit Committee at various

2  times throughout the Relevant Period alleged in the Complaint, breached their fiduciary duties to

3  the company by failing to oversee Oracle's compliance with its government contracts and thereby

4  failing to disclose that it was reporting revenue based on income that was fraudulently earned.

5  ¶ 115.

6          **2.      Neither the Officer Directors Nor the Outside Director Defendants**

7                  **Were Independent**

8          Even if those Director Defendants who did not serve on the Finance and Audit

9  Committee could be considered otherwise disinterested, they could not all be considered

10 independent enough to have impartially considered Plaintiffs' demand.  Where a Delaware court

11 finds less than a majority of the directors are interested, the court will examine whether the

12 remaining directors are "sufficiently independent to make an impartial decision despite the fact

13 that they are presumptively disinterested."  *Rales*, 634 A.2d at 936 (three of eight directors were

14 interested and amended complaint raised a reasonable doubt as to the independence of two other

15 directors, making demand futile).

16         Here, Plaintiffs allege that each of the Officer and Director Defendants breached their

17 fiduciary duties in that they failed to properly manage and monitor Oracle during the years it was

18 violating its GSA contract.  Defendants Bingham, Boskin, and Lucas served as members of the

19 Board's Finance and Audit Committee, which was charged with overseeing compliance with

20 laws and regulations and the Code of Ethics and Business Conduct, overseeing the internal audit

21 department, and overseeing quarterly financial performance, among other duties.  ¶¶ 112-116.

22 As Plaintiffs allege, these Defendants had access to critical information regarding Oracle's

23 pricing policies and practices and nonetheless permitted the overcharging and other violations

24 described in the Complaint, despite their inside knowledge of the Company's behavior.  ¶¶ 115,

25 140-143, 153-154.

26         Moreover, Defendant Garcia-Molina has <u>already been found by one court</u> to have such

27 "substantial" ties to Stanford University and certain of the other Director Defendants, that he is

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**                    19

incapable of acting independently. By necessity, this means the other connected Director Defendants are also not independent. *See In re Oracle Corp. Deriv. Litig.,* 824 A.2d 917, 945 (Del. Ch. 2003) (holding that Garcia-Molina and former board member Joseph Grundfest were not independent based on their interlocking relationships to Stanford University and Defendants Boskin, Lucas, and Ellison.) The Court's opinion in *In re Oracle Corp. Deriv. Litig.* provides immense detail about the connections between Garcia-Molina, Boskin, Lucas, and Ellison, which was apparently concealed by the Defendants and only revealed during discovery to the "shock" of the Court. *Id.* at 929-36.

When lack of independence is charged, the plaintiff can also allege particularized facts "showing that the Board is either dominated by an officer or director who is the proponent of the challenged transaction or that the Board is so under his influence that its discretion is 'sterilized.'" *Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991), *overruled on other grounds* in *Brehm v. Eisner, supra*, 746 A. 2d 244 (Del. 2000). If a director is considered "controlled" by another, he or she is lacking in the independence necessary to consider the challenged transaction objectively.

> A controlled director is one who is dominated by another party, whether through close personal or familial relationship or through force of will. A director may also be considered "controlled" if he or she is beholden to the allegedly controlling entity, as when the entity has the direct or indirect unilateral power to decide whether the director continues to receive a benefit upon which the director is so dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider the corporate merits of the challenged transaction objectively.

*Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002) (citation omitted). Here, as Oracle's founder, Defendant Ellison dominates and controls the Board and all aspects of Oracle's management, and he was personally involved in tracking sales and approving pricing discounts. ¶¶ 122-127, 129, 147-148. Furthermore, Ellison's interlocking business and personal relationships with other Directors, including Garcia-Molina, Boskin, and Lucas have rendered each of these Directors incapable of making independent decisions. ¶¶ 141-143, 149-151, 153-154.

