PAGES 1 – 63

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE RICHARD SEEBORG, JUDGE

IN RE ORACLE CORPORATION DERIVATIVE)
LITIGATION.                          )
                                     )
                                     ) NO. 10-3392 RS
                                     )
                                     )  SAN FRANCISCO, CALIFORNIA
                                     )  THURSDAY
                                     )  JUNE 2, 2011
_____)  2:30 O'CLOCK P.M.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF**S:          **COTCHETT PITRE & MCCARTHY LLP**
                         840 MALCOLM ROAD, SUITE 200
                         BURLINGAME, CA. 94010
                         650-697-0577
                    BY:  **MARK C. MOLUMPHY, ESQUIRE**
                         **JORDANNA G. THIGPEN, ATTORNEY AT LAW**

**FOR INTERESTED PARTY:  JERRY K. CIMMET, ESQUIRE**
                         177 BOVET ROAD, SUITE 600
                         SAN MATEO, CALIFORNIA 94402
                         **650-866-4770**

**AND**

                         **JOHN M. KELSON, ESQUIRE**
                         WATERGATE TOWER III
                         2000 POWELL STREET, SUITE 1425
                         EMERYVILLE, CALIFORNIA 94608
                         510-465-0871

FURTHER APPEARANCES ON NEXT PAGE.


*REPORTED BY:   KATHERINE WYATT, CSR 9866, RMR, RPR*
            *OFFICIAL REPORTER - US DISTRICT COURT*
            *COMPUTERIZED TRANSCRIPTION BY ECLIPSE*

1   FURTHER APPEARANCES:

2   **FOR DEFENDANT ORACLE:**

3   **MORRISON & FOERSTER**

4   425 MARKET STREET

5   SAN FRANCISCO, CALIFORNIA 94105-2482

6   **BY:   JORDAN ETH, ESQUIRE**
          **PHILIP T. BESIROF, ESQUIRE**

7

8   AND

9   **JAMES C. MAROULIS, MANAGING CORPORATE COUNSEL**
    ORACLE CORPORATION
10  500 ORACLE PARKWAY
    REDWOOD SHORES, CALIFORNIA 94065

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1  THURSDAY JUNE 3, 2011                        2:30 O'CLOCK  P.M.

 2

 3                        P R O C E E D I N G S

 4          THE CLERK:  C10-3392, IN RE: ORACLE CORPORATION

 5  DERIVATIVE LITIGATION.

 6          COUNSEL, PLEASE STATE YOUR APPEARANCES.

 7          MR. MOLUMPHY:  GOOD AFTERNOON, YOUR HONOR.  MARK

 8  MOLUMPHY, COTCHETT, PITRE & MCCARTHY FOR THE PLAINTIFF.

 9          THE COURT:  GOOD AFTERNOON.

10          MR. KELSON:  GOOD AFTERNOON, YOUR HONOR.  JOHN KELSON

11  FOR THE PLAINTIFFS.

12          THE COURT:  GOOD AFTERNOON.

13          MR. CIMMET:  JERRY CIMMET FOR THE PLAINTIFFS, YOUR

14  HONOR.

15          THE COURT:  GOOD AFTERNOON.

16          MS. THIGPEN:  JORDANNA THIGPEN FOR THE PLAINTIFFS,

17  YOUR HONOR.

18          MR. MOLUMPHY:  I ALSO HAVE MARISA COMPESI FROM MY

19  OFFICE.

20          MR. ETH:  GOOD AFTERNOON, YOUR HONOR.  JORDAN ETH AND

21  PHILIP BESIROF FOR ORACLE AND THE INDIVIDUAL DEFENDANTS.

22          THE COURT:  GOOD AFTERNOON.

23          MR. ETH:  AND JIM MAROULIS FROM ORACLE FOR ORACLE.

24          THE COURT:  GOOD AFTERNOON.

25          WELL, WE ARE HERE ON A MOTION.  I'M UNCLEAR ON
```

1    EXACTLY WHAT RULE UNDER WHICH IT'S BEING BROUGHT, BUT A MOTION

2    THAT IS TARGETING THE DEMAND FUTILITY ISSUE.  AND SO THAT WILL

3    BE THE FIRST ORDER OF BUSINESS, TO DISCUSS THAT.

4             THERE'S ALSO A MOTION WITH RESPECT TO THE INDIVIDUAL

5    DEFENDANTS UNDER 12 (B) (6), AND WE CAN ADDRESS THAT, AS WELL.

6             LET ME JUST MAKE A COUPLE OF COMMENTS. THE REFERENCE

7    I JUST MADE TO WHAT RULE THIS IS BROUGHT UNDER, I KNOW THIS

8    PARTICULAR MOTION IS STYLED UNDER 41 (B), I HAVE SOME QUESTION

9    ABOUT WHETHER OR NOT THAT'S THE APPROPRIATE RULE RUBRIC UNDER

10   WHICH TO BRING THIS MOTION.

11            BUT THE BOTTOM LINE IS I DON'T WANT TO SPEND A LOT OF

12   TIME ON THAT. I MEAN, YOU CAN -- A MOTION AT THE PLEADING STAGE

13   GOING TO THE QUESTION OF WHETHER OR NOT DEMAND FUTILITY KICKS

14   INTO THE FRAY HERE CAN BE BROUGHT IN MY VIEW. I THINK IT MIGHT

15   BE 12 (B) (6).  IT MIGHT BE (12) (B) (1), IF YOU VIEW IT AS A

16   JURISDICTIONAL ISSUE.

17            SO I PROPOSE NOT TO SPEND A LOT OF THE TIME ON THAT

18   QUESTION.

19            THE INDIVIDUALS -- JUMPING AHEAD -- THE INDIVIDUAL

20   DEFENDANTS' MOTIONS UNDER 12 (B) (6) SEEMS TO BE THE BIG

21   PROCEDURAL QUESTION AS TO WHETHER OR NOT THE ABUSE OF FIDUCIARY

22   DUTY IS A RULE 8 OR A RULE 9 ISSUE.  AND I KNOW THERE'S AN

23   ARGUMENT THAT -- PROBABLY BOTH SIDES SAY:

24                 "WELL, IT DOESN'T MATTER" FOR THEIR VARIOUS

25   REASONS.  BUT THAT LET'S PUT ASIDE FOR THE MOMENT.

1            THE ISSUE IT SEEMS TO ME ON DEMAND FUTILITY IN THIS

2      CASE COMES DOWN TO THE QUESTION OF WHETHER OR NOT, FOR WANT OF A

3      BETTER WAY TO PHRASE IT, THE DIRECTORS MUST HAVE KNOWN.

4            AND I KNOW THAT THE PLAINTIFFS ARE SAYING THAT WHAT

5      THEY HAVE PLED HERE IS ENOUGH TO SHOW THAT THEY DID, INDEED,

6      KNOW.  AND TO SOME EXTENT IT SEEMS TO BE PREMISED ON THE NOTION

7      THAT THE SCHEME WAS SO VAST IN TERMS OF THE IMPACT ON THE

8      GOVERNMENT CONTRACTS AND THE NATURE OF IT AND, APPARENTLY,

9      THINGS THAT ARE GOING OUT IN THE MEDIA THAT EFFECTIVELY THE

10     DIRECTORS HAVE KNOWLEDGE.

11           AND I HAVE SOME QUESTION ABOUT THAT. I DON'T THINK

12     THAT THAT'S REALLY ENOUGH. AND WHAT I'M SAYING IS I THINK WE CAN

13     PUT THIS UNDER VARIOUS CONSTRUCTS.  ARE WE USING THE ARONSON

14     TEST OR THE RALES TEST, AND THIS, THAT AND THE OTHER.  AND GET

15     IN THE WEEDS ON WHICH IS THE OPERATIVE LANGUAGE UNDER THE

16     OPERATIVE DELAWARE CASE LAW THAT HAS BEEN ADOPTED BY THE

17     CIRCUIT.

18           BUT, REALLY, WHAT IT DOES COME DOWN TO IS WHETHER OR

19     NOT THIS IS A CIRCUMSTANCE UNDER WHICH THESE DIRECTORS MUST HAVE

20     KNOWN, AND IS THAT ENOUGH?

21           AND I HAVE SOME REAL QUESTION ABOUT WHETHER OR NOT IT

22     IS ENOUGH IN THIS CIRCUMSTANCE. SO THAT'S A VERY GENERAL, I

23     REALIZE, GLOSS ON A VERY DETAILED AREA OF THE LAW.  BUT THAT'S

24     KIND OF MY GUT REACTION TO IT, IF YOU WILL.

25           SO WHY DON'T I START WITH YOU, MR. ETH?  YOU'RE THE

1    MOVING PARTY AND --

2              **MR. ETH:**  YES. THANK YOU, YOUR HONOR.

3              **MR. MOLUMPHY:**  I'M GOING TO SIT DOWN, YOUR HONOR.

4              **THE COURT:**  GO RIGHT AHEAD.

5              **MR. ETH:**  AND YOUR HONOR IS CORRECT THAT THE ISSUE

6    ABOUT 41 (B) IS A COMPLETE RED HERRING.  I WOULD SAY THAT

7    NINETY-EIGHT PERCENT OF THESE CASE JUST SAY IT'S 23.1.  AND WE

8    NOTICE THAT --

9              **THE COURT:**  THE PROBLEM WITH 23.1 IS IT MAY BE THE

10   DELAWARE VARIANT ON 23.1 HAS A PROCEDURAL OPTION TO BRING A

11   MOTION AS THIS ONE IS STYLED. BUT I DON'T THINK UNDER FEDERAL

12   23.1 THAT IT IS A PROCEDURAL.  IT'S A SUBSTANTIVE RIGHT THAT IT

13   HAS TO BE -- YOU HAVE TO -- YOU HAVE TO HAVE SATISFIED THE

14   DEMAND ISSUE, BUT THERE'S NO VEHICLE UNDER 23.1.

15             **MR. ETH:**  YOUR HONOR, YOU'RE CORRECT.  AND DELAWARE

16   LAW IS ACTUALLY THE SAME AS -- 23.1 AND DELAWARE IS THE SAME ON

17   THIS POINT.

18             WE NOTICED FROM YOUR PMC-SIERRA DECISION THAT YOU

19   POINTED OUT THIS ISSUE.

20             **THE COURT:**  RIGHT.

21             **MR. ETH:**  AND THAT YOU SAID -- IN THAT CASE IT WAS 12

22   (B) (6); THIS IS 41.  IT DOESN'T MATTER.  IT'S 23.1.  I THINK WE

23   ALL AGREE THAT IT'S WHETHER OR NOT THIS COMPLAINT COMPLIES WITH

24   ONE OF THE BEST ARTICULATED, MOST WELL-KNOWN STANDARDS IN THE

25   LAW.

1    23.1 HAS BEEN LITIGATED IN THE NINTH CIRCUIT, THE

2  NORTHERN DISTRICT, DELAWARE, HUNDREDS AND HUNDREDS OF TIMES. AND

3  THE STANDARD IS AS THE COURT SAYS.  YOU CAN LOOK AT ALL KINDS OF

4  DIFFERENT ARTICULATIONS, BUT IT'S WHETHER WITH PARTICULARITY

5  THEY ALLEGE FACTS SHOWING THAT THERE'S A SUBSTANTIAL LIKELIHOOD

6  OF LIABILITY FOR A MAJORITY OF THE DIRECTORS.

7    IT'S NOT A CRIMINAL CASE.  IT'S NOT A CIVIL RIGHTS

8  CASE.  IT'S NOT CONLEY VERSUS GIBSON.  IT IS AN EXTREMELY

9  STRINGENT STANDARD FOR GOOD REASON.  BECAUSE IT'S ORACLE'S

10  CLAIM.  AND THE SHAREHOLDER IS SAYING:

11         "WE DON'T CARE IF ORACLE HAS A MILLION

12         SHAREHOLDERS.  WE'RE GOING TO TAKE OVER FOR ORACLE

13         AND BRING THIS CLAIM."

14    SO IT'S A VERY HIGH STANDARD.  WHAT THE PLAINTIFFS DO

15  IS THEY SAY:

16         "HIGH STANDARD?  I KNOW WHAT WE WILL DO?  WE

17         WILL ALLEGE SOMETHING REALLY PRETTY BOLD. WE'RE GOING

18         TO SAY THAT EVERY ONE OF THESE DIRECTORS FOR A DECADE

19         NO MATTER WHEN THEY JOINED, EVERY SINGLE ONE OF THEM

20         INTENTIONALLY PARTICIPATED IN DEFRAUDING THE UNITED

21         STATES OF AMERICA."

22    THAT'S WHAT THEY SAY. THEY ARE NOT BASHFUL ABOUT IT.

23         "EVERY ONE OF THEM KNEW ABOUT IT AND DEFRAUDED

24         THE U.S.  KNEW ABOUT IT, PARTICIPATED AND APPROVED

25         IT."

```
1              THAT'S WHAT THEY SAY.

2              THE COURT:  NOW, THE NATURE OF THEIR AVERMENTS, THERE

3    IS A DISTINCTION IN MY MIND TO -- AND I'M NOT EXPECTING YOU TO

4    SAY:

5                   "OH, THAT'S RIGHT."