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**

20

3.     **Demand Is Also Excused Because Plaintiffs' Allegations Establish That a Majority of Oracle's Directors Face a Substantial Likelihood of Liability**

As noted above, demand is excused when a plaintiff's allegations raise a reasonable doubt that a majority of the Board are sufficiently independent to make an impartial decision." *Ryan v. Gifford*, 918 A.2d 341, 355 (Del. Ch. 2007).  "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson v. Lewis*, *supra*, 473 A.2d at 816.  Authorities recognize that directors are sufficiently "interested" to render demand futile where they face a "substantial likelihood" of liability for the wrongful conduct alleged in the complaint.  *Rales*, 634 A.2d at 936.  Here, Plaintiffs raise a reasonable doubt that a majority of the Director Defendants are disinterested because they face a substantial likelihood of liability in connection with the breach of their fiduciary duties

The Government Complaint in the Relator Action, alleging fraud and violations of the False Claims Act, has already been sustained by the Eastern District of Virginia.  *See* Thigpen Decl. Exhs. 1-2.  Further, on April 14, 2011, Magistrate Judge Jones found in the Relator Action that the crime/fraud exception to the attorney-client privilege applies to Oracle's communications with counsel regarding the pricing scheme.  *See Id.*, Exh. 3.  A second opinion by Judge Jones, issued on April 21, 2011, provided as follows:

> The magistrate judge finds that the discovery materials already uncovered by relator, and discussed in his briefs supporting the motion, make out a *prima facie* showing of a [criminal or fraudulent] scheme without more.  That evidence shows *prima facie* that during the negotiation of the contract in issue Oracle misrepresented to the government its practices respecting reseller relationships, "price holds," and "migrations."  That evidence shows *prima facie* that once the contract was in force, Oracle's sales force regularly and consistently offered commercial customers discounts that the government was entitled to get but did not get.  That evidence also shows *prima facie* that Oracle's management, whether or not the particular decision makers involved knew that fraud was occurring, engaged the Reed Smith law firm to provide cover for the ongoing practices of its sales force.  Relator has shown *prima facie* that Oracle as an entity was defrauding the government.  Therefore . . . the magistrate judge has found *prima facie* that the scheme existed and that defendants sought to use their lawyers to further it by disguising it.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**                                                                 21

*Id.* Exh. 4.

Documents recently unsealed in the Relator Action has further confirmed Plaintiffs' allegations that the pricing scheme was authorized at the highest levels of Oracle.  The documents include, but are not limited to:

- Unsealed emails revealing that the Office of the CEO was directly involved in providing exceptions to the pricing discounts.  *See* Relator Docket, Doc. 188-2 at 2; Thigpen Decl., Exh. 5;

- Oracle's privilege log, which describes hundreds of communications beginning in at least March 1996 and continuing through to December 2006 between Oracle's counsel and its executives regarding such subjects as "calculation of potential damages," "Oracle's obligation to disclose discounts on commercial purchases that were greater than those offered to GSA," "GSA audit issues," and "GSA compliance."  *See* Relator Docket, Docs. 189-1, 189-2, 192-2; Thigpen Decl., Exh. 6-8;[3]

- An email referencing Defendant Catz by name and indicating her participation in a discussion to approve one of the primary pricing schemes.  *See* Relator Docket, Doc. 189-5 at ; Thigpen Decl., Exh. 9;

- Emails from Oracle employees outlining how Oracle could "bypass[]" the GSA contract with regards to pricing discounts by drafting contracts on behalf of "partners," to perform an "end around for GSA."  *See* Relator Docket, Doc. 189-5 at 3-5; Thigpen Decl., Exh. 9;

---

[3] Oracle's counsel Dorian Daley appears to be a percipient witness, as communications involving Ms. Daley were identified in the privilege log and are subject *in camera* review pursuant to the crime-fraud exception in the Relator Action.  *See* Relator Action, Dkt Nos. 199, 212.  Plaintiffs note that Oracle and the Director Defendants are represented by the same defense attorneys, including Ms. Daley.  However, defense counsel cannot legitimately represent both sets of defendants at the same time in this litigation.  *In re Oracle Sec. Litig.*, 829 F.Supp. 1176, 1186, 1189, fn. 7 (N.D. Cal. 1993) (finding conflict of interest in dual representation of Oracle and individual directors by Morrison & Foerster and Oracle's General Counsel; collecting cases that "proscrib[e] dual representation of corporate and individual defendants in a derivative action").

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT                22

- Email indicating Oracle's approval of non-standard pricing for JPMorgan Chase even though such pricing was not GSA-compliant. *See* Relator Docket, Doc. 189-16; Thigpen Decl., Exh. 10;

- A subpoena from the United States Government for documents related to the GSA contract, sent on July 17, 2008. *See* Relator Docket, Doc. 195-1 at 3-5; Thigpen Decl., Exh. 11.

- The transcript from a March 14, 2011 hearing in the Relator Action, regarding Oracle's motion to seal certain documents. *See* Relator Docket, Doc. 191-1 at 3-5; Thigpen Decl., Exh. 12.