6              BUT THERE IS A DISTINCTION BETWEEN THE INSIDE

7    DIRECTORS AND THE OUTSIDE DIRECTORS, BECAUSE AS I UNDERSTAND THE

8    PLAINTIFFS' AVERMENTS HERE THEY ARE SAYING, AT LEAST WITH

9    RESPECT TO THE INSIDE DIRECTORS, THAT THE NATURE OF THE JOBS

10   THAT THE INSIDE DIRECTORS HELD, EXCEPTING FOR PURPOSES OF

11   ARGUMENT THEIR ALLEGATION THAT THERE WAS THIS VERY SUBSTANTIAL

12   SCHEME TO DEFRAUD THE GOVERNMENT, THAT BY DEFINITION THEY WOULD

13   KNOW OF THAT SCHEME BECAUSE OF THE NATURE OF WHAT THEY DID

14   WITHIN THE COMPANY.

15             AND THE OUTSIDE DIRECTORS, THEIR DAY-TO-DAY

16   MANAGEMENT IS -- THEY DON'T HAVE DAY-TO-DAY MANAGEMENT

17   RESPONSIBILITIES, SO I DON'T THINK THAT ARGUMENT FLIES.

18             BUT I SUPPOSE MY QUESTION TO YOU IS:  DO YOU AT LEAST

19   SEE SOME DIFFERENCE IN ANALYSIS WITH RESPECT TO HOW THEY HAVE

20   ALLEGED THIS, WHEN WE'RE TALKING ABOUT THE INSIDE DIRECTORS AND

21   THE OUTSIDE DIRECTORS.

22             MR. ETH:  I SEE NO DIFFERENCE IN CONCLUSION. THEY ARE

23   DIFFERENTLY SITUATED, BUT AS TO THE INSIDE DIRECTORS THEY DON'T

24   ALLEGE ANYTHING, EITHER.

25             NOW, WHAT THEY DO SAY IS:
```

1          "WELL, OVER TEN YEARS, BILLION DOLLARS IN

2          SALES," 1 PERCENT OF ORACLE'S SALES DURING THAT

3     PERIOD.  BUT THEY STILL DON'T COME CLOSE TO SHOWING THAT ANY OF

4     THE INSIDE DIRECTORS INTENTIONALLY DEFRAUDED THE UNITED STATES

5     OF AMERICA. THEY DON'T COME CLOSE TO IT INSIDE OR OUTSIDE.

6          I AGREE THEY ARE DIFFERENTLY SITUATED, BUT NOT IN ANY

7     RELEVANT WAY HERE. WHAT THEY DO --

8          **THE COURT:**  WELL, I GUESS WHAT I'M SAYING IS THE

9     NATURE OF THEIR ALLEGATIONS, I THINK YOU HAVE TO GIVE THEM

10    CREDIT FOR THOSE ALLEGATIONS BEING A BIT MORE SUBTLE THAN THAT.

11          I MEAN, WHAT THEY ARE -- IF YOU POSIT THE NOTION THAT

12    THERE IS THIS SCHEME -- AND I KNOW YOU FUNDAMENTALLY DISAGREE

13    THAT THERE IS A SCHEME. BUT IF THERE IS, INDEED, A SCHEME ON THE

14    MAGNITUDE THAT THEY ALLEGE, SOMEONE, FOR EXAMPLE, WHO IS THE

15    CHIEF FINANCIAL OFFICER OF THE COMPANY WOULD KNOW, WOULD HAVE TO

16    KNOW THAT IT WAS GOING ON.

17          YOU SAY IT WASN'T GOING ON.  BUT IF, IN FACT, THEY

18    ARE RIGHT -- AND I HAVE TO ACCEPT, YOU KNOW, THEIR AVERMENTS

19    THAT THERE WAS AN EXTENSIVE SCHEME -- PUTTING, AGAIN, ASIDE

20    WHETHER OR NOT IT'S PARTICULAR ENOUGH, THE NATURE OF THE JOB OF

21    THE CHIEF FINANCIAL OFFICER OR CHIEF EXECUTIVE OFFICER WOULD BE

22    THAT THEY WOULD HAVE TO KNOW.

23          **MR. ETH:**  WE DISAGREE, YOUR HONOR.

24          **THE COURT:**  OKAY.

25          **MR. ETH:**  AND HERE'S WHY. THIS IS A SCHEME,

1   SUPPOSEDLY, RIGHT?  THAT INVOLVES 27 DIFFERENT FEDERAL AGENCIES,

2   ACCORDING TO THE UNDERLYING COMPLAINT.  FOR SOME REASON

3   PLAINTIFFS ONLY ALLEGE 21. MULTIPLE FEDERAL AGENCIES, MULTIPLE

4   YEARS, MULTIPLE CONTRACTS, HUNDREDS OF PRODUCTS, DIFFERENT KINDS

5   OF BASES OF AWARD, DIFFERENT KINDS OF -- YOU KNOW, ARE THESE

6   CONTINUATIONS OF PREVIOUS DISCOUNTS?  ARE THESE OVER $200,000 OR

7   NOT?

8             EXTREMELY INTRICATE.  THIS ISN'T A QUESTION OF:  DOES

9   OUR SOFTWARE WORK, OR SOMETHING LIKE THAT.  THIS IS AN EXTREMELY

10  INTRICATE QUESTION.

11            IS IT A 27 PERCENT DISCOUNT, OR SHOULD IT BE 31

12  PERCENT?

13            WELL, WHO ARE WE COMPARING IT TO?  WHAT DID WE DO

14  LAST WEEK?  WHAT ARE WE DOING NEXT WEEK?

15            IS THIS SOMETHING WHERE WE CAN CONTINUE A REBATE FROM

16  THE PRIOR QUARTER?  OR IS IT 92 DAYS, OR IS IT 89 DAYS?

17            IT'S AT A LEVEL OF DETAIL TO EXPECT THE CEO OF A

18  COMPANY WHERE THIS IS 1 PERCENT OF THEIR SALES TO SAY:

19                 "AHA, I CAN TELL THAT WE MUST BE DEFRAUDING THE

20                 GOVERNMENT."

21            **THE COURT:**  WELL, BUT IF, IN FACT, THE PLAINTIFFS

22  ARE -- AND ACCEPTING THEIR AVERMENTS, I THINK THE NUMBER IS

23  SOMETHING IN THE NEIGHBORHOOD OF $1.8 BILLION.  THAT'S NOT AN

24  INCONSEQUENTIAL AMOUNT, EVEN TO THE MOST MASSIVE OF CORPORATE

25  ENTITIES.

1    **MR. ETH:**  ABSOLUTELY.  IT'S 1 BILLION, AND YOU'RE

2    RIGHT. IT'S 1 BILLION OVER TEN YEARS.  AND THIS IS A COMPANY

3    OVER THAT TEN-YEAR PERIOD HAD NORTH OF 90 BILLION IN SALES.

4         **THE COURT:**  RIGHT.

5         **MR. ETH:**  SO THEY HAVE ALL KINDS OF DIFFERENT ISSUES

6    ALL OVER THE WORLD INVOLVING ALL KINDS OF THINGS. AND THIS IS

7    NOT SOMETHING THAT ON ITS FACE JUMPS OUT.

8         IT'S AN INTRICATE SET OF DETAIL.

9         **THE COURT:**  LET ME GO BACK, THOUGH, FOR A MOMENT,

10   BECAUSE WE'RE SORT OF OFF ON AN AREA THAT WE WILL GET TO, BUT

11   WASN'T WHAT I WAS GOING AT.

12        AND IT'S ACTUALLY SOMETHING I THINK YOU WILL PROBABLY

13   AGREE WITH ME ON. FOR PURPOSES OF THE DEMAND FUTILITY ISSUE, YOU

14   NEED MORE THAN JUST THE INSIDE DIRECTORS.  SO IF, INDEED, THE

15   OUTSIDE DIRECTORS ARE -- THERE IS AN INADEQUATE SHOWING THAT

16   THERE WOULD BE ANY REASON OR ANY BASIS FROM THE AVERMENTS THAT

17   WE HAVE NOW TO BELIEVE THAT THEY HAD ANY KNOWLEDGE -- AND I

18   BELIEVE IT'S IF THERE ARE SIX; ISN'T THAT RIGHT?

19        **MR. ETH:**  THEY HAVE TO SHOW THAT THERE ARE SIX OF

20   THEM.

21        **THE COURT:**  WHO ARE TAINTED, IF YOU WILL.

22        **MR. ETH:**  THAT'S RIGHT.  ABSOLUTELY.

23        **THE COURT:**  SO TO THE EXTENT THAT WE CAN ARGUE AND

24   DISCUSS THE INSIDERS, BUT FOR PURPOSES OF THE DEMAND FUTILITY

25   ANALYSIS I'M NOT SURE THAT IS OF PARTICULAR -- THAT'S NOT GOING

1     TO BE THE MAKE OR BREAK.

2              **MR. ETH:**  YOUR HONOR, YOU ARE ABSOLUTELY RIGHT.  WHEN

3     YOU HAD BROUGHT UP THE INSIDE DIRECTORS I COULD HAVE SAID:

4                   "WE DON'T NEED THEM.  LET'S PUT THEM TO THE

5                   SIDE.  THERE ARE EIGHT OUTSIDE DIRECTORS.  WE'RE

6                   DONE."

7              I COULD HAVE SAID THAT. BUT I BELIEVE THAT AS TO ALL

8     OF THEM, AS TO ALL OF THEM THEY HAVEN'T PLEADED ENOUGH.

9              BUT YOU ARE ABSOLUTELY RIGHT. WE GET TO THE OUTSIDE

10    DIRECTORS, AND THAT'S ALL WE NEED IS THE OUTSIDE DIRECTORS.

11             AND THERE THERE'S NOTHING BY THEIR POSITION. WHAT THE

12    PLAINTIFFS SAY IS:

13                  "WELL, YOU WERE ON AN AUDIT COMMITTEE."

14             WELL, CASE AFTER CASES THAT DOESN'T MEAN ANYTHING.

15             WHAT THE PLAINTIFFS ESSENTIALLY ALLEGE AS TO EVERY

16    SINGLE ONE OF THESE DIRECTORS, WHETHER OR NOT THEY EVER WORKED

17    FOR ORACLE, OUTSIDE DIRECTORS, WHEN THEY JOINED.  TWO THINGS:

18    ONE IS:

19                  "WELL, YOU KNEW THAT THERE WERE OTHER COMPANIES

20                  THAT HAD THESE PROBLEMS."

21             IN FACT, COUNSEL, MINUTES BEFORE THIS HEARING -- NOT

22    TWO HOURS AGO -- LIKE FIVE MINUTES AGO HANDED ME A CHRONOLOGY

23    THAT I GUESS HE'S GOING TO USE.  AND IT'S ALL ABOUT OTHER

24    COMPANIES.

25             IT'S ABOUT PEOPLESOFT AND ACCENTURE, HEWLETT-PACKARD.

1    IT'S ABOUT SUN MICROSYSTEMS. AND THE ALLEGATION IS:

2                    "WELL, YOU KNEW AT OTHER COMPANIES, SOME OF

3                    WHICH YOU ULTIMATELY ACQUIRED, HAD PROBLEMS WITH THE

4                    FCA.  YOU KNEW THAT TECHNOLOGY COMPANIES HAD

5                    PROBLEMS.  YOU'RE A TECHNOLOGY COMPANY. THEREFORE" --

6                    THEREFORE WHAT?  THEREFORE --

7                    **THE COURT:**  YOU THINK THAT -- SO YOU DON'T THINK

8    THERE'S ANY NOTION, THEN, THAT A DIRECTOR EXERCISING HIS OR HER

9    FIDUCIARY OBLIGATIONS TO THE COMPANY IN LIGHT OF LEARNING OF

10   THIS OUT IN THE MARKETPLACE, THEY DON'T HAVE ANY OBLIGATION OR

11   DUTY TO INQUIRE?

12                    **MR. ETH:**  WHAT I'M SAYING IS WHAT THE PLAINTIFFS HAVE

13   TO SHOW IS THAT THESE DIRECTORS KNEW OR MUST HAVE KNOWN. THAT'S

14   WHAT THEY HAVE TO SHOW.

15                    AND THE IDEA THAT YOU CAN PICK OTHER COMPANIES, OTHER

16   COMPANIES AND SAY:

17                    'WELL, THAT MEANS THAT YOU KNEW THAT THERE WAS

18                    SOMETHING GOING ON AT ORACLE THAT CREATES A

19                    SUBSTANTIAL LIKELIHOOD OF LIABILITY" HAS BEEN

20   REJECTED OVER AND OVER AGAIN. THAT'S NOT THE WAY IT WORKS.

21                    AND, YOUR HONOR, I THINK BACK TO THE BACKDATING

22   CASES.  COURTS LOOKED CASE-BY-CASE, INDIVIDUAL-BY-INDIVIDUAL.

23   NOT:

24                    "WELL, THERE'S SOMETHING OUT THERE SOMEWHERE.

25                    THEREFORE, YOU KNEW."

```
1          THERE ARE A LOT OF THINGS THAT THEY ARE ON NOTICE OF
2   THAT COULD BE A PROBLEM. THEY ARE ON NOTICE OF EMPLOYMENT
3   REGULATIONS, ENVIRONMENTAL REGULATIONS, SECURITIES REGULATIONS.
4          THE FACT THAT OTHER COMPANIES HAD THIS DOESN'T
5   SATISFY IT, AND THEY DON'T CITE A CASE WHERE IT DOES.
6          SO THAT'S ONE MAIN THING THEY RELY ON.  THE OTHER
7   THING THEY RELY ON IS THEY SAY ALL OF THESE DIRECTORS THROUGHOUT
8   THIS ENTIRE PERIOD HAD ACCESS TO DOCUMENTS, CONVERSATIONS, THEY
9   ATTENDED MEETINGS, THEY KNEW PEOPLE AND SO ON.
10         WELL, OF COURSE THEY DID. EVERY PERSON IN THE WORLD,
11  EVERY DIRECTOR IN THE WORLD, THEY ALL HAVE ACCESS, GENERALIZED,
12  TO ALL KINDS OF THINGS. BUT WHAT THEY DON'T EVER SAY IS WHAT
13  DOCUMENT, WHEN, APPRISED WHICH DIRECTOR OF WHAT?
14         INSTEAD:
15             "WELL, YOU HAD A SALES DATABASE."
16         WELL, THAT SHOULDN'T BE SURPRISING THAT THE COMPANY
17  WOULD KNOW WHAT ITS SALES ARE. AND I SEE IT ON THE CHRONOLOGY
18  HERE:  WELL, THEY INSTALLED A SALES DATABASE.
19         I HOPE SO.  I MEAN, IT WOULD BE KIND OF SHOCKING IF
20  THEY DIDN'T HAVE A DATABASE THAT TELLS THEM HOW THEY ARE DOING,
21  TRACKING HOW THEY ARE DOING.
22         THEY, OF COURSE, DON'T EVER ALLEGE WITH ANY
23  PARTICULARITY THAT ANY OUTSIDE DIRECTOR EVER CONSULTED IT,
24  LOOKED AT IT, THOUGHT ABOUT IT, AND THAT IT REVEALED ANYTHING ON
25  ANY PARTICULAR DAY, WEEK, MONTH, YEAR OR DECADE.
```

1          SO IT'S JUST COMPLETELY EMPTY. AND WHEN YOU LOOK AT

2     THE CASES THEY DO CITE, THERE ARE A COUPLE. THEY CITE -- THEIR

3     LEADING CASE IS THE ABBOTT CASE FROM THE SEVENTH CIRCUIT. IT'S

4     SO COMPLETELY DIFFERENT IN WHAT THEY -- IN WHAT THEY ALLEGE.

5          THEY HAVE CERTIFIED LETTERS GOING DIRECTLY TO

6     DIRECTORS.  THREE OF THEM GO DIRECTLY TO THE DIRECTORS. YOU HAVE

7     STOCK DECLINES IN RESPONSE TO ARTICLES.  YOU HAVE SEC FORMS THAT

8     ACKNOWLEDGE A PROBLEM.  YOU HAVE VOLUNTARY COMPLIANCE PROGRAMS.

9     YOU HAVE THE DIRECTORS LEARNING EXACTLY WHAT IS GOING ON.

10          AND THE COURT SAID THERE WAS AN EXTENSIVE PAPER TRAIL

11     LINKING THE DIRECTORS, DIRECT KNOWLEDGE FOR THE DIRECTORS.

12          THE OTHER CASE THEY CITE, THE MCCALL CASE, SAME KIND

13     OF THING. AUDIT REPORTS THAT HAVE SPECIFIC INFORMATION,

14     STATISTICAL ANALYSIS, SECRET RESERVE REPORTS, RAIDS IN SIX

15     STATES, 35 FACILITIES, SEARCH WARRANTS ISSUED.  IT'S COMPLETELY

16     DIFFERENT FROM HERE WHERE IT'S:

17               "WELL, YOU HAD ACCESS TO DOCUMENTS.  YOU

18               ATTENDED BOARD MEETINGS."

19          OF COURSE THEY HAD ACCESS TO DOCUMENTS, ATTENDED

20     BOARD MEETINGS.  THERE'S NO SUBSTANCE TO ANY OF IT.

21          THE WAY YOU CAN TELL IS WHEN YOU LOOK AT THE CASES WE

22     CITED, RECENT CASES FROM THE NORTHERN DISTRICT, THEY DON'T EVEN

23     RESPOND.

24          NOTHING ON THE VERIFONE CASE, JUDGE PATEL.  NOTHING

25     ON THE VERISIGN CASE, JUDGE HAMILTON.  JUST COMPLETELY SILENT ON

1    THE CITIGROUP CASE.  ON ALL THESE CASES, NOTHING AT ALL. THEY

2    HAVE GONE THROUGH ALL OF THESE DIFFERENT ARGUMENTS.

3            SO AND I'M FIGHTING TOO MUCH ON THE INSIDE DIRECTORS,

4    BUT EVEN THERE ALL THEY HAVE ON THE INSIDE DIRECTORS IS THERE'S

5    ONE E-MAIL THAT SAYS THE NAME SAFRA. WE SHOULD TALK TO SAFRA.

6    NOT:

7                "WE SHOULD RUN THIS SCHEME BY SAFRA BECAUSE

8                SHE'S DONE THIS BEFORE."  WE SHOULD TALK TO SAFRA.

9                ALL THEY HAVE FOR MR. ELLISON, THE CEO, IS THEY SAY:

10               "WELL THERE ARE E-MAILS FROM THE OFFICE OF THE

11               CEO."

12           THE UNDERLYING COMPLAINT, WHICH THEY COPIED -- THEY

13   DIDN'T COPY IT COMPLETELY -- IS A PARAGRAPH IN THE UNDERLYING

14   COMPLAINT THAT SAYS WHO IS IN THAT OFFICE OF CEO AND WHO SIGNED

15   THOSE VARIOUS E-MAILS.

16           IT'S ACTUALLY PARAGRAPH 21 OF THE UNDERLYING, THE

17   FRASCELLA COMPLAINT.  HERE IT'S PLAINTIFFS' 129.  AND THEY LIST

18   FOUR PEOPLE, AND THEY ARE JUST FOUR EMPLOYEES OF ORACLE.  IT'S

19   NOT MR. ELLISON.  GOVERNMENT HASN'T CHARGED MR. ELLISON WITH

20   ANYTHING, OR MS. CATZ, OR MR. HENLEY OR FOR ANYBODY ELSE.

21           SO WE AGREE WITH YOUR HONOR ABOUT THE OUTSIDE

22   DIRECTORS. WE THINK IT GOES FURTHER TO THE INSIDE DIRECTORS, AS

23   WELL.

24           **THE COURT:**  NOW, I KNOW YOU ARGUE FOR DISMISSAL

25   WITHOUT LEAVE TO AMEND, WHICH IS THE AGGRESSIVE APPROACH THAT

```
 1   I'M NOT SURPRISED AT. BUT, I MEAN, ALL OF YOUR ARGUMENTS ARE

 2   ARGUMENTS THAT DON'T FORECLOSE THE NOTION THAT A COMPLAINT COULD

 3   BE BROUGHT.

 4           IN OTHER WORDS, WE'RE NOT IN A SITUATION WHERE, YOU

 5   KNOW, SOMEBODY IS -- SOMEONE HAS TALKED ABOUT A DIRECTOR WHO

 6   SIMPLY WASN'T EVEN ON THE BOARD OR SOMETHING WHERE, AS A MATTER

 7   OF OUT OF THE BOX, YOU KNOW, THERE'S NO WAY IT COULD EVER BE

 8   CURED.

 9           ISN'T THIS THE CASE THAT IF I DO GO YOUR WAY I SHOULD

10   ALLOW AN OPPORTUNITY TO AMEND?

11           MR. ETH:  YOUR HONOR, HERE'S WHY WE THINK IT SHOULD

12   BE WITHOUT LEAVE TO AMEND. THERE IS A SECOND ISSUE WHICH IS

13   CONTINUOUS TRADING AND CONTEMPORANEOUS TRAINING.

14           THE COURT:  STANDING?  STANDING?

15           MR. ETH:  WELL, THEY ARE BOTH REALLY STANDING.  IT'S

16   ANOTHER WAY OF LOOKING AT STANDING. AND THE QUESTION IS WHETHER

17   OR NOT THE PLAINTIFFS THEMSELVES HELD STOCK FROM THE BEGINNING

18   THROUGH THE END.

19           THE COURT:  RIGHT.

20           MR. ETH:  AND WHAT THEY DO IS THEY SAY -- WHAT THE

21   PLAINTIFFS DO IS THEY SAY:

22               "THEY HELD IT AT ALL RELEVANT TIMES."