In fact, Judge Jones stated during the March 14, 2011 hearing that to his recollection, Oracle had informed him "about three times" that, in connection with Oracle's MAS sales, sales data reflecting sales to the government could not be reconciled to Oracle's SEC-filed financial statements, which the judge found puzzling. Such a problem could give rise to further claims by Plaintiffs or others that false or fraudulent financial statements were filed during the years in question, which would constitute additional damage to the company, and which could call into question the self-serving SEC filings that Oracle made during the years the contract was in place. *See* Thigpen Decl. Exh. 12 at 51:21-54:20.

This involvement will directly subject Defendants such as Ellison, Catz, Henley, and Phillips to substantial personal liability for their role in the scheme. Moreover, Director Defendants Boskin, Bingham, and Lucas, as the "open avenue of communication" with management by virtue of their positions as members of the Finance and Audit Committee, will also be subject to personal liability. ¶ 115.

For all of these reasons, Plaintiffs have adequately pleaded that demand is excused, and Oracle's Rule 41(b) motion to dismiss Plaintiffs' Complaint should be denied.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT                                              23

## II.   PLAINTIFFS' ALLEGATIONS THAT THE INDIVIDUAL DIRECTORS HAVE VIOLATED THEIR FIDUCIARY DUTIES ARE WELL-PLED

### A.   Plaintiffs' Allegations of Director Defendants' Misconduct Are Sufficient

Director Defendants claim that Plaintiffs must allege either a breach of the duty of loyalty or the breach of the duty of care.  Plaintiffs have pleaded both, but even if they had not, the failure to do so would not prohibit Plaintiffs' action from proceeding:

> [T]he universe of fiduciary misconduct is not limited to either disloyalty in the classic sense ( i.e., preferring the adverse self-interest of the fiduciary or of a related person to the interest of the corporation) or gross negligence.

*In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 66 (Del. 2006).

Thus, it is not necessary to allege that directors acted with "'subjective bad faith,' that is, fiduciary conduct motivated by an actual intent to do harm," but, instead, "[a] failure to act in good faith may be shown where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *Id.*, 906 A.2d 27 at 64, 67.

Further, a director who consciously disregards his duties to the corporation and its stockholders even for a reason other than personal pecuniary interest may be found liable in a derivative action.   This has been recognized by the Delaware legislature in 8 Del. C. § 102(b)(7)(ii), which expressly denies exculpation for "acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law."  *See Walt Disney, supra*, 906 A.2d at 67.

> Delaware corporate law has long been clear on this rather obvious notion; namely, that it is utterly inconsistent with one's duty of fidelity to the corporation to consciously cause the corporation to act unlawfully.  The knowing use of illegal means to pursue profit for the corporation is director misconduct.

*Desimone v. Barrows*, 924 A.2d 908, 934-935 (Del. Ch. 2007) (footnote omitted). .

Moreover, a director who abdicates responsibility by ignoring unlawful conduct and fails to make any good faith attempt to fulfill his/her duties to the shareholders by failing to "meet

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

24

minimal proceduralist standards of attention" may be liable for his conduct.  *Walt Disney, supra*, 825 A.2d at 278.

For example, Plaintiffs allege that Defendant Ellison implemented a new tracking system in 2000 that allowed Ellison and Defendant Henley and other members of senior management to track sales, including sales to the government, and they met and discussed the information. ¶ 124.  Other tracking systems were in place to provide "real-time" data to senior management, which would have allowed Director Defendants to see that the government discounts were not being provided.  ¶¶ 125-126.

It is also alleged that each Defendant had access to and notice of illicit activities by Oracle with respect to its dealings with the government.  ¶ 139 (Berg); ¶ 140 (Bingham); ¶ 123, 141 (Boskin); ¶¶ 102, 144 (Catz); ¶¶ 123-124, 129, 147-148 (Ellison); ¶ 149 (Garcia-Molina); ¶¶ 123-124, 152 (Henley); ¶¶ 123, 153 (Lucas); ¶ 155 (Phillips); ¶ 156 (Seligman).