23           THAT'S NOT ENOUGH.  YOU HAVE TO SAY:

24               "I BOUGHT IT HERE AND HELD IT THROUGHOUT."

25           THE COURT:  WHY COULDN'T THAT BE SUBJECT TO
```

1  AMENDMENT?

2          **MR. ETH:**  WELL, AT THIS POINT THEY HAVEN'T SAID THEY

3  CAN DO IT.

4          **THE COURT:**  WELL --

5          **MR. ETH:**  THEY CAN EITHER DO IT OR CAN'T.  AND, I

6  MEAN, MAYBE THAT'S RIGHT THERE. BUT THEY HAVEN'T DONE THAT, AND

7  THAT'S SOMETHING THAT COULD RISE TO THAT LEVEL.

8          BUT BEYOND THAT, AND WHAT ACTUALLY IS MORE

9  FUNDAMENTAL, HERE'S WHAT THE PLAINTIFFS HAVE DONE.  THEY TOOK

10 TWO INDIVIDUAL COMPLAINTS, PUT THEM TOGETHER AND AMENDED THEM.

11 AND THEN, IN THEIR OPPOSITION BRIEF PUT IN ALL KINDS OF OTHER

12 STUFF.

13         THAT SOUNDS LIKE A COUPLE OF AMENDMENTS TO ME RIGHT

14 THERE.

15         **THE COURT:**  WELL, THE CONSOLIDATION WAS A FUNCTION OF

16 SOME RULINGS THAT WERE MADE BY ME, SO I WASN'T GIVING THEM LEAVE

17 TO AMEND TO BRING NEW -- I HADN'T RULED ON THE SUBSTANCE OF THE

18 COMPLAINT.  THIS WAS A FUNCTION OF BRINGING ONE CASE INTO THIS

19 COURT AND NOT MOVING ANOTHER CASE OUT AND ALL OF THAT AND

20 RESULTING IN A CONSOLIDATED COMPLAINT, BUT --

21         **MR. ETH:**  IT WAS ACTUALLY MORE THAN JUST PUTTING THE

22 COMPLAINTS TOGETHER, BECAUSE WE ACTUALLY HAD A STIPULATION

23 SAYING:

24              "IF ALL YOU'RE DOING IS PUTTING THE COMPLAINTS

25              TOGETHER, WE WILL RESPOND IN SEVEN DAYS OR TEN DAYS,"

1    WHATEVER IT WAS.

2            BUT THEY ADDED 50 PAGES TO THE COMPLAINT, OR 50

3    PARAGRAPHS.  I FORGOT IF IT WAS 50 PARAGRAPHS OR 50 PAGES.  SO

4    WE VIEW THAT AS AN AMENDMENT.  WE VIEW THE VIRGINIA AS AN

5    AMENDMENT.

6            AND THESE ARE EXPERIENCED COUNSEL, AND THESE RULES

7    ARE VERY WELL KNOWN. AND WE CITE TO -- WE'D LOOK AT THE SILICON

8    GRAPHICS CASE, WHICH LOOKED AT THIS EXACT SAME ISSUE AND SAID IF

9    THEY DON'T OFFER WHAT THEY WOULD ADD, AND IF THEY IN THEIR

10   PAPERS HAD SAID:

11            "WELL, HERE'S WHAT WE WANT TO ADD," BUT IT'S

12   JUST -- WE ALREADY KNOW WHAT THEY WANT TO ADD.  IT'S VIRGINIA.

13   AND WHAT'S IN VIRGINIA, WE'VE LOOKED AT THAT. THAT JUST

14   DEMONSTRATES THAT THERE'S NO TIE BETWEEN ANY DIRECTOR OUTSIDE OR

15   INSIDE TO ANYTHING THAT WENT ON HERE.

16        **THE COURT:**  OKAY. LET ME ASK PLAINTIFFS ON THE DEMAND

17   FUTILITY ISSUE, AND THEN WE WILL GO TO THE 12 (B) (6) INDIVIDUAL

18   ISSUES, WHICH I KNOW DEMAND FUTILITY IS THE BIG QUESTION AND --

19   BUT GO AHEAD.

20        **MR. MOLUMPHY:**  THANK YOU, YOUR HONOR. AND MR. ETH WAS

21   CORRECT.  WE DID PREPARE FOR ILLUSTRATIVE PURPOSES TO ASSIST THE

22   COURT, BECAUSE IT'S NOT AN EASY ISSUE, A CHART INDICATING WHO

23   THE DIRECTORS WERE AND A TIME LINE OF THE EVENTS, WHICH WE

24   THOUGHT MIGHT BE HELPFUL.

25        **THE COURT:**  I'D BE HAPPY TO HAVE IT.  THE DEFENSE IN

1    THEIR REPLY BRIEF HAD A CHART WITH RESPECT TO THE INDIVIDUAL

2    DIRECTORS, SO I'M HAPPY TO HAVE YOUR CHART.

3              WHY DON'T YOU GIVE IT TO MY COURTROOM DEPUTY?

4              **MR. MOLUMPHY:**  I ALSO HAVE SOME FOR YOUR STAFF, IF

5    YOU LIKE.

6              **THE COURT:**  GO AHEAD.  WE WILL TAKE IT.

7              AND I RECOGNIZE MR. ETH GRABBED YOUR CHART IN ADVANCE

8    AND TRIED TO USE IT, BUT I'M SURE YOU WILL --

9              **MR. MOLUMPHY:**  AS ANY SKILLED ADVOCATE WOULD. I DON'T

10   BLAME HIM FOR THAT.

11             LET ME START WITH THE FIRST QUESTION THAT YOUR HONOR

12   ASKED, AND THAT'S:  IS THE QUESTION BASICALLY WITH ALL THE CASES

13   THAT HAVE INTERPRETED 23.1 IN DELAWARE AND FEDERAL COURTS

14   THROUGHOUT THE COUNTRY, IS THE BASIC ISSUE:  HAVE WE ALLEGED

15   ENOUGH FACTS PRESUMED TO BE TRUE AND REASONABLE INFERENCES DRAWN

16   FROM THOSE FACTS TO CREATE A REASONABLE DOUBT THAT THESE

17   DIRECTOR DEFENDANTS KNEW WHAT WAS GOING ON?

18             WE AGREE THAT'S BASICALLY THE ISSUE HERE.

19             **THE COURT:**  AND THE OPERATIVE WORD THAT YOU JUST USED

20   IS -- YOUR CONTENTION IS THEY KNEW. IT'S NOT A CASE OF THEY

21   SHOULD HAVE KNOWN OR BEING MORE DILIGENT THEY WOULD HAVE KNOWN.

22   YOU'RE SAYING THEY KNEW.

23             **MR. MOLUMPHY:**  CORRECT. AND OUR COMPLAINT ACTUALLY

24   USES "KNEW OR RECKLESSLY SHOULD HAVE KNOWN." AND, FRANKLY, WE

25   BELIEVE THAT IS STANDARD, AND THE ABBOTT CASE SAYS THAT.

1        BUT EVEN IF WE KNOW USED THE "KNOWING" STANDARD WE

2   BELIEVE WE HAVE ALLEGED FACTS WHICH ANY REASONABLE PERSON

3   CONSIDERING IT NOT IN ISOLATION, AS MR. ETH IS ASKING YOU TO

4   CONSIDER ALL THESE FACTS, BUT TOGETHER, THE TOTALITY.  YOUR

5   HONOR USED THE TWOMBLY AND IQBAL REFERENCES EARLIER TODAY.  WE

6   WELCOME SUCH AN ANALYSIS, BECAUSE IN OUR VIEW CONSIDERING THE

7   FACTS IN THEIR TOTALITY, THERE'S ONLY ONE PLAUSIBLE EXPLANATION

8   HERE.

9        WE CAN GO BACK AND FORTH WITH MR. ETH ON WHETHER OR

10  NOT THERE'S ENOUGH RED FLAGS, BUT I THINK AT THE END OF THE DAY

11  THAT'S FOR A TRYER OF FACT TO DECIDE.

12        **THE COURT:**  WELL, BUT DOESN'T -- ONE OF THE THINGS

13  ABOUT YOUR POSITION THAT TROUBLES ME IS IF YOU -- IF YOU ALLEGE

14  A MASSIVE ENOUGH SCHEME -- MASSIVE IN TERMS OF QUANTITY, AMOUNT,

15  DURATION OR WHATEVER -- YOU ARE ESSENTIALLY WRITING OUT DEMAND

16  FUTILITY. I MEAN, YOU'RE SAYING:

17              "IF IT'S BIG ENOUGH, THEN WE DON'T REALLY HAVE

18              TO LOOK AT THE PARTICULARS OF WHETHER OR NOT DIRECTOR

19              A WAS IN A POSITION TO KNOW THESE THINGS.  IT'S JUST

20              SO MASSIVE THAT WE DON'T HAVE TO WORRY ABOUT IT," IS

21  MORE OR LESS HOW I HEAR YOUR ARGUMENT COMING OUT.

22        AND IF THAT'S TRUE, THEN THE DEMAND FUTILITY ISSUE

23  REALLY GOES BY THE BOARDS IF YOU GET OVER A CERTAIN LEVEL OF

24  MAGNITUDE OF THE SCHEME.

25        **MR. MOLUMPHY:**  IF I SUGGESTED THAT IN THE PAPERS THAT

1    IS NOT MY ARGUMENT, BUT IT IS CLOSE TO THAT, YOUR HONOR.  AND

2    THAT'S BASED UPON NOT WHAT I THINK, BUT WHAT JUDGES APPLYING

3    DELAWARE LAW HAVE SAID.  FOR EXAMPLE, THE OXFORD CASE THAT WE

4    CITED APPLYING DELAWARE LAW IN WHICH THE COURT HELD, QUOTE:

5              "WHERE LIABILITY IS BASED UPON A FAILURE TO

6              SUPERVISE AND MONITOR AND TO KEEP ADEQUATE

7              SUPERVISORY CONTROLS IN PLACE, DEMAND FUTILITY IS

8              ORDINARILY FOUND, ESPECIALLY WHERE THE FAILURE

9              INVOLVES A SCHEME OF SIGNIFICANT MAGNITUDE AND

10             DURATION."

11        **THE COURT:**  BUT THAT'S SORT OF TOUCHED ON INTERNAL

12   CONTROL NOTION. ARE YOU ARGUING THAT ONE OF THE REASONS THAT

13   THERE'S DEMAND FUTILITY HERE IS THAT SORT OF SECOND PART IN

14   CAREMARK, THE EXCEPTION TO THE DIFFICULTY IN PROVING THESE

15   CASES, AND THAT IS THERE IS INADEQUATE INTERNAL CONTROLS.  I

16   DON'T READ YOUR COMPLAINT AS SAYING THAT.

17        **MR. MOLUMPHY:**  WE DON'T DO THAT.  BUT WE DO CITE THE

18   CASE FOR SAYING SIMPLY THAT THE DURATION AND THE MAGNITUDE OF

19   THE ALLEGED FRAUD IS SOMETHING THAT THE COURT SHOULD CONSIDER.

20   IN OUR VIEW, IT'S EVEN MORE IMPORTANT IN A CASE SUCH AS THIS.  I

21   MEAN, WE DIDN'T MAKE UP THE EXTENT OF --

22        **THE COURT:**  WELL --

23        **MR. MOLUMPHY:**  -- THIS FRAUD.

24        **THE COURT:**  -- ENOUGH IN AND OF ITSELF.

25        **MR. MOLUMPHY:**  NO, IT'S NOT.  I THINK AT SOME POINT

1   WE HAVE TO COME TO YOU AND SHOW WHY IT WAS THAT THE BOARD AND

2   THE EXECUTIVE OFFICERS KNEW WHAT WAS GOING ON.  AND WE THINK

3   THAT'S PART AND PARCEL OF THE SAME ANALYSIS.

4              MR. ETH SAID:

5                   "WELL, IT'S JUST ONE CONTRACT.  IT'S JUST $1

6              BILLION."

7              WELL, THE GOVERNMENT CONTRACT THAT ORACLE ENTERED

8   INTO IN 1998 WAS THE LARGEST CONTRACT AT ORACLE, THE LARGEST.

9              IT WAS ALSO THE MOST IMPORTANT. WHY?  UNDER THE

10  CONTRACT, IF THEY WERE GOING TO CHARGE ANY OTHER NONGOVERNMENT

11  CUSTOMER A CERTAIN PRICE, A COMMERCIAL CUSTOMER, THEY HAD TO

12  PASS ALONG THAT SAME DISCOUNT ON THAT PRICE TO THE GOVERNMENT.

13             SO IT REQUIRED EVERY SINGLE OTHER ONE OF THESE $89

14  BILLION WORTH OF CONTRACTS TO BE CONSIDERED FOR PURPOSES OF THE

15  GOVERNMENT CONTRACT. THAT'S WHY IT'S SO IMPORTANT. AND THAT'S

16  WHY IT'S ALLEGED IN OUR COMPLAINT WITHIN A YEAR AFTER THEY

17  SIGNED THIS CONTRACT THEY BROUGHT THE INTERNAL CONTROL PROCESS

18  FOR MONITORING SALES, AND SPECIFICALLY DISCOUNTS ENTERED BY

19  SALES FORCE, INSIDE, INTERNALLY TO THE OFFICE OF THE CEO.

20             IT WASN'T THERE BEFORE. AND THAT'S ATTESTED TO BY THE

21  WHISTLEBLOWER AND ALSO IN THE GOVERNMENT COMPLAINT FILED IN

22  VIRGINIA.  IT'S NOT SOMETHING THAT WE'RE JUST MAKING UP OUT OF

23  WHOLE CLOTH.

24             **THE COURT:**  WHAT TIES THE OUTSIDE DIRECTORS TO THAT?

25             **MR. MOLUMPHY:**  THE DIRECTORS, FIRST OF ALL IN OUR

1    CHART, WHAT WE TRIED TO DO ON THE LAST PAGE OF THE CHART IS TO

2    IDENTIFY THE LENGTH OF THEIR TENURE ON THE BOARD -- THIS IS NOT

3    A TRANSITORY BOARD BY ANY MEANS -- WITH THE ALLEGATIONS IN OUR

4    COMPLAINT.

5              AND WHAT WE'VE TRIED TO ESTABLISH OR SHOW GRAPHICALLY

6    WAS THESE DIRECTORS, A MAJORITY OF THE DIRECTORS WERE ON THE

7    BOARD FOR A LONG TIME AT ORACLE, A LONG, LONG TIME, AND

8    CERTAINLY DURING MOST OF THE EVENTS IN QUESTION, IF NOT ALL OF

9    THEM.

10             THREE OF THE DIRECTORS WERE ON THE AUDIT AND FINANCE

11   COMMITTEE. NOT JUST FOR A YEAR OR TWO, THEY WERE ON THE FINANCE

12   AND AUDIT COMMITTEE DURING THE ENTIRE PERIOD, THE ENTIRE PERIOD.

13             PART OF THE DUTIES OF THE AUDIT COMMITTEE WAS TO MEET

14   WITH GENERAL COUNSEL AND DISCUSS COMPLIANCE WITH THE REGULATORY

15   FRAMEWORKS AND CONTRACTS.

16             ORACLE'S CODE OF GOVERNANCE EACH DIRECTOR WAS

17   REQUIRED TO SIGN OFF ON REQUIRED THE DIRECTORS TO MONITOR

18   COMPLIANCE WITH GOVERNMENT CONTRACTS.

19             JUST AS IN ABBOTT -- NOW, MR. ETH -- I'M FINE

20   SUBMITTING THIS CASE ON THE ABBOTT CASE, YOUR HONOR.

21             JUST AS IN ABBOTT, THE COURT FOUND THAT BECAUSE AUDIT

22   COMMITTEE MEMBERS PURSUANT TO THEIR CHARTER OF THE AUDIT

23   COMMITTEE WERE RESPONSIBLE FOR DISCUSSING FINANCE AND AUDIT

24   MATTERS WITH OUTSIDE ADVISORS.  THEY WERE DEEMED, THE INFERENCE

25   WAS DRAWN BASED UPON THE ALLEGATION THAT THEY KNEW. NOT BASED

```
 1    UPON LETTERS THAT MR. ETH SAYS WAS SENT TO THE DIRECTORS.