It is further alleged that the Director Defendants had prior and contemporary experience with fraudulent contracting practices by Oracle, its acquisition targets, and other corporate entities, that put them on notice of the potential for unlawful conduct by Oracle, and imposed a duty of inquiry to ensure such conduct was not occurring.  For example, each Defendant was aware of the Oracle University settlement (May 2005), the Peoplesoft settlement (October 2006), and the Sun Relator Action (filed in 2007 as a result of a GSA audit that began in 2005) all of which occurred because of fraudulent contracting practices.  ¶¶ 92-96, 103-106.  Defendants, and Sun, acknowledged the existence of these settlements and lawsuits in financial filings with the SEC during the relevant time periods.

Further, Officer Defendants Catz, Ellison and Phillips, and Finance and Audit Committee members Bingham, Boskin, and Lucas, had regular communications with former Oracle CFO Harry You, whose *three previous employers* had been accused of fraudulent government contracting.  ¶ 102.  Based directly on their board experience at other companies, Defendants Boskin and Seligman also had prior experience with corporate liability for fraudulent government contracting practices.  ¶¶ 143, 145, 157, 158.  Moreover, Defendant Garcia-Molina was <u>an</u>

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

25

expert in government contracting, even serving for former President George H.W. Bush with such expertise, and should have been on high alert for the potential for fraud.  ¶ 151.

All the directors were also subject to Oracle's Code of Business Conduct and Ethics for Directors, which requires each of the Company's directors to "comply, and oversee compliance by employees, officers, and other directors, with laws, rules and regulations applicable to the Company" and to "deal fairly . . . and oversee fair dealing by employees and officers, with the Company's customers, suppliers, competitors and employees." ¶ 116.  Nonetheless, these Director Defendants being aware of past and concurrent fraudulent contracting activities by companies with which they and/or their fellow Board members had been associated, including Oracle, stood by and either failed to investigate and inform themselves of the practices at Oracle under their watch or, worse, were informed and tolerated the unlawful activities. ¶¶ 117-118.

As in *Walt Disney, supra*, 825 A.2d at 289,

> These facts, if true, do more than portray directors who, in a negligent or grossly negligent manner, merely failed to inform themselves or to deliberate adequately about an issue of material importance to their corporation. Instead, the facts alleged in the [Complaint] suggest that the defendant directors consciously and intentionally disregarded their responsibilities, adopting a "we don't care about the risks" attitude concerning a material corporate decision.  Knowing or deliberate indifference by a director to his or her duty to act faithfully and with appropriate care is conduct that may not have been taken honestly and in good faith to advance the best interests of the company.

## B.   Article 7 of Oracle's Certificate of Incorporation Does Not Protect Director Defendants From Liability In This Case

Director Defendants argue that irrespective of any conduct on their part, as a matter of law they are protected from liability by the so-called "exculpation clause" of Article 7 of Oracle's Certificate of Incorporation, based on 8 Del. § 102(b)(7).  Dir. Defs.' Br. § II. C.

But neither § 102(b)(7), nor the exculpation clause of Oracle's Certificate of Incorporation, protects directors from "acts or omissions not undertaken honestly and in good faith, or which involve intentional misconduct." *Walt Disney, supra*, 825 A.2d at

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT                                                                                              26

286.  As the Delaware Chancery Court has observed, Section 102(b)(7), by its own terms, limits the ability of a corporation to insulate the conduct of its directors:

> A § 102(b)(7) provision in a corporation's charter does not 'eliminate or limit the liability of a director: (i)[f]or any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of the law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit.' . . . Where a director consciously ignores his or her duties to the corporation, thereby causing economic injury to its stockholders, the director's actions are either 'not in good faith' or 'involve intentional misconduct.'"

*Id.*

In the present case it is evident, at a minimum, that there was a system in effect that permitted access to sales data and its continual review.  ¶¶ 115, 123-132.  Moreover, there were frequent meetings and communications between the Directors that would also have revealed the government contract overcharges.  ¶¶ 102, 124, 132.  The Director Defendants had first hand experience with prior acts of illegal pricing by other corporations on whose boards they served, as well as by Oracle itself, which should have put them on notice that such practices were endemic in their industry and that they needed to exercise close oversight of Oracle's practices. ¶¶ 92-98, 102-103, 105, 141-143, 156-157.

In the face of that evidence and experience, instead of making sure that such practices were not employed by Oracle, the Director Defendants "consciously and intentionally disregarded [their] responsibilities to the Company's stockholders and creditors under the *Disney* standard."  *In re Enivid. Inc., supra*, 345 B.R. at 450-451, citing *Walt Disney, supra*, 825 A.2d 275.  Accordingly, Director Defendants' conduct is not protected by the liability waiver provided under Oracle's certificate of incorporation.