 2              IF YOU READ ABBOTT, ACTUALLY THE FOUR LETTERS THAT

 3    CAME FROM THE FDA WENT TO THE CEO WHO HAPPENED TO BE THE

 4    CHAIRMAN OF THE BOARD.  THEY WERE NOT SENT TO THE FULL BOARD.

 5              THE REASON THE DEMAND FUTILITY PASSED IN ABBOTT WAS

 6    BECAUSE THE COURT FOUND THAT THE AUDIT COMMITTEE MEMBERS WERE

 7    DEEMED TO HAVE THAT INFORMATION. THE INFERENCE WAS DRAWN BECAUSE

 8    THAT'S WHAT THE CHARTER REQUIRED THEM TO HAVE KNOWLEDGE OF.

 9              VERY IMPORTANT DISTINCTION.

10         THE COURT:  ISN'T MR. ETH'S POINT HERE, WHEN WE'RE

11    LOOKING AT YOUR CHRONOLOGY, IS A LOT OF NEFARIOUS THINGS ARE

12    HAPPENING OUT THERE IN THE WORLD, IT LOOKS LIKE?  BUT DOESN'T

13    THIS BOIL DOWN TO THE NOTION THAT YOUR POSITION IS DEPENDENT ON

14    THE IDEA THAT ALL OF THESE THINGS THAT ARE HAPPENING WHILE THE

15    OUTSIDE DIRECTORS ARE SERVING ON THE BOARD EFFECTIVELY PUTS THEM

16    ON SOME KIND OF INQUIRY NOTICE.  THAT THEY HAVE TO --

17         MR. MOLUMPHY:  WELL --

18         THE COURT:  AND IF THEY FAIL TO DO SO, YOU HAVE THEN

19    ESTABLISHED THAT THEY ARE TAINTED FOR PURPOSES OF DEMAND

20    FUTILITY.  AND IS THAT WHAT THE LAW SAYS?

21         MR. MOLUMPHY:  WELL --

22         THE COURT:  DOESN'T THE LAW SAY THERE'S SOMETHING

23    MORE THAN THAT?  THERE HAS TO BE AN ACTUAL INDICATION.  THERE

24    HAS TO BE SOME FACTS AVERRED THAT SHOW NOT JUST THAT THEY SHOULD

25    HAVE ASKED SOME QUESTIONS, BUT THAT THEY HAD KNOWLEDGE.
```

1          AND ALL THEY HAVE KNOWLEDGE OF IN YOUR CHRONOLOGY IS

2     THEY ARE LIVING THROUGH A PERIOD OF TIME WHEN A LOT OF THINGS

3     ARE HAPPENING OUT THERE THAT A VERY DILIGENT DIRECTOR MIGHT SAY:

4               "HEY, BY THE WAY, ARE WE -- YOU KNOW, I'VE READ

5               THIS IN THE NEWSPAPER ABOUT ANOTHER COMPANY.  AND

6               WHAT ARE WE DOING ABOUT THAT TO MAKE SURE THAT WE'RE

7               NOT FALLING AFOUL OF THIS?"

8          AND IS THAT WHAT THE LAW OF DEMAND FUTILITY REQUIRES?

9          **MR. MOLUMPHY:**  NO, THE LAW DOESN'T REQUIRE JUST THAT.

10    AND, MORE IMPORTANTLY, I DO NOT CHARACTERIZE OUR COMPLAINT AS

11    MERELY ALLEGING THAT.  I THINK WE GO FAR, FAR BEYOND THAT.

12         LET ME GIVE YOU SOME RED FLAGS THAT ARE IN OUR

13    COMPLAINT THAT WE BELIEVE ARE RELEVANT.

14         THE FACT THAT THIS IS A GOVERNMENT CONTRACT, THE

15    LARGEST CUSTOMER AT ORACLE.  UNDER THE CONTRACT AND UNDER THE

16    MAS RULES, THEY ARE CONTRACTUALLY REQUIRED TO MONITOR THEIR

17    SALES TO MAKE SURE THAT THEY ARE COMPLYING WITH THIS PRICE

18    REDUCTION CLAUSE.  THAT'S A STARTING POINT.

19         **THE COURT:**  WELL, LET ME STOP YOU THERE.  IF A BOARD

20    MEMBER DOESN'T ACT IN CONFORMITY WITH THE REQUIREMENTS THAT --

21    LET'S TAKE A LAZY BOARD MEMBER.  LET'S JUST ASSUME A VERY LAZY

22    BOARD MEMBER. FOR DEMAND FUTILITY PURPOSES, IS THAT ENOUGH?  IS

23    THAT ENOUGH TO ESSENTIALLY SAY:

24              "THIS PERSON IS EFFECTIVELY" -- I'LL USE THE

25    WORD "TAINT."  AND YOU KNOW WHAT I MEAN BY THAT:  A DIRECTOR WHO

1    IS NOT DISINTERESTED AND INDEPENDENT.

2              CAN THE REASON FOR THAT BE THEY ARE SO LAZY WE CAN

3    ASSUME THEY ARE DISINTERESTED OR THEY ARE NOT DISINTERESTED AND

4    THEY ARE NOT INDEPENDENT?

5              **MR. MOLUMPHY:**  I THINK A SHORT ANSWER IS AT SOME

6    POINT: YES, ABSOLUTELY.  IF AT SOME POINT THEY ABDICATE THEIR

7    FIDUCIARY DUTIES TO THE CORPORATION OR ARE RECKLESS --

8              **THE COURT:**  WHAT'S THE CASE AUTHORITY THAT SAYS:

9                   "OKAY, THIS DIRECTOR DIDN'T -- WE'RE NOT SAYING

10              THIS DIRECTOR HAD KNOWLEDGE."

11             IN FACT, THE DIRECTOR WAS TOO LAZY TO HAVE KNOWLEDGE.

12             HE OR SHE WAS PAYING NO ATTENTION. YOU'RE SAYING

13   THAT'S TANTAMOUNT TO A DIRECTOR THAT CANNOT THEN ASSUME THEIR

14   DUTY WHEN A DEMAND IS MADE TO THEM AS TO WHETHER OR NOT TO

15   ASSUME A CASE TO TAKE ON THE CORPORATION'S BEHALF. AND I'M NOT

16   SURE ONE EQUATES TO THE OTHER.

17             **MR. MOLUMPHY:**  YES, IF -- THAT RULE WOULD BE THE

18   CAREMARK CASE. YOU BASICALLY CAN'T CLOSE YOUR EYES AND PUT YOUR

19   HEAD IN THE SAND.  YOU HAVE TO PUT IN PLACE A SYSTEM OF CONTROLS

20   AND PROCESSES SO YOU KNOW WHAT IS GOING ON AT THE COMPANY.

21             **THE COURT:**  THAT IS WHERE I'M ALSO HAVING TROUBLE

22   WITH YOUR ARGUMENTS, BECAUSE I DON'T SEE YOU SAYING THERE ARE

23   INADEQUATE CONTROLS AND SYSTEMS IN THIS CASE.

24             **MR. MOLUMPHY:**  WE'RE NOT.  LET ME BE CLEAR.  THAT'S

25   NOT OUR CASE.

1          **THE COURT:**  SO THAT'S NOT THE PROBLEM WE HAVE IN THIS

2    CASE.

3          **MR. MOLUMPHY:**  CORRECT.

4          **THE COURT:**  SO WE THEN GO BACK, DON'T WE, TO -- IT'S

5    A STRUCTURE THAT YOU DON'T HAVE A PARTICULAR PROBLEM WITH.  SO

6    IN THAT INSTANCE DON'T YOU HAVE TO SHOW THAT THE DIRECTORS

7    KNEW --

8          **MR. MOLUMPHY:**  YES.

9          **THE COURT:**  -- THAT THERE WAS A PROBLEM?

10         **MR. MOLUMPHY:**  YES.  BUT WE DON'T NEED AN ADMISSION

11   FROM A DIRECTOR.  WE DON'T NEED TO TAKE A DEPOSITION IN ANOTHER

12   CASE WHERE HE SAID:

13              "I KNEW THAT THAT WAS GOING ON, AND I LET IT GO

14         ON, ANYWAY."

15         THAT'S NOT WHAT THE LAW REQUIRES.

16         **THE COURT:**  DON'T YOU NEED SOMETHING, FOR EXAMPLE,

17   MATERIALS GOING TO THE BOARD THAT SAY SOMETHING THAT PUTS THEM

18   ON NOTICE THAT THIS IS GOING ON?

19         **MR. MOLUMPHY:**  WE BELIEVE WE HAVE ALLEGED THAT.

20         **THE COURT:**  WHERE?

21         **MR. MOLUMPHY:**  CONSISTENT WITH ABBOTT.  JUST LIKE IN

22   ABBOTT WHERE THE COURT INFERRED FROM THE TYPES OF INFORMATION

23   THAT WAS SUBMITTED TO THE COMPANY, TO THE CEO, THE COURT

24   INFERRED BASED UPON THE DUTIES OF AN AUDIT COMMITTEE MEMBER, FOR

25   EXAMPLE, THE DUTIES OF A CODE OF CONDUCT, THAT IS SUFFICIENT TO

1    INFER THAT THAT DIRECTOR KNEW.

2             **THE COURT:**  DOES AN AUDIT COMMITTEE HAVE THE

3    RESPONSIBILITY TO REVIEW ALL MATERIALS GOING TO THE OFFICE OF

4    THE CHIEF EXECUTIVE OFFICER?

5             **MR. MOLUMPHY:**  NO, NOT NECESSARILY.

6             **THE COURT:**  OKAY.  WELL, THEN, WHY SHOULD WE INFER

7    THAT SIMPLY BECAUSE SOMETHING GOES TO THE CEO, WHO AS THE INSIDE

8    DIRECTOR MAY WELL BE -- YOU KNOW, YOU MAY HAVE AN ARGUMENT THERE

9    WITH RESPECT TO THAT INDIVIDUAL.  BUT WHY DO THE MEMBERS OF THE

10   AUDIT COMMITTEE, WHO I THINK BY DEFINITION ARE OUTSIDERS, WHY

11   WOULD THEY NECESSARILY BE CHARGED WITH THAT INFORMATION?

12            **MR. MOLUMPHY:**  THEY ARE CHARGED WITH THE DUTY -- THEY

13   ARE CHARGED WITH THE DUTIES THEY UNDERTAKE UNDER THEIR CHARTER.

14            **THE COURT:**  YES.

15            **MR. MOLUMPHY:**  CORRECT?  AND IF THEY VOLUNTARILY

16   AGREED TO UNDERTAKE THOSE DUTIES UNDER THE CHARTER, THEY ARE

17   DUTY BOUND TO COMPLY WITH THOSE.

18            UNDER ORACLE'S AUDIT COMMITTEE CHARTER THEY ARE

19   RESPONSIBLE FOR COMMUNICATING WITH OUTSIDE COUNSEL AND

20   MONITORING COMPLIANCE WITH GOVERNMENT CONTRACTS.

21            UNDER THE CODE OF BUSINESS ETHICS -- EXCUSE ME --

22   UNDER THE CODE OF BUSINESS CONDUCT AND ETHICS, WHICH WE'VE CITED

23   IN OUR COMPLAINT, THEY SPECIFICALLY CALLED OUT:

24                 "MONITOR COMPLIANCE WITH GOVERNMENTAL

25                 CONTRACTS."

```
1                 AND WHAT I'M TRYING TO SAY IS IN THIS CASE, YOU KNOW,

2    WE'RE NOT JUST COMING OUT WITH SOMETHING OUT OF THE BLUE. THE

3    U.S. GOVERNMENT FOLLOWING A WHITSLEBLOWER COMPLAINT IN THIS

4    CASE, DID A THREE-YEAR INVESTIGATION, SENT THEIR OWN SUBPOENA --

5    AND THAT'S THE SECOND PAGE, JUST AN EXAMPLE FROM THEIR

6    COMPLAINT -- AND DETERMINED THAT THIS WAS A SYSTEMIC FRAUD.

7                 99 PERCENT OF THE NONGOVERNMENT CONTRACTS, FOR

8    EXAMPLE, FOR A MILLION AND ABOVE VIOLATED THE DISCOUNT POLICIES.

9    99 PERCENT.