Furthermore, even if Plaintiffs' allegations were unclear, the Complaint should not be dismissed based on an exculpatory charter provision at this early stage of the litigation.  *Emerald Partners v. Berlin*, 726 A.2d 1215, 1223 (Del. 1999) (use of exculpatory provisions to shield directors from personal liability presents an affirmative defense not amenable for pre-trial disposition); *In re Tower Air, Inc.*, 4516 F.3d at 242 (finding that 102(b)(7) is an affirmative defense not suited for pre-trial disposition); *Desert Equities, Inc. v. Morgan Stanley Leverage*

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**

27

1   *Equity Fund*, 624 A.2d 1199, 1209-10 (Del.1993) (where the complaint sufficiently alleges a

2   breach of fiduciary duties based on a failure of the directors to act in good faith, bad faith actions

3   present a question of fact that cannot be determined at the pleading stage.)

4   **III.    PLAINTIFFS SUFFICIENTLY PLEAD THAT THE INDIVIDUAL DIRECTOR**

5   **DEFENDANTS ARE LIABLE FOR ABUSE OF CONTROL**

6        Defendants argue, that "Delaware law does not recognize 'abuse of control' as a cause of

7   action separate from breach of fiduciary duty." Dir. Defs.' Br. at 9:16-17.  In support of that

8   contention, Director Defendants cite four authorities, none of which stand for the sweeping

9   proposition that Defendants would have this Court adopt.

10       For example, although in *In re MRV Communications, Inc. Derivative Litigation*, No.

11  CV-08-03800 GAF (RCx), 2010 U.S. Dist. LEXIS 136744 (C.D. Cal. 2010), the court held that

12  it would "not treat [the] [p]laintiffs' gross management, abuse of control, and constructive fraud

13  claims as separate torts," it relied primarily on *In re Citigroup Inc. Shareholder Derivative*

14  *Litigation*, 964 A.2d 106 (Del.Ch. 2009), also cited by Director Defendants.  But in *Citigroup* the

15  court determined only that "Delaware law does not recognize an independent cause of action

16  against corporate directors and officers for reckless and gross mismanagement; such claims are

17  treated as claims for breach of fiduciary duty." *Id.* at 114.

18       Director Defendants also cite *In re Zoran Corp. Derivative Litigation*, 511 F.Supp.2d 986

19  (N.D.Cal. 2007).  There, the court granted dismissal of a cluster of claims (including abuse of

20  control), but specifically noted that the plaintiff did not "appear to oppose defendants' motion as

21  to these claims." *Zoran*, 511 F.Supp.2d at 1019.

22       Finally, Director Defendants cite *In re ALH Holdings LLC*, 675 F.Supp.2d 462, 482-483

23  (D. Del. 2009), claiming that the court analyzed " abuse of control under claim [sic] for breach of

24  fiduciary duty of loyalty." Dir. Defs.' Br. 9:21-22.  Nowhere in the opinion does the court state

25  that abuse of control is not a recognized ground for relief under Delaware law.  Pleading in the

26  alternative as well as inconsistent pleading is permissible under Fed. R. Civ. P. 8(d)(2) and

27  8(d)(3).  Moreover, alternative theories of recovery, in addition to breach of fiduciary duty, are in

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

1  fact recognized under Delaware law.  *See, e.g., In re ALH Holdings LLC, supra*, 675 F.Supp.2d

2  at 479-480 (gross negligence); *Penn Mart Realty Co. v. Becker*, 298 A.2d 349, 351 (Del.Ch.

3  1972) (gross negligence); *Walt Disney Co., supra*, 825 A.2d at 291 (waste).

4        In sum, Director Defendants have no authority for the proposition that abuse of control is

5  not a recognized cause of action under Delaware law – because none exists.  Accordingly,

6  Director Defendants' motion to dismiss Plaintiffs' claim for abuse of control should be denied.

7  **IV.      PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT BASED ON**

8            **VIOLATIONS OF THE FALSE CLAIMS ACT**

9        The Director Defendants also attack Plaintiffs' Third Cause of Action for Unjust

10  Enrichment based on violations of the False Claims Act, 31 U.S.C. §§ 3729-33.  Defendants'

11  cursory arguments for this section do little to advance their theory that Plaintiffs have not stated a

12  viable claim for unjust enrichment.

13        To state a claim for unjust enrichment, a plaintiff is "required to show that the defendants

14  were unjustly enriched, that the defendants secured a benefit, and that it would be unconscionable

15  to allow them to retain that benefit."  *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999).