10                WELL, HOW DO YOU GET TO ALMOST A HUNDRED PERCENT OF

11   THE CONTRACTS VIOLATING THE POLICY?

12          THE COURT:  THESE ARE THE CLAIMS IN THE FRASCELLA

13   LAWSUIT.

14          MR. MOLUMPHY:  THESE ARE THE CLAIMS BY THE GOVERNMENT

15   IN THE GOVERNMENT'S FIRST-AMENDED COMPLAINT FILED A MONTH OR SO

16   AGO.

17          THE COURT:  WHEN THEY ENTERED THE KETON (PHONETIC)

18   CASE.

19          MR. MOLUMPHY:  CORRECT.  AND AFTER THEY HAVE DONE A

20   THREE-YEAR INVESTIGATION, INCLUDING AN ANALYSIS OF ALL OF

21   ORACLE'S TRADE DATA.  NOW, I DON'T HAVE THAT DATA.  BUT, YOU

22   KNOW, I HAVE A LOT OF RESPECT FOR THE U.S. ATTORNEY'S OFFICE.

23   AND USUALLY WHEN THEY SAY SOMETHING LIKE THAT THEY HAVE SOME

24   SUPPORT TO BACK THAT UP.

25                AND IF, IN FACT, THEY ARE RIGHT, IF, IN FACT, THE
```

1   MAGISTRATE JUDGE WHO LOOKED AT THE UNDERLYING DOCUMENTS AND THE

2   CORRESPONDENCE WITH REED SMITH, ORACLE'S OUTSIDE COUNSEL, HE

3   DECIDED THAT THERE WAS A PRIMA FACIE CASE OF A FRAUD HERE.

4          **THE COURT:**  YES, I DID READ THAT. YOU ARE

5   BOOTSTRAPPING AN AWFUL LOT FROM A DETERMINATION BY THE

6   MAGISTRATE JUDGE IN THE EASTERN DISTRICTS OF VIRGINIA THAT THE

7   CRIME FRAUD EXCEPTION HAS BEEN TRIGGERED. YOU'RE SORT OF MAKING

8   THAT INTO SOME SORT OF DETERMINATION THAT THERE WAS FRAUDULENT

9   CONDUCT.

10          I, HAVING DECIDED A LOT OF CRIME FRAUD ISSUES, DON'T

11  THINK THAT IT GOES THAT FAR.

12          **MR. MOLUMPHY:**  WELL, I THINK IT'S AN EXTRAORDINARY

13  FINDING MYSELF, SOMETHING THAT JUST CAME DOWN. WE DON'T

14  OBVIOUSLY HAVE THE UNDERLYING E-MAILS WITH REED SMITH.  BUT

15  HERE'S WHY IT'S IMPORTANT.  AND THIS IS IN MY CHRONOLOGY.

16          2003 COMES ALONG.  AND THIS IS RIGHT WHEN ORACLE IS

17  RENEWING ITS GOVERNMENT SERVICES CONTRACT. WE KNOW FROM THE

18  WHITSLEBLOWER COMPLAINT AND ALSO FROM THE GOVERNMENT COMPLAINT

19  THAT THIS IS THE TIME IN WHICH SALES STAFF ARE RAISING

20  QUESTIONS:

21              "IS WHAT WE'RE DOING COMPLIANT WITH THE

22              GOVERNMENT SERVICES CONTRACT?"

23          ACCORDING TO MR. FRASCELLA, HE'S INSTRUCTED BY

24  EXECUTIVES AT ORACLE:

25              "DON'T SAY ANYTHING. DON'T PUT ANYTHING IN

1        WRITING.  WHITE OUT SALES CONTRACTS SO THE GOVERNMENT

2        DOESN'T SEE THIS."

3            AT THE SAME TIME, AT THE SAME TIME, YOUR HONOR, THEY

4    RETAIN REED SMITH.

5            NOW, THIS IS A BIG CORPORATION.

6        **THE COURT:**  LET ME JUST STOP YOU FOR A MOMENT. WHAT I

7    DON'T WANT TO LOSE SIGHT HERE OF WHEN WE ARE DISCUSSING THIS IS,

8    THIS ISN'T A QUESTION OF WHETHER OR NOT -- I'M NOT HEARING A

9    MOTION IN THE FRASCELLA CASE.

10           WHAT I'M HEARING IS WHETHER OR NOT IT IS FUTILE TO

11   MAKE A DEMAND ON THIS BOARD --

12       **MR. MOLUMPHY:**  CORRECT.

13       **THE COURT:**  -- FOR ITS DETERMINATION ON WHETHER OR

14   NOT ON BEHALF OF THE COMPANY A CASE SHOULD BE BROUGHT.

15           SO IT'S NOT WHETHER OR NOT SKULLDUGGERY OCCURRED IN

16   THE CONTEXT OF THE FRASCELLA LAWSUIT. IT'S:  DO YOU HAVE A BASIS

17   FOR ME TO CONCLUDE THAT THERE'S NO CONFIDENCE THAT AN

18   INDEPENDENT, DISINTERESTED GROUP OF INDIVIDUALS WHO ARE ON THE

19   BOARD OF ORACLE, ARE THEY OR ARE THEY NOT DISINTERESTED AND

20   INDEPENDENT SUCH THAT THEY CAN MAKE A DETERMINATION ON WHETHER

21   OR NOT, YOU KNOW, THEY SHOULD PURSUE THE ACTION?

22           SO IT'S NOT, YOU KNOW -- A LOT OF THE ARGUMENT IS ALL

23   THE TERRIBLE THINGS THAT WENT ON.  AND PERHAPS YOU ARE RIGHT AND

24   AT THE END OF THE DAY I DON'T KNOW WHAT IS GOING TO HAPPEN IN

25   THE FRACELLA LAWSUIT.

1          BUT IT DOESN'T ANSWER THE QUESTION OF WHETHER OR NOT

2     THIS BOARD IS IN A POSITION TO MAKE A CALL ON THIS ISSUE.

3          **MR. MOLUMPHY:**  MAY I TRY TO DRAW THAT LINK?

4          **THE COURT:**  YES, INDEED.

5          **MR. MOLUMPHY:**  AND I APOLOGIZE THAT WE HAVE A LOT OF

6     STUFF, BUT WE HAVE A LOT OF STUFF TO POINT THE COURT TO.  BUT

7     THE REASON IT'S IMPORTANT IS THE COURT STARTED ITS INQUIRY WITH:

8     WHAT DO WE HAVE TO ESTABLISH THAT THE DIRECTORS, THE OUTSIDE

9     DIRECTORS, KNEW WHAT WAS GOING ON; THAT THERE WAS THIS SO-CALLED

10    SYSTEMIC FRAUD, AS THE MAGISTRATE JUDGE HELD IN FRASCELLA?

11         WELL, WHY ISN'T IT A RELEVANT FACT --

12         **THE COURT:**  THE MAGISTRATE JUDGE HELD THAT THERE WAS

13    PRIMA FACIE EVIDENCE SUFFICIENT TO TRIGGER THE CRIME FRAUD

14    SECTION.

15         **MR. MOLUMPHY:**  WELL --

16         **THE COURT:**  THE MAGISTRATE JUDGE DID NOT FIND -- IT

17    IS NOT A DETERMINATION ON THE MERITS. THAT'S A DISCOVERY MOTION.

18    THAT IS NOT A MOTION THAT IS MAKING A FINDING OF -- IT'S NOT

19    TANTAMOUNT TO A DETERMINATION THAT, YOU KNOW, THE FRASCELLA

20    PLAINTIFFS WIN.

21         **MR. MOLUMPHY:**  AGREED.

22         **THE COURT:**  I'M JUST -- YOU KNOW, DON'T OVERARGUE THE

23    MAGISTRATE JUDGE'S VERY SPECIFIC DETERMINATION ON DISCOVERY

24    QUESTIONS AS TO WHAT IS GOING TO BE AVAILABLE TO BE DISCLOSED.

25         **MR. MOLUMPHY:**  FAIR ENOUGH, YOUR HONOR.  I GUESS MY

1    POINT WOULD BE IF IN 2003 A COMPANY LIKE ORACLE RETAINS OUTSIDE

2    COUNSEL, REED SMITH, AND ACCORDING TO THE UNDERLYING FRASCELLA

3    ALLEGATIONS THERE ARE HUNDREDS OF E-MAILS BACK AND FORTH WITHIN

4    A YEAR PERIOD OF THEIR RENEGOTIATION F THIS CONTRACT.  THERE

5    THEN IS A WRITTEN POLICY SAYING:

6                    "DIVERT ALL LARGE CONTRACTS TO RESELLERS SO THAT

7              WE CAN AVOID THE GSA REPORTING REQUIREMENTS."

8              WHEREAS, REED SMITH OVER A PERIOD OF SIX YEARS, SIX

9    YEARS, ACCORDING TO REED SMITH'S ANALYSIS THEY ARE ON SITE AT

10   ORACLE TALKING WITH A SUBSTANTIAL TEAM OF ORACLE LEGAL, FINANCE,

11   CONTRACTS, INFORMATION TECHNOLOGY AND INTERNAL AUDIT PERSONNEL.

12             TO ME, THAT IS A PIECE OF INFORMATION THAT THE COURT

13   SHOULD CONSIDER IN DETERMINING WHETHER OR NOT AN OUTSIDE

14   DIRECTOR KNEW WHAT WAS GOING ON.  BECAUSE IF REED SMITH, AND

15   THEN KPMG AND ERNST & YOUNG ARE BEING HIRED TO LITERALLY REVIEW

16   ALL 1,700,000 CONTRACTS FOR THAT FIVE-YEAR PERIOD, AND THEY ARE

17   DISCLOSING THAT TO THE JUDGE IN VIRGINIA AS IN ANTICIPATION OF

18   LITIGATION, WELL, THAT TO ME IS A BIG RED FLAG.

19             TYPICALLY, WHEN YOU HIRE REED SMITH AND YOU HIRE

20   OUTSIDE ACCOUNTANTS TO LOOK AT EVERY SINGLE ONE OF YOUR

21   CONTRACTS IT'S BECAUSE THERE'S SOMETHING WRONG.  THERE'S

22   SOMETHING AMISS.  WHY WOULDN'T THAT REASONABLE INFERENCE BE THAT

23   THE BOARD WAS TOLD ABOUT THAT?

24             CERTAINLY, UNDER THE AUDIT COMMITTEE'S CHARTER THEY

25   SHOULD HAVE KNOWN --

1          **THE COURT:**  I CERTAINLY HOPE A COMPANY'S HIRING

2     OUTSIDE COUNSEL IS NOT -- ONE CAN INFER FROM THAT BASIC FACT

3     THAT THE COMPANY HAS DONE SOMETHING ILLEGAL.

4          I MEAN, IT'S JUST AS LIKELY, JUST AS FAIR AN

5     INFERENCE THAT THE COMPANY IS ATTEMPTING TO FIND OUT WHAT THE

6     CIRCUMSTANCES ARE AND TO HIRE OUTSIDE ACCOUNTANTS AND LAW FIRMS

7     TO COME INTO PLAY.  I MEAN, YOU'RE NOT HONESTLY SUGGESTING THAT

8     HIRING AN OUTSIDE LAWYER IS AN INFERENCE THAT THE COMPANY HAS

9     DONE SOMETHING WRONG.

10         **MR. MOLUMPHY:**  NO, BUT IT'S AN INFERENCE THAT THE

11    BOARD KNOWS WHAT IS GOING ON, KNOWS THERE'S AN ISSUE, KNOWS

12    THERE'S A RED FLAG.

13         I MEAN, HAVING SEEN BOARD MINUTES, HAVING SEEN AUDIT

14    COMMITTEE MINUTES, WHEN YOU HIRE AN OUTSIDE COUNSEL AND THEY

15    PERFORM A SIX-YEAR ANALYSIS?  AND WE NOW HAVE THE REPORT,

16    120-PAGE REPORT. YOU KNOW THE DIRECTORS GOT THIS REPORT, YOUR

17    HONOR.

18         **THE COURT:**  I AM NOT WITH YOU ON THE NOTION THAT IF

19    YOU ARE A DIRECTOR IN THE COMPANY THAT THE HIRING OF OUTSIDE

20    COUNSEL TRIGGERS YOUR KNOWLEDGE THAT THERE'S A PROBLEM WITHIN

21    THE COMPANY, OR HIRING KPMG, OR WHOEVER ELSE, MEANS YOU, MR. AND

22    MS. DIRECTOR, YOU NOW KNOW THERE'S A PROBLEM IN THE COMPANY.

23         I DON'T THINK YOU CAN MAKE THAT INFERENCE.

24         **MR. MOLUMPHY:**  BY ITSELF MAYBE.

25         **THE COURT:**  AND, YOU KNOW, AGAIN, THE IDEA, THE FOCUS

1   IS THE LEVEL OF KNOWLEDGE THAT A DIRECTOR HAS SUCH THAT THAT

2   DIRECTOR IS NO LONGER A DIRECTOR THAT CAN ACT WITH INDEPENDENCE

3   AND APPROPRIATE DISINTEREST. THAT'S THE FOCUS.

4                AND YOU NEED SOMETHING SPECIFIC TO SAY THAT DIRECTOR

5   X IS REMOVED FROM THE ROLE OF INDEPENDENT DIRECTOR. AND THAT'S

6   WHAT I'M LOOKING FOR. AND I'M SEEING LOTS OF SMOKE, BUT I DON'T

7   SEE ANY FIRE HERE.

8                **MR. MOLUMPHY:**  WELL, WE SUBMIT THERE'S LOTS AND LOTS

9   AND LOTS OF SMOKE.  IT'S NOT YOUR ORDINARY CASE, BY ANY MEANS.

10  BUT WE BELIEVE THE STANDARD IS:  IS THERE A REASON TO DOUBT

11  THEIR INDEPENDENCE?

12               **THE COURT:**  THE INDEPENDENCE OF THESE DIRECTORS.

13               **MR. MOLUMPHY:**  NOT WHETHER WE CAN PROVE THEIR LACK OF

14  INDEPENDENCE.  THAT'S NOT THE STANDARD UNDER DELAWARE LAW.

15  WHETHER THE FACTS INTERPRETED IN OUR FAVOR, THE INFERENCES IN

16  OUR FAVOR CAUSE A REASON TO DOUBT.

17               AND WE SUBMIT WHEN YOU HAVE THE LARGEST CONTRACT AT

18  ORACLE, YOU HAVE WHISTLEBLOWERS SUPPOSEDLY BEING TOLD NOT TO PUT

19  ANYTHING IN WRITING, WHEN YOU HAVE RETAINING OUTSIDE COUNSEL TO

20  PERFORM A REVIEW OF EVERY SINGLE CONTRACT FOR COMPLIANCE WITH

21  THE PRICE REDUCTION CLAUSE, WHEN YOU HAVE A FEDERAL MAGISTRATE

22  JUDGE CONCLUDING A PRIMA FACIE CASE BASED UPON THE INFORMATION

23  THAT THIS IS BASICALLY A WHITEWASH -- THAT'S WHAT THE JUDGE SAID

24  IN THAT ORDER.

25               **THE COURT:**  I JUST -- WE BEG TO DIFFER ON THE IMPACT

1    OF THAT PARTICULAR ORDER.

2            **MR. MOLUMPHY:**  OKAY.  BUT, AGAIN, THAT'S JUST ONE.

3    YOU ALSO HAVE THE WHISTLEBLOWER COMPLAINT IN A VERY RELATED CASE

4    ON THIS EXACT SAME CONTRACT. THAT'S THE ORACLE UNIVERSITY CASE,

5    SAME TIME PERIOD, TWO THOUSAND AND  --

6            **THE COURT:**  BUT YOU SEEM LIKE -- AND I'M NOT

7    EXPECTING YOU TO AGREE WITH IT.  BUT YOU ARE ENTITLED TO KNOW

8    WHAT IS TROUBLING ME. NONE OF THIS IS IN MY MIND CONNECTING UP

9    TO THE LEVEL OF KNOWLEDGE OF PARTICULAR DIRECTORS.

10           IT'S SAYING THAT ORACLE IS ENGAGED IN A LOT OF

11   QUESTIONABLE CONDUCT THAT YOU THINK AMOUNTS TO A VERY VAST

12   SCHEME. BUT WHAT YOU'RE NOT DOING IS CONNECTING THAT UP TO THE

13   ROLE OF THESE DIRECTORS, PARTICULARLY THE OUTSIDE DIRECTORS, AS

14   TO WHY ALL OF THIS MEANS THAT THEY ARE NOT IN A POSITION TO

15   EXERCISE THEIR RESPONSIBILITY AS DIRECTORS OF THIS COMPANY,

16   SHOULD THEY RECEIVE A DEMAND TO ENTER INTO THE FRAY AND BRING A

17   CASE ON BEHALF OF THEIR -- OF THE COMPANY IN WHICH THEY HAVE

18   THESE FIDUCIARY OBLIGATIONS.

19           AND IF YOU ARE RIGHT THAT YOU JUST ESTABLISH THAT

20   THERE IS A SIGNIFICANT, MASSIVE FRAUD GOING ON, THEN RULE 23.1

21   NEVER COMES INTO PLAY BECAUSE THEN YOU NEVER HAVE THE QUESTION

22   OF DEMAND FUTILITY.  IT'S JUST ALREADY BY DEFINITION ANSWERED,

23   BECAUSE YOU'VE MAPPED OUT A MASSIVE FRAUD.  AND A MASSIVE FRAUD

24   OCCURRING WHILE THIS COLLECTION OF DIRECTORS IS IN PLACE MEANS

25   THEY CAN'T BE DISINTERESTED.

1        AND THAT'S KIND OF HOW I HEAR YOUR ARGUMENT.

2        **MR. MOLUMPHY:**  THAT'S NOT MY ARGUMENT.

3        **THE COURT:**  OKAY.  WELL --

4        **MR. MOLUMPHY:**  IT'S MY FAULT FOR GIVING YOU THAT

5    IMPRESSION.

6        **THE COURT:**  NO, IT'S NOT.  AND I ALWAYS APPRECIATE

7    LAWYERS SAY THAT.  AND WHEN I WAS A LAWYER, I SAID THAT.

8        BUT FROM YOUR PERSPECTIVE YOU'RE SAYING HE'S NOT

9    GETTING IT. AND THAT'S FAIR. AND I'M GIVING YOU A CHANCE TO TELL

10   ME WHY I'M REALLY NOT GETTING IT.

11       **MR. MOLUMPHY:**  OUR ARGUMENT IS NOT THIS WAS SUCH A

12   LARGE FRAUD THAT THEY MUST HAVE KNOWN.  THAT'S NOT OUR ARGUMENT.

13   OR THAT WE CAN DISPENSE WITH DEMAND FUTILITY BECAUSE THIS IS

14   SUCH A LARGE FRAUD, AND THE GOVERNMENT IS GOING TO SETTLE FOR A

15   BILLION DOLLARS WITH ORACLE TOMORROW.  I CAN'T SAY THAT.  AND

16   THAT'S NOT THE BASIS OF THE CASE.  BUT I DON'T THINK THAT'S WHAT

17   THE LAW REQUIRES.

18       WHAT I AM SAYING IS THAT BASED UPON THE FIDUCIARY

19   DUTIES, BASED UPON THE ORACLE CHARTER, BASED UPON THE AUDIT

20   COMMITTEE'S CHARTER, BASED UPON ORACLE'S CODE OF BUSINESS

21   CONDUCT AND ETHICS, THE OUTSIDE DIRECTORS, THE THREE OUTSIDE

22   DIRECTORS THAT SAT ON THE AUDIT COMMITTEE DURING THIS ENTIRE

23   PERIOD KNEW WHAT WAS GOING ON, JUST AS IN ABBOTT, BECAUSE THAT

24   WAS THEIR DUTY TO KNOW.

25       THE INFERENCE CAN BE DRAWN BASED UPON THE SHEAR

1   TIMING AND MAGNITUDE OF WHAT WAS GOING ON, THE INVOLVEMENT OF

2   OUTSIDE COUNSEL, THE FACT THAT A WHITSLEBLOWER COMPLAINT WAS

3   RAISING THESE ISSUES, THE FACT THAT THE GOVERNMENT FILED ITS OWN

4   COMPLAINT IN INTERVENTION AND STILL NOTHING WAS DONE.  ALL OF

5   THESE FACTS IN THEIR TOTALITY THE COURT, JUST AS IN ABBOTT, CAN

6   DRAW THAT THE AUDIT COMMITTEE MEMBERS KNEW.

7           THAT'S MY ARGUMENT.  NOT THAT THEY SHOULD HAVE KNOWN

8   JUST BECAUSE IT'S A LARGE FRAUD.  BUT BECAUSE OF THE SPECIFIC

9   RED FLAGS THAT WE'VE IDENTIFIED IN THE COMPLAINT.

10          **THE COURT:**  ALL RIGHT.  SO YOU'VE GOT THREE MEMBERS

11  OF THE AUDIT COMMITTEE, AND YOU'VE GOT HOW MANY INSIDERS,

12  THREE?

13          **MR. MOLUMPHY:**  FOUR.

14          **THE COURT:**  FOUR.  SO, I MEAN, I'M NOT EXPECTING YOU

15  TO CONCEDE AWAY THE OTHER OUTSIDE DIRECTORS.

16          **MR. MOLUMPHY:**  RIGHT.

17          **THE COURT:**  BUT THAT'S THE STRONGEST, IF YOU WILL --

18          **MR. MOLUMPHY:**  THAT'S CORRECT.

19          **THE COURT:**  -- ARGUMENT FOR YOU.

20          **MR. MOLUMPHY:**  YES.

21          **THE COURT:**  FOUR INSIDERS PLUS AUDIT COMMITTEE

22  MEMBERS.

23          **MR. MOLUMPHY:**  THAT'S CORRECT.  AND, BY THE WAY, WE

24  DID NOT SUE ALL THE DIRECTORS.  THAT'S NOT OUR PRACTICE TO DO

25  SO.

1          **THE COURT:**  RIGHT.  TWO YOU DID NOT.

2          **MR. MOLUMPHY:**  TWO RECENT ONES THAT FRANKLY WERE ON

3    THE BOARD FOR SUCH A SHORT TIME. BUT I DON'T KNOW IF THAT WAS AN

4    IMPLICATION.  I DON'T THINK HE MEANT THAT.  BUT THAT CERTAINLY

5    IS NOT IN OUR COMPLAINT.

6          WE DID IDENTIFY IN THOSE PEOPLE WHO WE BELIEVE HAVE

7    RESPONSIBILITY UNDER THE ABBOTT CASE.  AND THEY CAN'T SIMPLY SAY

8    THAT LACKING SOME DECLARATION OR LACKING SOME EVIDENCE OF A

9    REPORT HANDED TO AN AUDIT COMMITTEE MEMBER, YOU CAN'T PROCEED.

10   WE DON'T THINK THAT'S WHAT DELAWARE LAW REQUIRES.

11         AND, FRANKLY, AS INTERPRETED BY FEDERAL COURTS WITH

12   THE INFERENCES THAT'S NOT WHAT THE FEDERAL COURTS REQUIRE. AND

13   THAT'S CERTAINLY NOT THE CASE IN ABBOTT.

14         IF THE COURT WAS TO CONSIDER LEAVE, GRANTING A

15   MOTION, WE WOULD OBVIOUSLY REQUEST LEAVE TO AMEND.  AND MY

16   CO-COUNSEL IS PREPARED TO DISCUSS THE INDIVIDUAL CAUSES OF

17   ACTION, IF YOU WANT TO.

18         **THE COURT:**  WELL, WHY DON'T WE TOUCH ON THAT, AND

19   THEN I'LL GO BACK TO THE DEFENSE.  BUT WHILE WE'RE WITH THE

20   PLAINTIFFS, WHY DON'T YOU GO AHEAD AND ADDRESS THE 12 (B) (6)

21   ISSUES WITH RESPECT TO THE INDIVIDUALS?

22              **MR. MOLUMPHY:**  THANK YOU.

23         **MR. KELSON:**  THANK YOU, YOUR HONOR.

24   **THE COURT:**  THANK YOU.

25         **MR. KELSON:**  AND IF I MAY FOR A MOMENT LOOK AT THE

1    WORDS THE COURT USED:

2                    "I SEE A LOT OF SMOKE, BUT I DON'T SEE A FIRE."

3              AND IF I MAY MAKE AN ASSUMPTION OR TWO, IF THIS COURT

4    ON THE BENCH WERE TO NOTICE BY MR. ETH A LOT OF SMOKE, AND BY

5    THE LAW CLERKS, A LOT OF SMOKE, AND SAID:

6                    "THANK YOU. THAT'S ALL WE'RE GOING TO BE HEARING

7              TODAY" --

8         **THE COURT:**  THAT'S ENOUGH FOR A 12 (B) (6).

9         **MR. KELSON:**  WELL, WHAT IS IT IN CONSCIOUS DISREGARD

10   OF?  A LOT OF SMOKE.  AND WHAT SHOULD BE DONE IN THOSE

11   CIRCUMSTANCES?

12             SAME SITUATION IF A SAILOR OR TWO WERE TO CROSS THE

13   ATLANTIC AND KNEW THAT ICEBERGS IN THE NORTH ATLANTIC DURING THE

14   MONTH OF OCTOBER ARE A FREQUENT OCCURRENCE:

15                   "CAPTAIN, DON'T BOTHER WITH THE RADAR.  FULL

16             STEAM AHEAD."

17             THAT'S A CONSCIOUS DISREGARD OF SOMETHING. NOW, THE

18   DELAWARE COURTS HAVE ADDRESSED A CONSCIOUS DISREGARD OF

19   SOMETHING. AND THAT WAS IN THE CONTEXT OF THE WALT DISNEY CASE.

20             AND IN THAT CASE THAT I'M QUOTING FOR THE COURT NOW:

21                   "THE NEW ALLEGATIONS GIVE RISE TO A COGNIZABLE

22             QUESTION WHETHER THE DEFENDANT DIRECTORS OF THE

23             WALT DISNEY COMPANY SHOULD BE HELD PERSONALLY LIABLE

24             TO THE CORPORATION FOR A KNOWING OR INTENTIONAL LACK

25             OF DUE CARE IN THE DIRECTORS' DECISION-MAKING