16  "Restitution is an appropriate remedy where a party is unjustly enriched at the expense of

17  another."  *Highlands Ins. Group, Inc. v. Halliburton Co.*, 852 A.2d 1, 7 (Del. Ch. 2003).  Where,

18  as here, the Director Defendants have accepted benefits from the corporation in the form of

19  remuneration, and at the same time have damaged the corporation by their wrongful actions, they

20  cannot retain those benefits where they are liable for the damages sustained by Oracle as a result

21  of their corporate wrongdoing.  Contrary to Director Defendants' argument, Plaintiffs directly

22  plead that because compensation was tied to financial performance of the Company, Director

23  Defendants were incentivized to continue the fraud and as a result, were unjustly enriched.  ¶¶

24  119, 134-136.

25        Director Defendants argue that Plaintiffs have pleaded no facts that suggest that any of

26  the compensation or benefits received by the Director defendants was "out of the ordinary or

27  were related to any unlawful conduct."  Dir. Defs.' Br. at 10:14-16.  Defendants cite *Highland*

28

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**                                    29

1   *Legacy Ltd. v. Singer*, No. Civ. A 1566-N, 2006 Del. Ch. LEXIS 55, at * 31 n. 73 (Del. Ch. Mar.

2   17, 2006) but that case is inapposite because the court explicitly found that Plaintiffs did not state

3   that the Defendants had benefitted from receipt of compensation.  To the contrary, here Plaintiffs

4   do allege that Defendants received and retained benefits that were paid from Oracle's unlawful

5   pricing scheme.  ¶¶ 119, 134-136.

6          Moreover, as the Director Defendants recognize, it is only if and after all other claims

7   have been dismissed that Plaintiffs' unjust enrichment claims may also be dismissed.  *See* Dir.

8   Defs.' Br. at 10, citing *Allegheny Gen. Hosp. v. Phillip Morris*, 228 F.3d 429, 446-47 (3d Cir.

9   2000) (there is 'no justification for permitting plaintiffs to proceed on their unjust enrichment

10  claims once [it is] determined that the District Court properly dismissed the traditional tort

11  claims'"); *see also In re TASER Int'l S'Holder Litig., supra*, 2006 U.S. Dist. LEXIS 11554 at

12  *54-57 (sustaining unjust enrichment claims when other claims survived).

13  **V.     PLAINTIFFS ADEQUATELY ALLEGE STOCK OWNERSHIP TO PROCEED**

14          **WITH THIS ACTION**

15         In addition to arguing that Plaintiffs have not adequately alleged demand futility, Oracle

16  also argues that Plaintiffs have insufficiently alleged that they continuously owned their stock.

17  *See* Oracle's Brief ("Or. Br.") § V.  Oracle misconstrues the law on this point.

18         The Complaint plainly states that Plaintiffs were Oracle shareholders "at all times

19  relevant." ¶ 11-12.  Even if Plaintiffs had not held Oracle stock at the time of each instance of

20  wrongful conduct, such as during each of the hundreds of times that Oracle violated its GSA

21  contracts or provided false information to the government, where Plaintiffs have alleged a course

22  of conduct and a continuing scheme of wrongdoing,  the Complaint "should not be dismissed on

23  defendants' contention that the claims actually arose prior to the time that plaintiff acquired

24  stock."  *In re Bank of New York Deriv. Litig.*, 173 F.Supp.2d 193, 198 (S.D.N.Y. 2001) (citing

25  *Bateson v. Magna Oil Corp.*, 414 F.2d 128, 130 (5th Cir. 1969).  The appropriate test is not

26  whether a particular transaction occurred prior to plaintiffs acquiring the stock, but instead

27  "whether the wrong complained of is in reality a continuing wrong . . ."  *Bank of New York*, 173

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

1   F.Supp.2d at 198.  Here, while some of the transactions constituting part of the ongoing scheme

2   to defraud the government and expose the company to massive losses occurred in 1998, recurring

3   practices continued well into 2006 (and may be continuing to this day.)