```
1                   PROCESS."

2                   AND I THINK IF WE LOOK AT OUR SITUATION, WHICH

3    DOESN'T ARISE IN THE ABSTRACT, WHICH DOES NOT ARISE FROM AN

4    ISOLATED OCCURRENCE OF A SALESMAN IN ALEXANDRIA NOT TELLING THE

5    GOVERNMENT ABOUT A DISCOUNT HE GAVE, BUT A SYSTEMIC SITUATION AS

6    FOUND BY GSA, THAT PERMEATES FROM 1998 TO 2006, AT A MINIMUM.

7                   IN THAT SORT OF A SITUATION, IF THE DIRECTORS

8    IGNORING THE RED FLAGS -- AND THERE'S NO DIFFERENCE BETWEEN US

9    THAT RED FLAGS WERE OUT THERE.  THE DIFFERENCE BETWEEN US IS THE

10   DEFENSE IS SAYING:

11                   "WELL, THE RED FLAG DOES NOT CONSTITUTE

12                   KNOWLEDGE OF A DIRECTOR OF THIS PARTICULAR OFFENSE."

13                   WE'RE SAYING SOMETHING ELSE. WHAT WE'RE SAYING IS

14   THOSE RED FLAGS IN A LANDSCAPE, A TERRAIN OF SALES, A BILLION

15   DOLLARS WORTH OF SALES GIVE RISE TO A CONSCIOUS DISREGARD BY THE

16   DIRECTORS.

17                   IF THE DIRECTORS DON'T USE THE ACCESS INFORMATION

18   THAT MR. ETH HAS ADMITTED THEY HAVE, THAT DON'T INQUIRE AS TO:

19   HOW IS THIS CASE, THIS POTENTIAL CASE OF SALES THAT'S IMPORTANT

20   TO OUR COMPANY'S WELL-BEING DIFFER FROM OUR PRIOR SETTLEMENT AT

21   ORACLE UNIVERSITY WHERE THE SAME GSA CONTRACT WAS INVOLVED,

22   WHERE WE HAVE KETON ALLEGATIONS?  HOW CAN A BOARD IN EXERCISING

23   ITS DUTIES NOT LOOK AT THAT SITUATION?

24                   THE COURT:  FOR ABUSE OF FIDUCIARY DUTY ON AN

25   INDIVIDUAL BASIS FOR THESE DIRECTORS, AS I UNDERSTAND IT UNDER
```

1   DELAWARE LAW, IS THEY ARE PROTECTED, IF YOU WILL, FOR ANYTHING

2   UP TO GROSS NEGLIGENCE, RIGHT?

3                **MR. KELSON:**  BUT --

4                **THE COURT:**  WELL, IS IT RIGHT?

5                **MR. KELSON:**  RIGHT, BUT --

6                **THE COURT:**  OKAY.

7                **MR. KELSON:**  -- AND THE BUT, IF I MAY, YOUR HONOR, IS

8   A BIG BUT.  AND THAT IS THERE'S AN EXCEPTION FOR WRONGFUL

9   CONDUCT, INTENTIONAL MISCONDUCT.

10                **THE COURT:**  WELL, SURE. I MEAN, THAT'S -- INTENTIONAL

11   MISCONDUCT IS BEYOND GROSS NEGLIGENCE.

12                **MR. KELSON:**  BUT IF WE SEE THE SMOKE AND CLOSE THE

13   DOOR AND WALK AWAY, IS THAT INTENTIONAL?

14                IF WE GO IN THE OCEAN AND IGNORE THE ICEBERGS AND SAY

15   "FULL STEAM AHEAD," IS THAT CONSCIOUS DISREGARD?

16                IF WE KNOW THAT OUR OWN COMPANY IN 2003 HAS BEEN

17   SUBJECT TO A KETON ACTION FOR THE SAME CONTRACT FOR SALES

18   IMPROPERLY DEFRAUDING THE GOVERNMENT --

19                **THE COURT:**  YOUR AVERMENTS DON'T LINK UP IN MY MIND

20   TO THE ANALOGY OF:

21                     "DAMN THE TORPEDOES, FULL SPEED AHEAD," OR "WHO

22                     CARES ABOUT THE ICEBERGS?  LET'S GO FORWARD."

23                IT IS AT MOST LOTS OF THINGS ARE GOING ON, AND THEY

24   ARE SLEEPING AT THE SWITCH.  I KNOW WE'RE MIXING THE METAPHORS

25   HERE, BUT, YOU KNOW, IT'S NOT THIS BEING DIRECTLY APPRISED OF A

1    PROBLEM AND SAYING:

2                "I DON'T CARE.  WE'RE GOING TO CONTINUE TO DO

3            WHAT WE'RE GOING TO DO."

4            IT IS A STEP LESS THAN THAT. IT IS VARIOUS THINGS.

5    USING YOUR TERM RED FLAGS ARE OUT THERE, AND YOUR AVERMENTS ARE

6    SIMPLY SAYING NOBODY IS PAYING ANY ATTENTION.

7            I MEAN, ISN'T THAT A LOT CLOSER TO GROSS NEGLIGENCE?

8            **MR. KELSON:**  NO, I THINK THIS IS CONSCIOUS DISREGARD.

9    THIS IS THE CLOSING OF THE DOOR OF THE COURTROOM WITH THE SMOKE

10   IN THE COURTROOM.  THAT'S A CONSCIOUS DISREGARD.  IT'S NOT

11   MERELY NEGLIGENT.

12           AND WITH WHATEVER ANALOGY, IF ONE'S FOUND GUILTY OF A

13   KETON VIOLATION UNDER THE SAME CONTRACT BY A SUBSIDIARY OF YOUR

14   COMPANY, I THINK THAT BEHOOVES THE COMPANY AND ITS DIRECTORS TO

15   SAY:

16               "WHAT ARE WE DOING ABOUT THIS?  I WANT ANSWERS,

17           AND I WANT IT ON MY DESK."

18           AND IF I'M A DIRECTOR I DEMAND TO SEE THOSE ANSWERS.

19   AND IF I CAN'T GET THOSE ANSWERS, I'M NOT GOING TO BE A DIRECTOR

20   IN THIS ORGANIZATION.

21           **THE COURT:**  LET ME ASK YOU -- AND I'M NOT -- I DON'T

22   WANT TO SPEND MORE THAN A MINUTE OR TWO ON THIS.

23           I'M NOT SURE IT REALLY MATTERS IN SOME WAYS IN THIS

24   CASE.  IF WE'RE TALKING ABOUT THE HEIGHTENED RULE 8 OF THE

25   IQBAL, TWOMBLY OR THE 9 (B) OF FRAUD CASE.

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224

1          THIS IS, AS I UNDERSTAND IT, ABUSE OF FIDUCIARY DUTY

2    CLAIM.  AND THEN, THERE ARE TWO OTHER CLAIMS, ALTHOUGH THEY SEEM

3    TO BE SOMEWHAT THE SAME.  AND THAT'S ONE IS UNJUST ENRICHMENT,

4    WHICH I'M NOT SURE IS A STANDALONE CLAIM.  AND THEN, THE OTHER

5    CLAIM IS FOR ABUSE OF CONTROL.

6          **MR. MOLUMPHY:**  CONTROL.

7          **THE COURT:**  WHICH IN A SENSE IN MY MIND IS PRETTY

8    SIMILAR TO ABUSE OF FIDUCIARY DUTY.  YOUR ARGUMENT IS IT'S RULE

9    8, RIGHT?

10         **MR. KELSON:**  THAT'S RIGHT.

11         **THE COURT:**  OKAY.  AND THAT'S BECAUSE IT DOESN'T

12   SOUND IN FRAUD OR --

13         **MR. KELSON:**  IT'S BECAUSE WE LOOKED AT THE DECISION

14   THE DEFENDANTS RELIED ON IN THEIR OPENING PAPERS, DAISY.  AND

15   DAISY MAKES A CLEAR DISTINCTION BETWEEN RULE 8 AND RULE 9 (B).

16   AND IN THAT CASE, ALTHOUGH THERE WAS A FRAUD INVOLVED WITH THE

17   CORPORATION, AND THE CORPORATION HAD BEEN SUED FOR THAT, THERE

18   WAS ALSO A CLAIM FOR VIOLATION OF FIDUCIARY DUTY AGAINST THE

19   DIRECTORS.

20         AND EVEN THOUGH A FACTUAL ANALYSIS TRIAL WOULD

21   PROBABLY BEAR UPON ACTS WHICH MIGHT CONSTITUTE FRAUD, IT ALSO

22   BORE UPON THOSE SAME ACTS WHICH WOULD CONSTITUTE BREACH OF

23   FIDUCIARY DUTY.

24         THE FACT OF THE MATTER IS WE DIDN'T BRING A FRAUD

25   CAUSE OF ACTION. WE DID BRING A CAUSE OF ACTION FOR THE