4   **VI.     PLAINTIFFS' ALLEGATIONS OF DAMAGES ARE SUFFICIENT**

5          The Director Defendants also contend that "[t]he Complaint fails to plead any recoverable

6   damages to the Company."  *See* Dir. Defs.' Br. at 9.  In making this claim, the Director

7   Defendants claim that Plaintiffs have alleged only that "[t]he Company has suffered costs

8   associated with investigating misconduct and defending lawsuits."  *Id.*  Director Defendants

9   ignore Plaintiffs' significantly broader allegations that Defendants' "unlawful behavior has

10  severely damaged Oracle.  In addition to its exposure to damages [sought in the Relator Action],

11  Oracle has already incurred the huge cost of investigating misconduct, implementing remedial

12  measures, and defending suits, along with the corresponding damage to Oracle's business

13  operations, corporate image and goodwill."  ¶ 4 (emphasis added).  Further, "[a]t the same time,

14  Defendants have been enriched by salaries, bonuses, fees, stock options and other perquisites not

15  justified by Oracle's unlawful activities and performance under their stewardship."  ¶¶ 4, 108,

16  134-136.

17         Where, as here, the government has been forced to intervene in a *qui tam* action against

18  Oracle, as a result of Defendants' false and fraudulent statements to the General Services

19  Administration, there is certainly alleged "'concrete' injury" to the corporation's business

20  reputation.  *See In re Cray Inc. Derivative Litigation, supra,* 431 F.Supp.2d at 1134; *see also,*

21  *American International Group, Inc. v. Greenberg*, 965 A.2d 763, 803 (Del. Ch. 2009)

22  ("Delaware courts have taken a pragmatic approach to the ripeness of [derivative claims] when

23  the defendant faces a viable direct claim for the same conduct . . .").[4]

24

25

26         [4] If Director Defendants are claiming that the damages asserted in this action must await
    the outcome of the Relator Action, that is no reason to dismiss Plaintiffs' damages allegations.
27  At best, it may provide a rationale for staying this action until a later stage when there is more
    progress in the Relator Action.  *See Brudno v. Wise*, 2003 Del. Ch. LEXIS 35 at * 1 (Del. Ch.
28  Apr. 1, 2003) (derivative action stayed pending outcome of federal securities action).

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

## VII.   TO THE EXTENT ANY ALLEGATIONS ARE INSUFFICIENT, LEAVE TO AMEND SHOULD BE GRANTED

To the extent that the Court finds Plaintiffs' allegations of insufficient, Plaintiffs seek leave to amend. "Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (additional citation omitted).  To the extent that any allegations regarding demand futility, Director Defendants' breaches of duty, or damages are insufficiently alleged, Plaintiffs believe they can be cured by amendment.

A separate reason to grant leave to amend, should the court deem it necessary, is Oracle's curious noticing of its motion pursuant to Fed. R. Civ. P. 41(b), rather than Fed. R. Civ. P. 12(b)(6).  A Rule 41(b) dismissal "must be supported by a showing of unreasonable delay." *Omstead v. Dell*, Inc., 594 F.3d 1081, 1084 (9th Cir. 2010), quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986).  The district court must weigh the following factors in determining whether a Rule 41(b) dismissal is warranted: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." *Id.* Oracle has failed to support its motion with any argument on these factors.  Further, courts have ruled that standing – Oracle's stated grounds for its motion – is improper for consideration in a Rule 41(b) motion:

> In granting the defendants' motion for dismissal pursuant to Rule 41(b), the district court concluded that Haskell lacked standing to bring an individual action for monetary relief. However, the distinction between standing analysis and Rule 41(b) dismissal analysis is significant and should be illustrated . . . [B]y its very nature, analysis under Rule 41(b) centers upon the sufficiency of the evidence presented at trial and is subject to limited appellate review.  Standing, on the other hand, is a preliminary matter to be determined prior to the commencement of trial and is subject to de novo review on appeal. As this court has recently reiterated, "[t]he issue of standing, and whether a federal court has power to adjudicate a suit, is 'the threshold question in every federal case.". . . As a general rule, standing should be determined as a preliminary matter through an examination of the allegations contained in the complaint, and "both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  If standing cannot be determined from examination of the complaint, then "it is within the trial court's power *to allow or to require the plaintiff to supply, by amendment to the*

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT                                                                    32

1

*complaint or by affidavits, further particularized allegations of fact deemed
supportive of the plaintiff's standing.*

2

3  *Haskell v. Washington Township*, 864 F.2d 1266, 1274-76 (6th Cir. 1988) (citations omitted)

4  (emphasis added).  Here, Oracle has argued that Plaintiffs do not have standing, allegedly

5  because they have insufficiently alleged demand futility.  Therefore, at minimum, if the Court

6  finds that Plaintiffs have insufficiently pleaded demand futility, leave to amend should be

7  granted, rather than punishing Plaintiffs with the "drastic sanction" of dismissal under Fed. R.