```
1   INTENTIONAL -- WELL, FOR THE VIOLATION OF FIDUCIARY DUTIES. IT'S

2   A DIFFERENT CAUSE OF ACTION.  THEIR CASE, DAISY, STANDS FOR THE

3   PROPOSITION THAT THE LOWER STANDARD OF REVIEW WILL APPLY.

4            THE COURT:  AND AS I SAID I'M NOT SURE IN ACTUALITY

5   NOW IT IS THAT DIFFERENT, NOT THAT RULE 8 HAS BEEN WRITTEN OUT

6   BY ANY MEANS.

7            BUT IN THIS KIND OF CASE, UNDER THE CURRENT DIRECTION

8   WE GET, I THINK YOU DO HAVE TO PLEAD WITH SOME -- WELL, YOU HAVE

9   TO PLEAD IT'S PLAUSIBLE.  AND YOU HAVE TO PLEAD WITH SOME LEVEL

10  OF PARTICULARITY A CLAIM OF THIS KIND.  AND I'M NOT SURE IT'S

11  ALL THAT DIFFERENT THAN 9 (B).  BUT BE THAT AS IT MAY --

12            MR. KELSON:  I'M NOT SURE WE DISAGREE, YOUR HONOR.

13  AND IF WE LOOK AT THE DELAWARE CASE LAW, AND IN PARTICULAR BACK

14  AGAIN TO THE WALT DISNEY CASE, THE COURT THERE RECOGNIZING THAT

15  IT WAS INCUMBENT UPON THE PLAINTIFFS WITH PARTICULARITY TO MAKE

16  THEIR ALLEGATIONS SAID THAT:

17                 "SINCE THE DEFENDANTS HAVE GONE BEYOND THE

18                 PLEADINGS, I'M GOING TO ALLOW DISCOVERY."

19            AND MORE THAN THAT, THERE ARE DISCOVERY MEANS

20  INDEPENDENT OF LITIGATION. IN CALIFORNIA IT'S 1601 OF THE

21  CORPORATIONS CODE.

22            DELAWARE HAS A SECTION 220:  DEMAND FOR INSPECTION OF

23  RECORDS AND BOOKS.

24            WE'VE DONE THAT IN THIS CASE. AND WE HAVE A RESPONSE

25  DATE OF JUNE 14TH FOR ADDITIONAL INFORMATION THAT ASKS THE VERY
```

1    QUESTIONS THIS COURT IS ASKING TODAY:

2            WHAT DIRECTOR KNEW WHAT?  WHAT DID YOU SEE?  WHAT

3    DOCUMENTS CAME BEFORE YOU?  WHAT WAS THE AGENDA?  WHAT WERE THE

4    MOTIONS?  WHAT WERE THE TRANSCRIPTS?  LET US SEE THAT.

5            WE HAVE THAT DEMAND BEFORE THE CORPORATION.  AND

6    UNDER DELAWARE LAW, BOTH THE VERIFONE CASE, WHICH I BELIEVE IS

7    IN THE PAPERS, AND ALSO IN THE WALT DISNEY CASE WHICH IS -- AND

8    I'M REFERRING TO 825 ATLANTIC 2D 275.

9            IN THOSE CASES THE COURTS HAVE HELD THAT INDEPENDENT

10   OF THE LITIGATION, INDEPENDENT OF OUR RIGHTS IN LITIGATION FOR

11   DISCOVERY WE CAN GO THROUGH AN INSPECTION OF BOOKS AND RECORDS.

12           AND BASED UPON THAT INSPECTION AND THE RESULTS FROM

13   THE CORPORATION BRING BEFORE THE COURT BY WAY OF AMENDED

14   PLEADINGS, OR WHATEVER, BRING BEFORE THE COURT THOSE ADDITIONAL

15   PARTICULAR FACTS WHICH MAY ADDUCE OR PROVIDE THE BASIS FOR THE

16   INFERENCES THAT THE COURT MIGHT SEEK IN THIS CASE.

17           **THE COURT:**  HAS THE DELAWARE COURT GRANTED YOUR

18   ACCESS TO, OR IS THAT BEING LITIGATED AT THE MOMENT?

19           **MR. KELSON:**  IT'S A CALIFORNIA COURT, YOUR HONOR.  WE

20   WENT UNDER SECTION 1601.  AND ONE OF THE ISSUES IS GOING TO BE

21   WHETHER OR NOT WE HAVE A GOOD FAITH RESPONSE TO THAT OR WHETHER

22   OR NOT WE HAVE TO FILE FOR THE ASSISTANCE OF THE COURTS.

23           **THE COURT:**  I REMEMBER IN ONE OF THE CASES I HANDLED

24   BEFORE THE PLAINTIFFS REQUESTED LEAVE TO GO AND MAKE A 221

25   REQUEST IN DELAWARE, AND THEN WERE SHUT DOWN IN DELAWARE AND

1    WEREN'T ALLOWED TO GET ACCESS TO THE INFORMATION.  AND THAT'S

2    WHY I WAS ASKING WHERE YOU STOOD, BUT OKAY.

3              THIS MAY ACTUALLY GO BACK TO THE EARLIER DISCUSSION,

4    BUT LET ME JUMP AHEAD FOR A MOMENT WHILE YOU ARE UP HERE TO THE

5    QUESTION OF YOUR PARTICULAR SHAREHOLDER PLAINTIFFS AND THE

6    ARGUMENT WITH RESPECT TO WHETHER OR NOT THERE'S BEEN A

7    SUFFICIENT AVERMENT AS TO THEIR OWNERSHIP AT THE OPERATIVE

8    MOMENTS.

9              **MR. KELSON:**  THANK YOU, YOUR HONOR.

10             I APPRECIATE THE COURT'S INQUIRY. AND I'D LIKE TO

11   NAIL THAT DOWN.

12             **THE COURT:**  OKAY.

13             **MR. KELSON:**  GOING TO OUR CONSOLIDATED COMPLAINT,

14   WHICH IS THE COMPLAINT AND PLEADING AT ISSUE BEFORE THE COURT,

15   WE STATE IN PARAGRAPH 12 OF THE COMPLAINT, AND I QUOTE:

16                  "PLAINTIFF, PHILIP T. PRINCE," PAREN, QUOTE,

17                  "PRINCE," END QUOTE, END PAREN, "A RESIDENT OF

18                  ALAMEDA COUNTY, CALIFORNIA, IS THE OWNER OF 450

19                  SHARES OF ORACLE COMMON STOCK.  PLAINTIFF HAS

20                  OWNED ORACLE SHARES SINCE NO LATER THAN 1996, AND AT

21                  ALL TIMES RELEVANT HEREIN, AND CONTINUES TO BE AN

22                  ORACLE SHAREHOLDER."

23             SO DURING THE DURATION OF THE PERIOD OF DAMAGES AT

24   ISSUE IN THIS CASE WE CLEARLY ALLEGE THAT MR. PRINCE HAS OWNED

25   HIS COMMON SHARES AT ALL TIMES DURING THAT PERIOD.

1      **THE COURT:**  AND THEN, THE PARAGRAPH BEFORE ABOUT

2   MS. GALAVIZ, THAT'S GOT THE "ALL RELEVANT TIMES," BUT IT DOESN'T

3   HAVE THE TRIGGERING "NO LATER THAN" LANGUAGE.

4      **MR. KELSON:**  IT READS THE WAY IT DOES, YOUR HONOR.

5   BUT I BELIEVE THAT IN TERMS OF OWNERSHIP OF SHARES WE'VE

6   CERTAINLY ALLEGED IT WITH MR. PRINCE.  AND IF THE COURT WOULD

7   LIKE AN AMENDMENT AS TO MS. GALAVIZ, I'M SURE WE CAN DO THAT.

8      THIS SHOULD NOT BE AN ISSUE IN THE CASE.

9      **THE COURT:**  ALL RIGHT. ANYTHING FURTHER ON THAT?  AND

10   THEN, I'LL ASK MR. ETH IF HE WANTS TO RESPOND ON THE POINTS

11   YOU'VE MADE.  AND THEN, ALSO I HAVE SOME QUESTIONS FOR YOU ON

12   THE -- STILL ON THE DEMAND FUTILITY POINTS.

13      **MR. MOLUMPHY:**  THANK YOU, YOUR HONOR.

14      **THE COURT:**  ANYTHING FURTHER?

15      THANK YOU.

16      LET ME FOCUS YOU FIRST ON THE ORACLE CHARTER ISSUE

17   AND THE ARGUMENT THAT UNDER THE TERMS OF THE CHARTER THE AUDIT

18   COMMITTEE HAS A RESPONSIBILITY, A PARTICULAR RESPONSIBILITY WITH

19   RESPECT TO THE GOVERNMENT CONTRACTS AND PERHAPS A, YOU KNOW,

20   FOCUSSED DUTY TO BE ON THE SPOT WITH RESPECT TO THOSE ISSUES.

21      **MR. ETH:**  YOUR HONOR, THAT TAKES THIS WHOLE AREA OF

22   THE LAW AND TURNS IT UPSIDE DOWN.  IT TURNS IT INTO STRICT

23   LIABILITY FOR AUDIT COMMITTEE MEMBERS.

24      CASE AFTER CASE IN THIS DISTRICT, IN DELAWARE, THE

25   NINTH CIRCUIT, EVERYWHERE HAS SAID:

1          "YOU CAN'T LOOK AT CHARTERS. YOU CAN'T LOOK AT

2          COMMITTEE MEMBERSHIP.  YOU HAVE TO ACTUALLY PLEAD

3          PARTICULARS.  IT CAN'T BE:  'WELL, YOU KNOW WHAT THEY

4          KNEW, BECAUSE THEY ARE ON THE AUDIT COMMITTEE.  AND

5          YOU KNOW WHAT THAT REPORT MUST SAY.'"

6     THAT'S WHAT COUNSEL DID, HE SAID:

7          "YOU KNOW WHAT IT'S LIKE WHEN YOU HIRE AN

8          OUTSIDE LAWYER.  AND YOU KNOW WHAT IT MUST SAY.  AND

9          I BET THAT THERE'S STUFF IN THERE THAT THEY HEARD

10         BECAUSE, YOU KNOW, THEY ARE RESPONSIBLE FOR A LOT OF

11         THINGS.  BUT THEY ARE RESPONSIBLE, SO THEY MUST HAVE

12         KNOWN ABOUT ALL OF THIS."

13     CASE AFTER CASE, VERIFONE, VERISIGN, RATTNER,

14 GUTTMAN, WOOD VERSUS BAUM, CASE AFTER CASE THEY SAY -- I JUST

15 HEARD COUNSEL SAY:

16         "WELL, THAT WAS THE BASIS OF ABBOTT."

17     ABSOLUTELY NOT TRUE. ABBOTT, PAGE 809, LISTS A WHOLE

18 BUNCH OF THINGS, A WHOLE BUNCH OF THINGS, INCLUDING WHICH THEY

19 REPEAT OVER AND OVER AGAIN:

20         "WARNING LETTERS SENT TO DIRECTORS."

21     HAPPENED THAT THE DIRECTOR WAS ALSO THE CEO.  BUT

22 WARNINGS LETTERS TO DIRECTORS.  AND THEY GO ON AND ON ABOUT

23 DIRECT EVIDENCE.  DIRECT EVIDENCE.

24     PLAINTIFFS' COUNSEL STARTED BY SAYING:

25         "WELL, YOU JUST NEED A REASON TO DOUBT," AS IF

1   THIS IS A CRIMINAL DEFENSE ARGUMENT AND A REASONABLE DOUBT

2   STANDARD.

3          AGAIN, THEY RUN FROM THE STANDARD. WOOD VERSUS BAUM,

4   DELAWARE SUPREME COURT.  PLAINTIFFS DON'T CITE IT.  WE DO. WHAT

5   DOES IT SAY?

6          YOU CAN ONLY HAVE A REASON TO DOUBT IF THEY PLEAD

7   WITH PARTICULARITY FACTS DEMONSTRATING A SUBSTANTIAL LIKELIHOOD

8   OF LIABILITY, NOT, WELL, THERE'S SOME SMOKE BECAUSE OTHER

9   COMPANIES IN THIS INDUSTRY NOW, AND ORACLE UNIVERSITY, A

10  SUBSIDIARY, WITH A COMPLETELY DIFFERENT KIND OF ISSUE ABOUT

11  TRAVEL:

12          "WELL, YOU KNOW, IT WAS A REALLY BIG CONTRACT."

13          THE CONTRACTS HERE, HUNDREDS AND HUNDREDS OF

14  INDIVIDUAL CONTRACTS. SALESPERSON MAKES -- THE GOVERNMENT

15  ATTACHED IN THEIR COMPLAINT --

16          **THE COURT:**  WELL, BUT THE ARGUMENT THEY ARE MAKING IS

17  THAT THERE'S ESSENTIALLY A FAVORED NATION CLAUSE WITH RESPECT TO

18  THE CONTRACT THAT'S THE FOCUS OF THE SCHEME ALLEGATIONS.  AND

19  THAT, THEREFORE, ALL OTHER CONTRACTS MORE OR LESS COME INTO PLAY

20  BECAUSE THOSE HAVE TO BE TAKEN INTO ACCOUNT TO DETERMINE WHETHER

21  OR NOT THE GOVERNMENT'S GETTING ITS APPROPRIATE DISCOUNT OR NOT.

22          **MR. ETH:**  BUT THE POINT IS DOES AN AUDIT COMMITTEE

23  MEMBER OR AN OUTSIDE DIRECTOR KNOW ABOUT ALL OTHER CONTRACTS AND

24  DISCOUNTS PRODUCT BY PRODUCT, WEEK BY WEEK DETAIL BY DETAIL?

25          THE GOVERNMENT'S CHART THAT THEY ATTACHED TO THE