8  Civ. P. 41(b).  *Omstead*, 594 F. 3d at 1084.

9          Further, Defendants have attached a number of documents to their motions to dismiss.

10  *See* Besirof Declaration, Exhs. 1-13.  However, when a district court "looks beyond the pleadings

11  in evaluating a Rule 12(b)(6) motion to dismiss, the motion must be treated as one for summary

12  judgment under Rule 56."  *Grove v. Mead School Dist. No. 354*, 753 F.2d 1528, 1532 (9th Cir.

13  1985).  In providing notice to the parties, "a district court need only apprise the parties that it will

14  look beyond the pleadings to extrinsic evidence and give them an opportunity to supplement the

15  record." *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1408 (9th Cir. 1995).  Courts considering

16  similar derivative actions have afforded plaintiffs an opportunity for discovery.  *See, e.g.*, *Walt*

17  *Disney, supra*, 825 A.2d at 285 (noting that because defendants relied on extrinsic evidence, the

18  trial court had "converted the motions into summary judgment motions and afforded plaintiffs an

19  opportunity to undertake discovery.")

20          The Court may, however, consider documents referred to in the Plaintiffs' Complaint and

21  essential to the Plaintiffs' claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th

22  Cir. 2000) (citing *Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th

23  Cir. 1993)).  Plaintiffs' Complaint incorporates by reference the Relator Action.

24          As described above, on April 4, 2011, the United States District Court for the Eastern

25  District of Virginia began unsealing documents in the Relator Action, which provide further

26  evidence of Defendants' breaches of duty and failure to properly manage Oracle, and further

27  support Plaintiffs' allegations.  Therefore, Plaintiffs request that the Court consider these

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**                    33

documents, which are attached to the Thigpen Declaration submitted in support of Plaintiffs'

Opposition.  *See* Plaintiffs' Request for Judicial Notice and the Thigpen Decl., Exhs. 5-12.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Individual Defendants' and

nominal defendant Oracle Corporation's motions to dismiss be denied in their entirety.

Dated: April 28, 2011                              **COTCHETT, PITRE & MCCARTHY, LLP**
                                                   JOSEPH W. COTCHETT
                                                   jcotchett@cpmlegal.com
                                                   NANCY L. FINEMAN
                                                   nfineman@cpmlegal.com
                                                   MARK C. MOLUMPHY
                                                   mmolumphy@cpmlegal.com
                                                   JORDANNA G. THIGPEN
                                                   jthigpen@cpmlegal.com

                                                   _____/s/_____
                                                   JORDANNA G. THIGPEN

                                                   San Francisco Airport Office Center
                                                   840 Malcolm Road, Ste. 200
                                                   Burlingame, CA 94010
                                                   Telephone: (650) 697-6000
                                                   Facsimile: (650) 697-0577

                                                   *Attorneys for Plaintiff Lisa Galaviz,*
                                                   *derivatively on behalf of Oracle Corporation*

                                                   **JERRY K. CIMMET**
                                                   Attorney at Law
                                                   cimmet@att.net

                                                   _____/s/_____
                                                   JERRY K. CIMMET

                                                   177 Bovet Road, Ste. 600
                                                   San Mateo, CA 94402
                                                   Telephone: (650) 866-4700
                                                   Facsimile: (650) 866-4770

I, Jordanna G. Thigpen, am the ECF user whose ID and password is being used to file this

PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL

DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT.  In

compliance with General Order 45, X, B, I hereby attest that Jerry K. Cimmet has concurred with

this filing.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**                                        34

**LAW OFFICES OF JOHN M. KELSON**
John M. Kelson
kelsonlaw@sbcglobal.net

_____
                    /s/
                 JOHN M. KELSON

2000 Powell Street, Ste. 1425
Emeryville, CA 94608
Telephone: (510) 465-1326
Facsimile: (510) 465-0871

*Attorneys for Plaintiff Philip T. Prince,*
*derivatively on behalf of Oracle Corporation*

I, Jordanna G. Thigpen, am the ECF user whose ID and password is being used to file this PLAINTIFFS' OPPOSITION TO NOMINAL DEFENDANT ORACLE'S AND INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT.  In compliance with General Order 45, X, B, I hereby attest that John M. Kelson has concurred with this filing.