```
1    COMPLAINT, WHICH THE GOVERNMENT ATTACHED TO THE COMPLAINT, WELL,

2    THE CONTRACTS UNDER 5,000 HAD THIS KIND OF DISCOUNT SCHEME.  AND

3    CONTRACTS OVER $100,000 HAD THIS KIND.  AND ONES OVER 150.  AND

4    IS IT COMMERCIAL CONTRACT, OR IS IT NOT?  OR WHAT GROUP DOES IT

5    GO INTO?

6             IT'S THAT LEVEL.  BUT THE FUNDAMENTAL POINT OF ALL OF

7    THIS, OF ALL OF THIS IS THAT MEMBERSHIP ON A COMMITTEE,

8    MEMBERSHIP ON THE BOARD DOESN'T CREATE KNOWLEDGE.

9             THE COURT:  WELL, OKAY.  AND I WILL GO BACK AND LOOK.

10   BUT I'M NOT HEARING THE SUGGESTION THAT IT CREATES KNOWLEDGE.

11   WHAT I'M HEARING PLAINTIFFS SAY IS WHEN WE'RE TRYING TO

12   DETERMINE WHAT A PARTICULAR DIRECTOR KNEW, IF THE DIRECTOR SITS

13   ON A COMMITTEE THAT HAS SPECIFIC RESPONSIBILITY OVER A

14   PARTICULAR AREA ONE CAN MAKE AN INFERENCE.

15            IT'S NOT STRICT LIABILITY THAT THERE'S A PROBLEM IN

16   GOVERNMENT CONTRACTS, YOU ARE ON THE AUDIT COMMITTEE, YOU ARE

17   SOMEHOW STUCK WITH SPECIAL LIABILITY.

18            BUT IT'S MORE TRYING TO DETERMINE THE LEVEL OF

19   KNOWLEDGE AND MAKING INFERENCES, WHICH WE DO MAKE.  ONE COULD,

20   FOR EXAMPLE, INFER THAT BECAUSE GOVERNMENT CONTRACTS ARE A

21   PARTICULAR RESPONSIBILITY OF A COMMITTEE THAT ONE CAN INFER THEY

22   HAVE SEEN MATERIALS.

23            IT'S NOT ASCRIBING LIABILITY TO THEM. IT'S TRYING TO

24   ASSESS WHAT THEIR LEVEL OF KNOWLEDGE IS.

25            MR. ETH:  WHAT MATERIALS DID THEY SEE?  WHEN DID THEY
```

1    SEE IT?  WHAT YEAR DID THEY SEE IT?  WHAT DID IT SAY?  THAT'S

2    WHAT ALL THE CASES FOCUS ON.

3           THAT'S WHAT "PARTICULARITY" MEANS.

4           I DID HEAR COUNSEL --

5           **THE COURT:**  HOW ARE THEY GOING TO BE IN A POSITION TO

6    KNOW THAT AT THE PLEADING STAGE?

7           **MR. ETH:**  DELAWARE COURTS TALK ABOUT THE WAYS THAT

8    THEY COULD BE IN A POSITION TO KNOW THAT.  I WAS VERY INTERESTED

9    TO HEAR THAT THERE'S AN INSPECTION DEMAND WITH A DATE.

10          FIRST I'VE HEARD OF IT.  FIRST I'VE HEARD OF IT.  I

11    DON'T KNOW IF YOU ARE SENDING IT OUT TODAY AFTER THE HEARING.

12          **MR. KELSON:**  I THINK YOU HAVE IT, MR. ETH.

13          **MR. ETH:**  WHEN DID I GET IT?

14          **MR. KELSON:**  SHOULD HAVE LAST --

15          **THE COURT:**  WELL, I'LL LET YOU ALL WORK ON THAT.

16    MAYBE IT'S DIFFERENT COUNSEL.

17          **MR. ETH:**  I'VE NEVER HEARD OF IT.  IT COULD BE.  IT

18    COULD BE SOMETHING ELSE. I'VE NEVER HEARD OF IT.

19          BUT, ACTUALLY, WHAT THE DELAWARE COURTS DO TALK ABOUT

20    IS THE TOOLS AT HAND. THEY TALK ABOUT THE EXTRAORDINARY REVERSAL

21    OF THE WAY THINGS WORK BY HAVING A SHAREHOLDER TAKE OVER

22    LITIGATION ON BEHALF OF A COMPANY.

23          AND THAT THERE ARE SOME LIMITED TOOLS AT HAND THAT

24    THEY CAN SOMETIMES USE.  OF COURSE, HERE THEY DIDN'T DO THAT AT

25    ALL.  THEY DIDN'T TRY TO FIND ANYTHING OUT.  THEY JUST FILED A

1    LAWSUIT IMMEDIATELY.  SO IT'S A VERY DIFFERENT, DIFFERENT

2    SETTING.

3              IN TERMS OF THE CASE LAW I'VE MENTIONED VERIFONE AND

4    VERISIGN AND RATTNER AND SILICON GRAPHICS AND WOOD VERSUS BAUM.

5              AND WHAT IT COMES BACK TO IS THE KEY WORD I'VE BEEN

6    HEARING IS "LINK." WHERE IS THE LINK TO THE DIRECTORS?  WHERE IS

7    THE LINK?  WHERE IS THE KNOWLEDGE?  WHERE IS THAT UNDER THE

8    PROPER STANDARD?  NOT THERE'S A REASON.  WE HAVE SOME REASON TO

9    DOUBT THIS. NOT BASED ON OTHER COMPANIES, BUT BASED ON ORACLE.

10             **THE COURT:**  OKAY.

11             **MS. KYLE:**  JUST GLANCING AT MY NOTES TO SEE IF THERE

12   WAS ANYTHING ELSE.

13             **THE COURT:**  WELL, IF YOU WANT TO MAKE A COMMENT OR

14   TWO WITH RESPECT TO THE CLAIMS AGAINST THE INDIVIDUAL DIRECTORS.

15             **MR. ETH:**  I THINK I'M GOING TO LEAVE THAT TO MR.

16   BESIROF.  HE HAS A FEW COMMENTS.

17             **THE COURT:**  OKAY.

18             **MR. BESIROF:**  GOOD AFTERNOON, YOUR HONOR.

19             **THE COURT:**  THERE IS, BY THE WAY, A SUGGESTION IN THE

20   PAPERS -- AND I'M NOT SURE THE PLAINTIFFS ARE REALLY IN A

21   POSITION TO SUGGEST THIS -- BUT JUST TO ASSUAGE MY CONCERN THAT

22   YOU'VE THOUGHT ALL THIS THROUGH, YOU ARE REPRESENTING BOTH THE

23   COMPANY?

24             **MR. ETH:**  YES.

25             **THE COURT:**  AND THE INDIVIDUAL DIRECTORS?

1              **MR. ETH:**  THAT'S CORRECT.

2              **THE COURT:**  IN A DIFFERENT CONTEXT ASSESSING A

3     FAIRNESS OF A SETTLEMENT THAT WAS IN ISSUE THAT JUDGE WALKER HAD

4     TAKEN UP, PERHAPS YOU JUST WANT TO COMMENT ON THAT.

5              **MR. ETH:**  I THINK THE COURT HAS BEEN HINTING AT THE

6     EXACT DISTINCTION.  IT'S A DIFFERENT SETTING, VERY DIFFERENT

7     SETTING.  THE SETTING OF A -- THAT'S IN A SETTLEMENT.  AND THE

8     COMMON PRACTICE, THE ACCEPTED PRACTICE IS AT THIS STAGE, THE

9     DEMAND FUTILITY STAGE -- AND THAT'S WHAT ALL THESE CASES WILL

10    SHOW -- THE DEMAND FUTILITY STAGE, COUNSEL, OUTSIDE COUNSEL CAN

11    REPRESENT BOTH THE CORPORATION, THE NOMINAL DEFENDANT, AND THE

12    INDIVIDUALS.

13             THE SCATTERED CASE IN DELAWARE SAYS THAT, AND ALL --

14    JUST ABOUT EVERY OTHER CASE WE HAVE CITED ACTUALLY SHOWS THAT,

15    BECAUSE IN THOSE CASES YOU'LL SEE ONE SET OF COUNSEL

16    REPRESENTING BOTH.

17             SO DEMAND FUTILITY IS SOMETHING THAT THE OUTSIDE --

18    EXCUSE ME -- THE INDIVIDUAL DEFENDANTS AND THE COMPANY CAN BOTH

19    AGREE ON.

20             THE QUESTION OF WHAT IS THE PROPER CORPORATE

21    GOVERNANCE MECHANISM FOR THIS KIND OF LAWSUIT THAT IT SHOULD GO

22    FIRST TO THE COMPANY. NOTICE THE COMPANY DIDN'T JOIN THE 12 (B)

23    (6) MOTION, BECAUSE THE COMPANY IS NOT MAKING A JUDGMENT ON

24    THAT. THAT'S THE INDIVIDUAL DEFENDANTS.

25             **THE COURT:**  OKAY. THANK YOU.

1                    MR. BESIROF.

2          **MR. BESIROF:**  THANK YOU, YOUR HONOR.

3          AT THE OUTSET OF THE HEARING YOU ASKED IF IT MATTERS

4    HOW YOU LOOKED -- WHETHER YOU CONSIDERED RULE 8 OR RULE 9.

5          **THE COURT:**  YES.

6          **MR. BESIROF:**  AND THE ANSWER IS:  IF YOU DO A

7    SUBSTANTIVE REVIEW OF THE 12 (B) (6), THE ANSWER IS YES, IT

8    MATTERS.  AND THE REASON IT MATTERS IS BECAUSE NINTH CIRCUIT LAW

9    REQUIRES THAT YOU USE RULE 9 (B) IN THAT INSTANCE.

10         **THE COURT:**  I SUPPOSE YOU WOULD ARGUE IT DOESN'T

11   MATTER TO THE EXTENT YOU DON'T THINK IT SATISFIES EITHER RULE 8

12   UNDER TWOMBLY AND IQBAL OR RULE 9 (B).

13         **MR. BESIROF:**  IT'S NOT DETERMINATIVE OF THE OUTCOME,

14   BUT IT DOES -- BECAUSE EITHER UNDER RULE 8 OR RULE 9 (B) IT

15   FAILS, BECAUSE IT CERTAINLY MATTERS BECAUSE THE NINTH CIRCUIT

16   REQUIRES IT.

17         **THE COURT:**  OKAY. AND WHY IS IT THAT AN ABUSE OF

18   FIDUCIARY DUTY CLAIM --

19         **MR. BESIROF:**  YES.

20         **THE COURT:**  -- IS SUBJECT TO 9 (B)?

21         **MR. BESIROF:**  AND THAT'S BECAUSE YOU DON'T LOOK AT

22   THE LABEL THAT'S PUT ON THE CAUSE OF ACTION.  YOU LOOK AT WHAT

23   IS ALLEGED. YOU LOOK AT:  IS IT A FRAUD-BASED CLAIM?

24         **THE COURT:**  RIGHT.

25         **MR. BESIROF:**  AND HERE SINCE PLAINTIFFS ALLEGE

1    INTENTIONAL DECEPTION THAT THE DIRECTORS AUTHORIZED THE COMPANY

2    TO DEFRAUD THE UNITED STATES, AND THAT IS THE SAME FACTUAL BASIS

3    THAT UNDERLIES ALL THE CLAIMS, YOU APPLY 9 (B).

4            **THE COURT:**  NOW, PLAINTIFFS' COUNSEL INVOKED -- I

5    THINK IT WAS THE DAISY CASE; THAT THEY INDICATED DID THE

6    ANALYSIS ON A 12 (B) MOTION UNDER -- USING RULE 8.

7            **MR. BESIROF:**  YES.

8            **THE COURT:**  WHEN THERE'S AN ABUSE OF FIDUCIARY DUTY

9    ALLEGED.  DO YOU THINK THE DISTINCTION IS THAT'S NOT SOUNDING IN

10   FRAUD IN SOME FASHION?

11           **MR. BESIROF:**  THAT'S EXACTLY RIGHT.  THE DISTINCTION

12   IS ONE DOESN'T LOOK AT THE LABEL OF WHAT IS THE CAUSE OF ACTION

13   CALLED; YOU LOOK AT THE UNDERLYING CLAIM.

14           AND IN DAISY, THE RULE 8 APPLICATION HAD TO DO WITH

15   WHETHER THE BOARD CONDUCTED A -- HAD A FAILURE TO CONDUCT AN

16   ADEQUATE REVIEW.  SO IT WAS NOT A FRAUD BASED.

17           THIS COURT HAS USED THE LANGUAGE YOU LOOK AT IF THERE

18   IS NEGLIGENCE ALLEGED OR INNOCENT ACTS ALLEGED.  AND THAT WOULD

19   BE AN INSTANCE WHERE YOU WOULD USE RULE 8.

20           YOUR HONOR FOUND THAT IN THE SWISH CASE.

21           **THE COURT:**  OKAY. THANK YOU.

22           **MR. BESIROF:**  THANK YOU.

23           **THE COURT:**  ANYTHING FURTHER?

24           **MR. KELSON:**  YOUR HONOR, IF I MAY.

25           **MR. MOLUMPHY:**  GO AHEAD.  AND THEN, ONE FINAL POINT.

1            **MR. KELSON:**  I JUST WANTED TO POINT OUT THE

2    PARTICULAR PASSAGE IN THE <u>DAISY SYSTEMS</u> CASE WHICH, AGAIN, WAS

3    THEIR CASE. AND THE COURT IN HOLDING THAT THE 9 (B) REQUIREMENT

4    DOES NOT ATTACH TO A BREACH OF FIDUCIARY DUTY STATES -- AND THIS

5    IS AT PAGE FOUR OF THE SLIP DECISION, QUOTE:

6                "THOSE DIRECTORS WHO HAVE BEEN DISMISSED FROM

7                THE CLASS ACTION HAD A DUTY TO INVESTIGATE AND TO

8                EXERCISE DUE CARE IN OVERSEEING THE MANAGEMENT OF

9                DAISY. REGARDLESS OF WHETHER THEY WERE INVOLVED IN

10               THE SCHEME TO DEFRAUD."

11           **THE COURT:**  WELL, OKAY. THAT'S NOT FOCUSING ON

12   WHETHER OR NOT IT'S RULE 8 OR RULE 9.

13           **MR. KELSON:**  THAT PASSAGE DOES FOCUS ON THAT HOLDING,

14   THAT IT IS THE STANDARD OF RULE 8 RATHER THAN 9 (B).

15           **THE COURT:**  YES, AND -- BUT DEFENSE COUNSEL IS SAYING

16   THAT'S BECAUSE IT DOESN'T SOUND IN FRAUD.

17           **MR. KELSON:**  THE UNDERLYING.  THERE WERE ALLEGATIONS

18   OF FRAUD IN THE CASE.  THERE WERE ALLEGATIONS OF FRAUD IN THE

19   PRIOR CLASS ACTION.

20           **THE COURT:**  OKAY.

21           **MR. KELSON:**  AND, AGAIN, IN THIS CASE, EVEN THOUGH

22   THERE ARE ALLEGATIONS OF FRAUD IN THE <u>KETON</u> CASE IN TERMS OF THE

23   SCHEME, WHAT WE'RE FOCUSING REALLY IS ON THE DERELICTIONS OF

24   DUTY, THE GROSS DISREGARD OF THE DIRECTORS TO WHAT IT WAS

25   INCUMBENT UPON THEM TO DO AND WHAT KNOWLEDGE THEY HAD AND WHAT

1    THEY SHOULD HAVE DONE WITH THE KNOWLEDGE.

2            **THE COURT:**  RIGHT, BUT DERELICTION OF DUTY IS NOT, IN

3    MY MIND, ANYWAY, TANTAMOUNT TO FRAUD NECESSARILY. YOU HAVE AN

4    OBLIGATION, AND YOU MAY HAVE FALLEN DOWN ON YOUR DUTY ENTIRELY

5    AND, THEREFORE, ABUSED YOUR POSITION OF TRUST.  THAT DOESN'T

6    NECESSARILY MEAN IT'S FRAUDULENT CONDUCT, DOES IT?

7            **MR. KELSON:**  WELL, I THINK THERE WAS FRAUDULENT

8    CONDUCT AT ISSUE IN DAISY.  I THINK THERE IS FRAUDULENT CONDUCT

9    CERTAINLY IN THE VIRGINIA KETON CASE IN TERMS OF VIOLATION OF

10   FIDUCIARY DUTY.

11           WHETHER THAT DEMANDS FRAUD OR NOT, I DON'T THINK IT

12   DOES. THERE MAY BE FRAUD, BUT IT DOESN'T DEMAND FRAUD.  AND I

13   THINK THE ALLEGATIONS OF OUR COMPLAINT ARE BROAD ENOUGH AND

14   LIBERAL ENOUGH SO THAT IT'S NOT NECESSARY TO FIND THAT A

15   PARTICULAR --

16           **THE COURT:**  WELL, IN THAT SENSE, I UNDERSTAND YOUR

17   ARGUMENT. THIS IS AN ARGUMENT THAT I THINK YOU WOULD WANT TO BE

18   MAKING TO ME, WHICH IS A BREACH OF FIDUCIARY DUTY.  WHETHER OR

19   NOT A DIRECTOR HAS SATISFIED THEIR OBLIGATION IS NOT A QUESTION

20   OF FRAUD OR NOT. IT'S A QUESTION OF THEIR DUTY AS A DIRECTOR.

21   AND SO THAT'S WHY RULE 8 IN YOUR VIEW IS THE OPERATIVE --

22           **MR. KELSON:**  I COULDN'T HAVE ARTICULATED IT BETTER.

23           **THE COURT:**  I JUST WANTED TO MAKE SURE I UNDERSTOOD

24   YOUR ARGUMENT.

25           MR. BESIROF.

1          **MR. BESIROF:**  I WOULD TAKE ISSUE WITH YOUR

2   HYPOTHETICAL THERE, YOUR HONOR, BECAUSE ONE DOESN'T LOOK AT

3   WHETHER FRAUD IS A REQUIRED ELEMENT, SO IT DOESN'T MATTER IF

4   FRAUD IS A REQUIRED ELEMENT OF THE PARTICULAR CLAIM.  BUT AS

5   PLED, AS I UNDERSTAND THE WAY PLAINTIFFS PURPORTS TO PLEAD THEIR

6   COMPLAINT, THERE ARE NO NONFRAUDULENT ALLEGATIONS.

7          SO I DON'T THINK THAT WOULD BE APPLICABLE.

8          **THE COURT:**  WELL, I MEAN, I'LL GO BACK.  AND THIS MAY

9   BE SOMEWHAT MORE ESOTERIC THAN WE NEED TO FOR PURPOSES OF

10  TODAY'S ARGUMENT.  BUT DIRECTORS' DUTY, JUST THE CONCEPT OF

11  ABUSE OF FIDUCIARY DUTY, THAT CONCEPT IS NOT TO ME A QUESTION OF

12  WHETHER OR NOT FRAUD IS AFOOT, BECAUSE SOMEONE CAN ABUSE THEIR

13  DUTY AND NOT BE ACTING IN A FRAUDULENT CAPACITY OR NATURE.

14         THE QUESTION IS:  IS THE NATURE OF THAT FAILURE OF

15  DUTY ARISE OUT OF ACTIVITY THAT'S FRAUDULENT?  I MEAN IF, IN

16  FACT, YOU'VE ABUSED YOUR DUTY BECAUSE YOU'VE ENTERED INTO A

17  FRAUDULENT SCHEME, WELL, THEN IT SOUNDS IN FRAUD.

18         IF YOU'VE ABUSED YOUR DUTY BECAUSE YOU DON'T SHOW UP

19  FOR BOARD MEETINGS, THAT'S NOT NECESSARILY FRAUDULENT, BUT IT

20  COULD BE AN ABUSE OF YOUR FIDUCIARY OBLIGATIONS.  AND IN THAT

21  INSTANCE IT WOULD BE A RULE 8 ISSUE.  BUT I'LL GO BACK AND TAKE

22  A LOOK AT IT.

23         ONE MORE?

24         **MR. MOLUMPHY:**  ONE MORE, I PROMISE.  AND I APPRECIATE

25  THE LATE HOUR. JUST ADDRESSING ONE SPECIFIC POINT BY MR. ETH,

1    AND THAT'S THIS WHOLE IDEA OF THE AUDIT COMMITTEE AND WHETHER

2    THE MEMBERSHIP BY ITSELF.  AND WE'RE NOT SUGGESTING THAT.

3            I WOULD REFER YOUR HONOR TO 325 F.3D AT PAGE 805 IN

4    THE ABBOTT CASE.  AND THIS IS WHERE THE COURT SAID:

5                "PLAINTIFFS IN ABBOTT ALLEGE FACTS THAT THE

6                DIRECTORS WERE AWARE OF KNOWN VIOLATIONS PROVIDING

7                EVIDENCE THAT THERE WAS DIRECT KNOWLEDGE THROUGH THE

8                WARNING LETTERS AND AS MEMBERS OF THE AUDIT

9                COMMITTEE. UNDER PROPER CORPORATE GOVERNANCE

10               PROCEDURES, THE EXISTENCE OF WHICH IS NOT CONTESTED

11               BY EITHER PARTY IN ABBOTT, INFORMATION OF THE

12               VIOLATIONS WOULD HAVE BEEN SHARED AT THE BOARD

13               MEETINGS," CLOSE QUOTE.

14           THE COURT IS NOT REQUIRING THAT THEY WERE. THE COURT

15   IS DRAWING AN INFERENCE, A REASONABLE INFERENCE BASED UPON THE

16   AUDIT COMMITTEE'S CHARTER THAT THEY WOULD HAVE BEEN.

17           **THE COURT:**  WELL, I WILL -- BECAUSE BOTH SIDES HAVE

18   SPENT A GOOD DEAL OF TIME TALKING ABOUT ABBOTT LABS, I'LL GO

19   BACK AND REREVIEW IT, BECAUSE EVERYBODY IS INDICATING IT IS OF

20   CONSEQUENCE.

21           **MR. MOLUMPHY:**  AND, FINALLY, WE DID SERVE THE DEMAND

22   ON THE COMPANY ITSELF, AS THE STATUTE REQUIRES. WE BELIEVE A

23   COPY WAS SENT TO MR. ETH AS A COURTESY.  I WILL CERTAINLY

24   PERSONALLY FOLLOW-UP AND MAKE SURE HE RECEIVES A COPY TODAY. THE

25   POINT IS THAT THE PROCESS IF THEY DO OBJECT TO PRODUCTION ON THE

1    14TH, WOULD REQUIRE US TO FILE A COMPLAINT.  I UNDERSTAND IT'S

2    AN EXPEDITED PROCEEDING.  BUT IF THE COURT WAS INCLINED TO GRANT

3    LEAVE TO AMEND WE WOULD RESPECTFULLY REQUEST THE OPPORTUNITY TO

4    COME BACK AT A CONFERENCE OR TO HAVE ENOUGH TIME TO FINALIZE

5    THAT PROCESS.

6              **THE COURT:**  OKAY.

7              **MR. MOLUMPHY:**  THANK YOU.

8              **THE COURT:**  THIS WAS ALSO ON FOR A CASE MANAGEMENT

9    CONFERENCE.  LET ME -- I DID LOOK AT YOUR STATEMENT.

10             ON THE ONE HAND, I ADMIRE YOUR CONFIDENCE THAT THE

11   CASE IS GOING TO BE DISPOSED OF.

12             I DO LIKE, THOUGH, TO HAVE PROPOSED DATES, WHICH I

13   DON'T THINK INDICATES ANY LACK OF CONFIDENCE IN YOUR VIEW, AND

14   THE DEFENSE SIDE SAYS:

15                  "WELL, WE'RE GOING TO WIN, SO WE'RE NOT GOING TO

16                  PROVIDE DATES HERE."

17             SO IN THE FUTURE I DO LIKE TO HAVE THE DATES. BUT AT

18   THE SAME TIME, I DON'T THINK THAT THIS IS THE POINT AT WHICH I

19   WANT TO START SETTING DATES. I THINK WE NEED TO GET THROUGH

20   THIS.

21             I RECOGNIZE THE PLAINTIFFS WANT TO GET GOING, AND

22   I'VE READ YOUR REASONS FOR THINKING THAT YOU SHOULD BE LAUNCHED

23   IN THAT REGARD AT THIS POINT.  BUT I WANT TO GET THE PLEADINGS

24   PROCESS SETTLED FIRST.  I THINK IT'S IN EVERYBODY'S INTEREST.

25   SO I'M NOT GOING TO SET ANY DATES TODAY, BUT YOU CAN BE ASSURED

1   THAT WHEN THE ORDER DOES ISSUE WITH RESPECT TO THE PLEADINGS

2   PROCESS I WILL SET AN EARLY CASE MANAGEMENT CONFERENCE SO THAT

3   WE GET IT UP AND RUNNING SHOULD IT BE GOING IN THAT DIRECTION.

4           **MR. ETH:**  YOUR HONOR, MAY I JUST SAY ONE MORE THING?

5   IT WILL TAKE 15 SECONDS.

6           **THE COURT:**  OKAY.

7           **MR. ETH:**  WHEN YOU'RE LOOKING AT ABBOTT, ALSO LOOK AT

8   THE MULTIPLE CASES WE CITED ON PAGE 13 OF OUR OPENING BRIEF ON

9   THIS EXACT POINT, CASES FROM THE NORTHERN DISTRICT AND FROM

10  DELAWARE, NOT JUST FROM THE SEVENTH CIRCUIT.

11          **THE COURT:**  OKAY.

12          **MR. ETH:**  THANK YOU.

13          **THE COURT:**  FAIR ENOUGH.

14          **MR. KELSON:**  THANK YOU, YOUR HONOR.

15          **THE COURT:**  THANK YOU VERY MUCH.

16          **MR. KELSON:**  THANK YOU, YOUR HONOR.

17          **THE COURT:**  THANK YOU.

18          (THEREUPON, THIS HEARING WAS CONCLUDED.)

19

20

21

22

23

24

25

1                        CERTIFICATE OF REPORTER

2             I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY

3    THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED

4    SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO

5    TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE

6    RECORD OF SAID PROCEEDINGS.

7             I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR

8    ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING

9    PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE

10   OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

11            THE FEE CHARGED AND THE PAGE FORMAT FOR THE

12   TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL

13   CONFERENCE.

14            IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS

15   7TH DAY OF JUNE, 2011.

16

17

18

19        _____

20            /S/ KATHERINE WYATT

21

22

23

24

25